Steven C. Krane
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036-8299
(212) 969-3435

Martin I. Kaminsky
Justin Y. K. Chu
POLLACK & KAMINSKY
114 West 47th Street
New York, New York 10036
(212) 575-4700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————

QUICKIE, LLC,

                              Plaintiff,

          -against-

GREENBERG TRAURIG, LLP, THELEN
REID BROWN RAYSMAN & STEINER LLP
(f/k/a THELEN, REID & PRIEST LLP) and
ROBERT E. KREBS,

                              Defendants.

————————————————————

THELEN REID BROWN RAYSMAN &
STEINER LLP (f/k/a THELEN, REID &
PRIEST LLP) and ROBERT E. KREBS,

                    Third-Party Plaintiffs,

          -against-

TODD SHARINN, PEPE & HAZARD LLP,
ALAN FELL and RICK, STEINER, FELL
& BENOWITZ, LLP,

                    Third-Party Defendants.

————————————————————

07 Civ. *10331* (RMB)(DFE)

**NOTICE OF REMOVAL**

**ECF CASE**

Pursuant to 28 U.S.C. §§ 1338(a), 1367, 1441(a) and 1446, defendants Thelen Reid Brown Raysman & Steiner LLP and Robert E. Krebs (the "Thelen Defendants"), by their attorneys, Proskauer Rose LLP, and defendant Greenberg Traurig, LLP ("Greenberg"), by its attorneys, Pollack & Kaminsky, being all of the defendants in this action, hereby file this Notice of Removal of the above-captioned action to the United States District Court for the Southern District of New York from the Supreme Court of the State of New York, County of New York, where the action is now pending. In support of this Notice of Removal, defendants state as follows:

1.    The above-captioned action was commenced in the Supreme Court of the State of New York, County of New York (Index No. 07/105235) ("Summons and Verified Complaint"), on or about April 18, 2007 (Exhibit 1). Plaintiff Quickie, LLC, filed an Amended Complaint ("Amended Complaint"), on or about May 15, 2007 (Exhibit 2). Defendant Greenberg filed an Answer to the Amended Complaint ("Greenberg Answer"), on or about June 19, 2007 (Exhibit 3). The Thelen Defendants filed an Answer, Counterclaim, Cross-Claim and Third-Party Complaint ("Thelen Third-Party Complaint"), on or about June 29, 2007 (Exhibit 4). Defendant Greenberg filed an Amended Answer and Cross-Claim ("Greenberg Amended Answer"), on or about July 9, 2007 (Exhibit 5). Third-Party Defendant Todd Sharinn ("Sharinn") filed a Counterclaim, Cross-Claim and an Answer to the Third-Party Complaint ("Sharinn Answer"), on or about July 19, 2007 (Exhibit 6). Plaintiff Quickie, LLC, filed an Answer to Thelen's Counterclaim ("Quickie Answer to Counterclaim"), undated and served on or about July 24, 2007 (Exhibit 7). The Thelen Defendants filed an Answer to Cross-Claims of Greenberg Traurig, LLP ("Answer to Cross-Claims"), on August 13, 2007 (Exhibit 8). The Thelen Defendants filed an Answer to Counterclaim of Todd Sharinn ("Answer to Counter-

Claim"), on August 13, 2007 (Exhibit 9). The Thelen Defendants filed an Amended Third-Party Complaint ("Thelen Amended Third-Party Complaint"), on or about September 18, 2007 (Exhibit 10).[1] Third-party defendant Pepe & Hazard has been dismissed from this action without prejudice.

2.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1338(a).

3.     In a pair of decisions issued October 15, 2007, the United States Court of Appeals for the Federal Circuit held, in a matter of first impression, that federal courts may exercise jurisdiction over legal malpractice actions – even when diversity of citizenship is lacking – if proof of patent infringement or validity is a necessary element of the legal malpractice cause of action (*Air Measurement Technologies Inc. v. Akin Gump Strauss Hauer & Feld LLP*, No. 07-1035 (Fed. Cir. Oct. 15, 2007); *Immunocept LLC v. Fulbright & Jaworski LLP*, No. 06-1432, (Fed. Cir. Oct. 15, 2007). The Federal Circuit decisions thus provide defendants with their first opportunity to remove this action to the federal courts.

4.     Plaintiff's Complaint seeks judgment against defendants Thelen and Greenberg for alleged legal malpractice arising out of a patent representation. (*See* Amended Complaint ¶¶ 29, 30, 36, 41, 42, 47, 48, 54, 55). As was the case in the Federal Circuit decisions in *Air Measurement* and *Immunocept*, patent infringement and validity are necessary elements of the plaintiff's legal malpractice claim and raises a substantial, contested question of patent law that Congress intended for resolution in federal court. Specifically, plaintiff contends that the

---

[1] A motion to dismiss the Thelen Amended Third-Party Complaint, filed by third-party defendants Alan Fell and Rick, Steiner, Fell & Benowitz, LLP, is pending.

actions or inactions of the defendants caused it to lose in excess of $10 million in damages that it contends it would have been awarded in a patent infringement suit, and in lost revenues that it contends it would have received from licensing the patent in dispute. Thus, the following are necessary elements of plaintiff's legal malpractice claim as alleged in this action: (a) that the patent was infringed by the defendant in the underlying patent infringement action and (b) that the patent was valid notwithstanding invalidity defenses asserted by the defendant in the underlying patent infringement action and in reexamination proceedings that were pending before the United States Patent and Trademark Office.

5.    This Notice of Removal is timely filed, pursuant to 28 U.S.C. §1446(b), because fewer than 30 days have elapsed since the issuance of the Federal Circuit decisions in *Air Measurement* and *Immunocept* from which it was first determined that this action is one that is properly removable. No other process, pleading, or orders have been served upon defendants in this action other than the documents annexed hereto.

6.    As required by 28 U.S.C. §1446(d), upon the filing of this Notice of Removal, Defendants will serve written notice thereof on plaintiff, by and through plaintiff's attorneys, Janvey, Gordon, Herlands, Randolph & Cox, LLP and Diamond McCarthy, LLP, and upon third-party defendants Rick, Steiner, Fell & Benowitz and Alan Fell, by their attorneys, Vorys, Sater, Seymour and Pease LLP and Nixon Peabody LLP, and a copy of this Notice of Removal will be filed with the Clerk of the Court for the Supreme Court of the State of New York, County of New York.

7.    By filing this Notice of Removal, defendants do not waive any defenses that may be available to them.

4

WHEREFORE, defendants respectfully request that this action be removed from the Supreme Court of the State of New York, County of New York to the United States District Court for the Southern District of New York.

Dated: New York, New York
November 14, 2007

PROSKAUER ROSE LLP

By: _____
Steven C. Krane

1585 Broadway
New York, NY  10036-8299
(212) 969-3435
*Attorneys for Thelen Reid Brown*
*Raysman & Steiner LLP and Robert*
*E. Krebs*

POLLACK & KAMINSKY

By: _____
Martin I. Kaminsky
Justin Y. K. Chu

114 West 47th Street
New York, New York 10036
(212) 575-4700
*Attorneys for Greenberg Traurig, LLP and*
*Todd Sharinn*

5

C 104—Summons without Notice, Blank Court.
Personal or Substituted Service. 8-00

© 1979 BY JULIUS BLUMBERG, INC.
PUBLISHER, NYC 10013

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

QUICKIE, LLC,

against

GREENBERG TRAURIG, LLC

Plaintiff

Defendant

Index No.

Plaintiff designates C 7 1 0 5 2 3 5
New York
County as the place of trial

The basis of the venue is
principal place of business of
plaintiff

**Summons**

Plaintiff's residence principal place
of business is c/o Rick, Steiner,
Segal & Fell, 3 New York Plaza,
County of NY, NY 10004
New York

To the above named Defendant

**You are hereby summoned** to answer the complaint in this action and to serve a copy
of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's
Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days
after the service is complete if this summons is not personally delivered to you within the State of New York); and in
case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated, New York, New York, April 17, 2007

Defendant's address:

200 Park Avenue
New York, New York  10166

FILED
APR 18 2007
NEW YORK
COUNTY CLERKS OFFICE

JANVEY, GORDON, HERLANDS, RANDOLPH
& COX, LLP
Attorney(s) for Plaintiff
Office and Post Office Address

355 Lexington Avenue, 10th Fl.
New York, New York  10017
(212) 986-1200

04/19/2007 THU 13:02 FAX                                                      ☒002/009

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

QUICKIE, LLC,                              :     Index No. _____

                          Plaintiff,       :

    -against-                              :     COMPLAINT

GREENBERG TRAURIG, LLC                                        07105235

                          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Plaintiff, Quickie, LLC, by and through its attorneys, Janvey, Gordon, Herlands,

Randolph & Cox, LLP and Diamond, McCarthy, Taylor, Finley & Lee L.L.P., as and for its

Complaint, alleges as follows:

## SUMMARY OF CLAIMS

1.       This is a legal malpractice action seeking to redress the harms caused by

Greenberg Traurig, LLP ("Greenberg"). Quickie, LLC ("Quickie" or "Plaintiff") retained

Greenberg and Todd S. Sharinn, Esq. ("Sharinn"), a New York licensed attorney employed by

Greenberg and practicing law in Greenberg's New York City office, to provide legal expertise

and advice concerning a valuable medical device patent held by Quickie.

2.       Defendant's negligence and malpractice occurred when, despite making

affirmative representations to the contrary, Defendant failed to notify Plaintiff shortly before

maintenance fees were due on the patent, and failed to forward maintenance fee reminder notices

Defendant received from the United States Patent and Trademark Office (the "PTO").

04/19/2007 THU 13:02  FAX                                                    ☑003/009

3.      Defendant's negligence and negligent misrepresentations materially damaged Quickie — a company formed by world-renowned cardiovascular surgeons and physicians — all of whom reasonably, justifiably and foreseeably relied on Defendant's written representations and legal expertise to ensure that Quickie's patent rights were appropriately pursued and protected.  Upon information and belief, as a result of Defendant's wrongdoing, Quickie has suffered more than $10 million in actual and consequential damages, for which recovery is sought herein.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff Quickie, LLC is a limited liability company organized and existing under the laws of the State of New York, and having its principal place of business at Rick, Steiner, Segal & Fell, 3 New York Plaza, New York, New York, 10004, Attention Alan L. Fell, Esq.

5.      Defendant Greenberg Traurig, LLP is a New York registered limited liability partnership with its principal place of business in the State of New York located at 200 Park Avenue, New York, New York 10166.  Greenberg is liable for the acts of Sharrin by virtue of the principles of *respondeat superior.*

6.      Quickie's claims arise under the laws of New York.  Venue is proper under CPLR 503 because Plaintiff resides in New York County.

## BACKGROUND

7.      In the late 1990's, Quickie developed a device known as the "Passive Knotless Suture Terminator for Use in Minimally Invasive Surgery and to Facilitate Standard Tissue Securing" for use in open-heart surgeries (the "Quickie Device").  In 1998, Quickie retained Sharrin and his former law firm, Pepe & Hazard L.L.P. ("PH") to file an application with the PTO seeking a patent covering the Quickie Device. In November 1998, Quickie signed

108754-5                                2

a licensing and product development agreement with Medtronic, Inc. ("Medtronic"), and agreed to share confidential and proprietary information to assist Medtronic's evaluation of the Quickie Device. Medtronic ultimately declared that it was no longer interested in licensing Quickie Device, and that it was terminating the license agreement.

      8.    On May 23, 2000, the PTO issued U.S. Patent No. 6,066,160 covering the Quickie Device (the "'160 Patent"). On May 30, 2000 and while he was still employed by PH, Sharinn wrote to Quickie to announce that the PTO had issued the '160 Patent, and that he "will notify [Quickie] regarding payment of the maintenance fees several months before they are due." When Sharinn left PH and joined Greenberg, the Quickie engagement likewise was transferred to Greenberg, and Greenberg assumed Sharinn's promise to notify Quickie before the maintenance fees were due.

      9.    Shortly thereafter, Medtronic began marketing a device that was virtually identical to the Quickie Device, thus infringing on the newly-granted '160 Patent. On February 11, 2002, Defendant filed Quickie's infringement claims against Medtronic in the United States District Court for the Southern District of New York, Civil Action No. 02 Civ. 1157 (the "Medtronic Litigation").

      10.    On October 22, 2002, Defendant completed an official PTO form entitled "Fee Address Indication Form," specifying that correspondence related to maintenance fees for the '160 Patent should also be sent to Sharinn at Greenberg's offices in New York City. Sharinn mailed the Fee Address Indication Form to the PTO on October 22, 2002, and faxed it to the PTO on December 16, 2002, using Greenberg stationary.

11.    Defendant's experience in representing patent owners before the PTO is reported in its marketing materials.  For example, Greenberg's website states that its patent capabilities:

> run the gamut from application preparation and filing to examination and appeal processes to maximizing technology transfer opportunities – as well as handling patent litigation, when necessary. Through our experience working with a wide range of clients, we have developed a structured process for obtaining patent claims that provides strategic flexibility for our clients to best achieve their business goals.

Sharinn's biography similarly reports that he has "over fourteen years of legal experience in the worldwide acquisition, exploitation and aggressive enforcement of intellectual property rights," and that he is admitted to practice before the PTO.  Given Defendant's and Sharinn's experience and reputation in assisting patent owners protect their inventions, at all relevant times Quickie reasonably relied on them to represent, protect, and maintain Quickie's ownership of the '160 Patent before the PTO.

12.    Pursuant to 37 C.F.R. §1.362(e)(1), the window for payment of maintenance fees on the '160 Patent opened on May 23, 2003, and closed one year later on May 23, 2004.  During the entire period May 23, 2003 to May 23, 2004, Defendant was on record at the PTO as the designated recipient of all communications related to maintenance fees on the '160 Patent.  Moreover, Defendant expressly represented to Quickie that it would notify Quickie several months before the maintenance fees were due.  Nevertheless, Defendant did not forward PTO reminder notices concerning maintenance fees on the '160 Patent, nor did it notify Quickie shortly before maintenance fees were due as promised.  Pursuant to PTO regulations, the '160 Patent thus expired on May 24, 2004.

04/19/2007 THU 13:03  FAX                                                      ☑006/009

13.    In July, 2006, Quickie learned that the '160 Patent had expired when a medical device company pulled out of ongoing negotiations to license the Quickie Device. Shortly thereafter, the PTO issued a determination that the '160 Patent was no longer valid, and the Medtronic Litigation was dismissed.

## FIRST CAUSE OF ACTION
### (Negligence/Legal Malpractice)

14.    Plaintiff repeats and realleges paragraphs 1 through 13 and incorporates them by reference.

15.    At all relevant times, an attorney-client relationship existed between Defendant and Plaintiff with respect to the preservation of Plaintiff's ownership interests in the '160 Patent. In so representing Plaintiff, Sharinn was at all relevant times acting within the course and scope of his employment with Greenberg. Pursuant to the attorney-client relationship, Defendant owed Plaintiff a duty to exercise the reasonable skill and common knowledge expected of the legal profession, including, but not limited to, a duty to monitor and inform Quickie of deadlines to pay PTO maintenance fees on the '160 Patent.

16.    In breach of its duties to Plaintiff, Defendant failed to exercise the reasonable skill and common knowledge expected of the legal profession. Specifically, upon information and belief, Defendant failed to establish an effective calendaring system to monitor the deadlines for maintenance payments on the '160 Patent, failed to notify Quickie that said maintenance fees could have been paid at any time between May 23, 2003 and May 23, 2004, and failed to forward PTO reminder notices for payment of maintenance fees on the '160 Patent.

17.    Upon information and belief, Defendant's breaches of the duties owed to Plaintiff caused Plaintiff to suffer serious economic damages in excess of $10 million that continue through the present,   including, but not limited to: (1) loss of Plaintiff's ability to

recover infringement damages from Medtronic upon conclusion of the Medtronic Litigation; (2) wasted attorneys' fees and expenses incurred in pursuit of the Medtronic Litigation; (3) loss of royalties Quickie would have earned from licensing the '160 Patent; and (4) additional attorneys' fees and expenses incurred to remedy Defendant's malpractice and negligence.

18.    Upon information and belief, but for Defendant's negligence and malpractice, the maintenance fees for the '160 Patent would have been paid when they were due, the '160 Patent would be viable today, the Medtronic Litigation would have resulted in a judgment awarding Plaintiff damages as a result of Medtronic's infringement of the '160 Patent, and Plaintiff would have licensed the Quickie Device to other interested parties. All conditions precedent to Plaintiff's recovery on this cause of action have occurred or have been satisfied.

19.    By reason of the foregoing, Defendant is liable to Plaintiff.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)

20.    Plaintiff repeats and realleges paragraphs 1 through 19 and incorporates them by reference.

21.    At all relevant times, an attorney-client relationship existed between Defendant and Plaintiff with respect to preservation of Plaintiffs' ownership of the '160 Patent. As part of that relationship, Sharinn negligently misrepresented to Plaintiff that he would provide notice several months before maintenance fees were due to be paid on the '160 Patent. In hiring Sharinn and notifying the PTO that all PTO correspondence concerning payment of maintenance fees on the '160 Patent was to be sent to Greenberg's offices, Greenberg adopted Sharinn's negligent misrepresentations to Quickie in that regard. Further, as part of the attorney-client relationship between Defendant and Plaintiff, Defendant represented that it was highly

competent in practicing before the PTO, it was well-versed in PTO regulations and procedures, and that it would prosecute and protect the '160 Patent.

22.    Defendant intended that Quickie rely, or should have reasonably foreseen that Quickie would so rely, on the above-referenced negligent misrepresentations. Nevertheless, upon information and belief, Defendant did not establish reliable calendaring systems to ensure that the promised notice would be provided, nor did it have any reasonable basis for believing that such notice would be provided to Quickie.

23.    Quickie reasonably and foreseeably relied on Defendant's negligent misrepresentations. Had Quickie known that Defendant did not establish reliable calendaring systems for monitoring the deadlines for payment of maintenance fees on the '160 Patent, Quickie would not have authorized Defendant to designate itself as the recipients of all PTO correspondence concerning such maintenance fees, nor would Quickie have relied upon Defendant's promise to provide notice several months before the maintenance fees were due.

24.    Upon information and belief, as a proximate result of its reliance on Defendant's negligent misrepresentations, Plaintiff suffered serious economic damages in excess of $10 million that continue to the present including, but not limited to: (1) loss of Plaintiff's ability to recover infringement damages from Medtronic upon conclusion of the Medtronic Litigation; (2) wasted attorneys' fees and expenses in pursuit of the Medtronic Litigation; (3) loss of royalties Quickie would have earned from licensing the '160 Patent; and (4) additional attorneys' fees and expenses incurred to remedy Defendant's negligence and malpractice. All conditions precedent to Plaintiff's recovery on this cause of action have occurred or have been satisfied.

25.    By reason of the foregoing, Defendant is liable to Plaintiff.

108754-5                                    7

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Quickie, LLC requests that this Court grant it judgment against Defendant and award it:

    1.    All applicable and appropriate actual, consequential, statutory, and exemplary damages and attorneys' fees, as permitted by law, with interest thereon; and

    2.    Such other and further relief to which Plaintiff is entitled.

Dated: New York, New York
       April 1͟7͟, 2007

                               Respectfully submitted,

                               JANVEY, GORDON, HERLANDS, RANDOLPH
                               & COX, LLP
                               Attorneys for Plaintiff

                               By: _____
                                    Richard I. Janvey
                               A Member of the Firm
                               355 Lexington Avenue
                               New York, New York 10017
                               (212) 986-1200

                               DIAMOND McCARTHY TAYLOR FINLEY
                               BRYANT & LEE, LLP
                               Of Counsel
                               Two Houston Center
                               909 Fannin, Suite 1500
                               Houston, Texas 77010
                               (713) 333-5100

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

QUICKIE, LLC,                                                  :    Index No. 105235/07

                                      Plaintiff,              :

-against-                                                      :    AMENDED COMPLAINT

GREENBERG TRAURIG, LLC; THELEN REID          :
BROWN RAYSMAN & STEINER LLP (FORMERLY
KNOWN AS THELEN, REID & PRIEST, LLP); AND    :
ROBERT E. KREBS, ESQ.
                                                              :

                                      Defendants.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

                Plaintiff, Quickie, LLC, by and through its attorneys, Janvey, Gordon, Herlands,

Randolph & Cox, LLP and Diamond, McCarthy, L.L.P., as and for its Amended Complaint,

alleges as follows:

                                      **SUMMARY OF CLAIMS**

                1.      This is a legal malpractice action seeking to redress the harms caused by

Greenberg Traurig, LLP ("Greenberg"), Robert E. Krebs, Esq.("Krebs"), and the law firm in

which Krebs currently serves as an equity partner, Thelen Reid Brown Raysman & Steiner

LLP, formerly known as Thelen, Reid & Priest, L.L.P. ("Thelen" and, collectively with

Greenberg and Krebs, "Defendants").   Quickie, LLC ("Quickie" or "Plaintiff") retained

Defendants to provide legal expertise and advice concerning a valuable medical device patent

held by Quickie.

                2.      Defendants' negligence and malpractice occurred when, despite their

affirmative representations to the contrary, Defendants failed to notify Plaintiff before fees

were due to maintain the patent. Thelen and Krebs were further negligent and committed malpractice by seeking to amend Plaintiff's patent after it had expired and without reasonable inquiry to ensure that the patent was in force and amendable, thereby causing Plaintiff to miss an opportunity to reinstate the expired patent.

3.     Defendants' conduct materially damaged Quickie – a company formed by leading cardiovascular surgeons and physicians – all of whom reasonably, justifiably and foreseeably relied on Defendants' representations and legal expertise to ensure that Quickie's patent rights were appropriately protected and pursued. Upon information and belief, Quickie has suffered more than $10 million in actual and consequential damages a result of Defendant's wrongdoing.

## PARTIES, JURISDICTION AND VENUE

4.     Plaintiff Quickie, LLC is a limited liability company organized and existing under the laws of the State of New York, and having its principal place of business at Rick, Steiner, Segal & Fell, 3 New York Plaza, New York, New York, 10004, Attention Alan L. Fell, Esq.

5.     Defendant Greenberg Traurig, LLP is a New York registered limited liability partnership with its principal place of business in the State of New York located at 200 Park Avenue, New York, New York 10166.

6.     Defendant Thelen Reid Brown Raysman & Steiner LLP (formerly known as Thelen, Reid & Priest, L.L.P.) is a registered limited liability partnership with its principal place of business located at 875 Third Avenue, New York, New York, 10022. In 2006, Thelen, Reid & Priest, L.L.P. merged with Brown, Raysman, Millstein, Felder & Steiner, L.L.P., to form Thelen Reid Brown Raysman & Steiner LLP, named as Defendant herein.

Upon information and belief, Thelen assumed all of Thelen, Reid, & Priest, L.L.P.'s liabilities at issue in this action pursuant to that merger.

7.     Defendant Robert E. Krebs, Esq. is a resident of the State of California and was, at all relevant times, an equity partner at Thelen who transacted business in New York State.

8.     Quickie's claims arise under the laws of New York.  Venue is proper under CPLR 503 because Plaintiff resides in New York County.

## BACKGROUND

9.     In the late 1990's, Quickie developed a device known as the "Passive Knotless Suture Terminator for Use in Minimally Invasive Surgery and to Facilitate Standard Tissue Securing" for use in open-heart surgeries (the "Quickie Device").  In 1998, Quickie retained Todd S. Sharinn, Esq. ("Sharinn"), a New York licensed attorney then-employed at the law firm Pepe & Hazard L.L.P. ("Pepe"), to file an application with the United States Patent and Trademark Office (the "PTO") seeking a patent covering the Quickie Device.  In November 1998, Quickie signed a licensing and product development agreement with Medtronic, Inc. ("Medtronic"), and agreed to share confidential and proprietary information to assist Medtronic's evaluation of the Quickie Device.  Medtronic ultimately declared that it was not interested in licensing the Quickie Device, and that it was terminating the license and product development agreement.

10.     On May 23, 2000, the PTO issued U.S. Patent No. 6,066,160 covering the Quickie Device (the "160 Patent").  On May 30, 2000, Sharinn, while he was still employed by Pepe, wrote to Quickie to inform it that the PTO had issued the 160 Patent, and that he "will notify [Quickie] regarding payment of the maintenance fees several months before they are

due." Shortly thereafter, Sharinn joined Greenberg's New York City office. The Quickie engagement was transferred to Greenberg, and Greenberg thereby assumed and became bound by Sharinn's promise and representation to notify Quickie several months before the maintenance fees were due.

11.    Shortly thereafter, Medtronic began marketing a device that was virtually identical to the Quickie Device, thus infringing on the 160 Patent. Upon discovering Medtronic's infringement, Plaintiff retained Greenberg to pursue infringement claims against Medtronic in the United States District Court for the Southern District of New York, Civil Action No. 02 Civ. 1157 (the "Medtronic Litigation"). On July 3, 2002, Quickie and Thelen executed a written engagement agreement whereby Quickie retained Thelen to replace Greenberg as lead litigation counsel in the Medtronic Litigation, while Greenberg continued to counsel Plaintiff in connection with proceedings before the PTO.

12.    On October 22, 2002, Greenberg, by and through Sharinn, completed an official PTO form entitled "Fee Address Indication Form" specifying that all PTO correspondence related to maintenance fees for the 160 Patent should be sent to Sharinn at Greenberg's offices in New York City. Sharinn mailed the Fee Address Indication Form to the PTO on October 22, 2002, and faxed it to the PTO on December 16, 2002, using Greenberg stationary.

13.    On November 25, 2002, Medtronic commenced reexamination proceedings before the PTO, seeking to redefine the 160 Patent in a manner that would arguably moot the Medtronic Litigation (the "Reexamination"). Thereafter, Quickie retained Thelen and Krebs (collectively, "Thelen/Krebs") to transact all post-issuance business before the PTO related to the 160 Patent.

14.    Specifically, on March 4, 2003, Thelen/Krebs prepared, and Quickie signed, a general power of attorney (the "Thelen Power of Attorney") revoking all prior powers of attorney and designating Krebs as the lead attorney to prosecute and transact all business in the PTO concerning the 160 Patent application. Krebs and other Thelen attorneys working under Kreb's direction and supervision had regular contact with PTO representatives concerning all aspects of the 160 Patent including, but not limited to, construction and enforcement of the 160 Patent.

15.    In December 2003, Thelen/Krebs prepared, and Quickie approved, a second PTO filing stating that all PTO communications concerning the 160 Patent should be sent directly to Krebs (the "Thelen Address Notice"). Plaintiff reasonably understood from the Thelen Address Notice that Thelen/Krebs would be responsible for handling all written and oral communications with the PTO concerning the 160 Patent. Plaintiff now has reason to believe, however, that Thelen/Krebs did not file a "Fee Address Indication Form" to inform the PTO that correspondence related to maintenance fees on the 160 Patent should be sent to their attention. Moreover, upon further information and belief, Quickie now understands that neither Greenberg nor Sharinn notified the PTO that they were no longer the designated recipient of all PTO communications concerning payment of maintenance fees on the 160 Patent.

16.    Plaintiff's decision to rely upon Defendants to handle all PTO matters concerning the 160 Patent was based, in part, on Defendants' representation that they were each highly competent in practicing before the PTO, that they were well-versed in PTO regulations and procedures, and that they would competently and aggressively prosecute and protect the 160 Patent. For example, Greenberg's website states that its patent capabilities:

> run the gamut from application preparation and filing to
> examination and appeal processes to maximizing technology

> transfer opportunities – as well as handling patent litigation,
> when necessary. Through our experience working with a wide
> range of clients, we have developed a structured process for
> obtaining patent claims that provides strategic flexibility for our
> clients to best achieve their business goals.

Sharinn's biography similarly reports that he is admitted to practice before the PTO and has

"over fourteen years of legal experience in the worldwide acquisition, exploitation and

aggressive enforcement of intellectual property rights."

        17.    Thelen's and Krebs' experience in representing patent owners before the

PTO is likewise widely reported in their marketing materials. For example, Thelen's web site

states that its patent group:

> [c]ounsels clients in all aspects of acquiring, perfecting, and
> protecting the client's interests in its patents and other intellectual
> property, including . . . representation in reexamination, reissues,
> oppositions, interferences, protests, and appeals.

Thelen's website also states that Krebs has over 30 years of patent prosecution experience,

focusing on representing patent owners in the prosecution and protection of patents before the

PTO. Thelen appointed Krebs co-chair of its intellectual property and trade regulation group,

and reported in its publications that Krebs was named in 2005 as one of the top 30 IP lawyers

in the United States. Krebs states in the fall 2005 edition of Thelen's Intellectual Property and

Trade Regulation Journal that his prior work as in-house general counsel allows him to "see

issues and problems through the eyes of my clients . . . I've sat in their chair and I've stood in

their shoes, and that's my perspective on their problems."

        18.    Pursuant to 37 C.F.R. §1.362(e)(1), the window for payment of

maintenance fees on the 160 Patent opened on May 23, 2003, and closed one year later on May

23, 2004. During the entire period between May 23, 2003 to May 23, 2004, Greenberg was on

record at the PTO as the designated recipient of all communications related to maintenance fees

on the 160 Patent.    Moreover, Greenberg, by hiring Sharinn, adopted Sharinn's express representation that they would notify Quickie several months before the maintenance fees were due.    Nevertheless, Greenberg never forwarded the PTO's reminder notices concerning maintenance fees on the 160 Patent, nor did it notify Quickie shortly before maintenance fees were due.

19.    On May 23, 2004, Thelen/Krebs held Quickie's general power of attorney, and Thelen/Krebs had previously represented to Quickie that they would receive all PTO correspondence concerning the 160 Patent.    Nevertheless, Thelen/Krebs did not pay the maintenance fees when they were due on May 23, 2004, nor did they timely notify or advise Quickie that the maintenance fees were due.    Accordingly, pursuant to PTO regulations, the 160 Patent expired on May 24, 2004, and the two year period to reinstate the 160 Patent pursuant to 37 C.F.R. § 1.378(c) (the "Reinstatement Period") expired on May 24, 2006.

20.    In June 2004, a second reexamination proceeding concerning the 160 Patent was commenced in the PTO (the "Second Reexamination"), and Quickie further retained Thelen/Krebs to serve as lead counsel in connection therewith.    In December 2004, the PTO merged the Reexamination and the Second Reexamination (collectively, the "Reexamination Proceedings").

21.    In January and June 2005, Thelen/Krebs filed written amendments to the 160 Patent (the "Amendments") wherein they represented that the 160 Patent claims were pending and able to be substantively amended.    PTO regulations required Thelen/Krebs to make a reasonable inquiry to gather supporting evidence prior to making those representations. See 37 C.F.R. § 10.18(b)(2)(iii) (2007).    Upon information and belief, Thelen/Krebs made no such inquiry prior to filing the Amendments with the PTO and sending them to Plaintiff.

22.    In fact, the 160 Patent had expired months earlier, and PTO regulations prohibited entry of the amendments Thelen/Krebs sought.  *See* 37 C.F.R. §1.530(j) (2007). Had Thelen and Krebs inquired about the status of the 160 Patent before making those representations and filing the Amendments, they would have discovered the maintenance fees had not been paid during the Reinstatement Period.  In failing to inquire as to the 160 Patent's status prior to filing the Amendments, Thelen and Krebs violated PTO regulations that required such an inquiry and that prohibited all efforts to make substantive amendments to expired patents.  Moreover, in affirmatively representing that the 160 Patent was pending and able to be substantively amended at a time when it had in fact expired, Thelen/Krebs misled Quickie into believing that the 160 Patent was still in force.

23.    While the Reexamination Proceedings continued before the PTO, the court hearing the Medtronic Litigation issued multiple continuances and delayed the trial setting several times.  When it became clear that the Reexamination Proceedings would not be resolved quickly, the court dismissed the Medtronic Litigation without prejudice pursuant to a stipulation agreed to by Quickie and Medtronic and providing that, pending resolution of the Reexamination Proceedings, the Medtronic Litigation would be dismissed without prejudice, all statutes of limitation would be tolled, and any revived litigation would be filed in the same court.

24.    In July, 2006, Quickie learned for the very first time that the 160 Patent had expired when a medical device company withdrew from ongoing negotiations to license the Quickie Device.  Shortly thereafter, the Reexamination Proceedings were terminated, and the PTO issued a determination that the 160 Patent was no longer valid.

## CAUSES OF ACTION

25.    Plaintiff pleads all causes of action in the alternative, and no factual or legal assertion in connection with one cause of action is intended to be or shall be construed as an admission with respect to any other cause of action.

### FIRST CAUSE OF ACTION
(Negligence/Legal Malpractice against Greenberg Traurig, LLC)

26.    Plaintiff repeats and realleges paragraphs 1 through 25 and incorporates them by reference.

27.    At all relevant times, an attorney-client relationship existed between Greenberg and Plaintiff with respect to the preservation of Plaintiff's ownership interests in the 160 Patent. In so representing Plaintiff, Sharinn was at all relevant times acting within the course and scope of his employment with Greenberg. Pursuant to the attorney-client relationship, Greenberg owed Plaintiff a duty to exercise the reasonable skill, care and knowledge expected of the legal profession, including, but not limited to, a duty to monitor and inform Quickie of deadlines to pay PTO maintenance fees on the 160 Patent.

28.    In breach of its duties to Plaintiff, Greenberg failed to exercise the reasonable skill, care and knowledge expected of the legal profession. Specifically, upon information and belief, Greenberg failed to establish an effective calendaring system to monitor the deadlines for maintenance payments on the 160 Patent, failed to notify Quickie that said maintenance fees could have been paid at any time between May 23, 2003 and May 23, 2004, and failed to forward PTO reminder notices for payment of maintenance fees on the 160 Patent in violation of 37 C.F.R. § 10.23(c)(8) (2007).

29.    Upon information and belief, Greenberg's breaches of the duties owed to Plaintiff caused Plaintiff to suffer serious economic damages in excess of $10 million that

continue through the present,    including, but not limited to: (1) loss of Plaintiff's ability to recover infringement damages from Medtronic upon conclusion of the Medtronic Litigation; (2) attorneys' fees and expenses incurred in pursuit of the Medtronic Litigation; (3) lost royalties Quickie would have earned from licensing the 160 Patent; and (4) attorneys' fees and expenses incurred to remedy Defendant's malpractice and negligence.

        30.    Upon information and belief, but for Greenberg's negligence, the maintenance fees for the 160 Patent would have been paid when they were due, the 160 Patent would be viable today, the Medtronic Litigation would have resulted in a judgment awarding Plaintiff damages as a result of Medtronic's infringement of the 160 Patent, and Plaintiff would have licensed the Quickie Device to third parties.    All conditions precedent to Plaintiff's recovery on this cause of action have occurred or have been satisfied.

        31.    By reason of the foregoing, Greenberg is liable to Plaintiff.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation against Greenberg Traurig, LLC)

        32.    Plaintiff repeats and realleges paragraphs 1 through 25 and incorporates them by reference.

        33.    At all relevant times, an attorney-client relationship existed between Greenberg and Plaintiff with respect to preservation of Plaintiffs' ownership of the 160 Patent. As part of that relationship, Sharinn represented to Plaintiff that he would provide notice several months before maintenance fees were due to be paid on the 160 Patent.  In hiring Sharinn and notifying the PTO that all PTO correspondence concerning payment of maintenance fees on the 160 Patent was to be sent to Greenberg's offices, Greenberg adopted Sharinn's representations to Quickie.  Further, as part of the attorney-client relationship between Greenberg and Plaintiff, Greenberg represented that it was highly competent in

practicing before the PTO, that it was well-versed in PTO regulations and procedures, and that it would prosecute and protect the 160 Patent.

34.    Greenberg intended that Quickie rely, or should have reasonably foreseen that Quickie would so rely, on the above-referenced representations. Nevertheless, upon information and belief, Greenberg did not establish reliable calendaring systems to ensure that the promised notice would be provided, and it therefore did not have any reasonable basis for believing the promised notice would be provided to Quickie.

35.    Quickie reasonably and foreseeably relied on Greenberg's negligent misrepresentations. Had Quickie known that Greenberg did not establish reliable calendaring systems for monitoring the deadlines for payment of maintenance fees on the 160 Patent, Quickie would not have authorized Greenberg to designate itself as the recipients of all PTO correspondence concerning such maintenance fees, nor would Quickie have relied upon Greenberg's promise to provide notice before the maintenance fees were due.

36.    Upon information and belief, as a proximate result of its reliance on Greenberg's negligent misrepresentations, Plaintiff suffered serious economic damages in excess of $10 million that continue to the present including, but not limited to: (1) loss of Plaintiff's ability to recover infringement damages from Medtronic upon conclusion of the Medtronic Litigation; (2) attorneys' fees and expenses in pursuit of the Medtronic Litigation; (3) lost royalties Quickie would have earned from licensing the 160 Patent; and (4) attorneys' fees and expenses incurred to remedy Greenberg's negligence and malpractice. All conditions precedent to Plaintiff's recovery on this cause of action have occurred or have been satisfied.

37.    By reason of the foregoing, Greenberg is liable to Plaintiff.

## THIRD CAUSE OF ACTION
### (Negligence/Legal Malpractice against Thelen Reid Brown Raysman & Steiner LLP and Robert E. Krebs, Esq.)

38.     Plaintiff repeats and realleges paragraphs 1 through 25 and incorporates them by reference.

39.     Beginning on July 2, 2002 and continuing to August 14, 2006, an attorney-client relationship existed between Thelen/Krebs and Plaintiff with respect to the prosecution and transaction of all business in the United States Patent and Trademark Office concerning the 160 Patent. In so representing Plaintiff, Krebs was at all relevant times acting within the course and scope of his employment and partnership with Thelen. Pursuant to the attorney-client relationship between Thelen/Krebs and Plaintiff, Thelen/Krebs owed Plaintiff a duty to exercise the reasonable skill, care and knowledge expected of a member of the legal profession, including, but not limited to, a duty to monitor and inform Quickie of deadlines to pay PTO maintenance fees on the 160 Patent.

40.     In breach of their duties to Plaintiff, Thelen/Krebs failed to exercise the reasonable skill, care and knowledge expected of a member of the legal profession. Specifically, Thelen/Krebs failed to establish an effective calendaring system to monitor the deadlines for maintenance payments on the 160 Patent, failed to notify Quickie that said maintenance fees were due on May 23, 2004, and failed to pay such maintenance fees when they were due.

41.     Upon information and belief, Thelen/Krebs' breaches of the duties they owed to Plaintiff caused Plaintiff to suffer serious economic damages in excess of $10 million that continue through the present including, but not limited to: (1) loss of Plaintiff's ability to recover infringement damages from Medtronic upon conclusion of the Medtronic Litigation; (2) attorneys' fees and expenses incurred in pursuit of the Medtronic Litigation; (3) lost

royalties Quickie would have earned from licensing the 160 Patent; and (4) additional attorneys' fees and expenses incurred to remedy Defendants' malpractice and negligence.

42.     Upon information and belief, but for Thelen/Krebs' malpractice and negligence, the maintenance fees for the 160 Patent maintenance would have been paid when they were due, the 160 Patent would be viable today, the Medtronic Litigation would have resulted in a judgment awarding Plaintiff damages as a result of Medtronic's infringement of the 160 Patent, and Plaintiff would have licensed the Quickie Device other interested parties. All conditions precedent to Plaintiff's recovery on this cause of action have occurred or have been satisfied.

43.     By reason of the foregoing, Thelen/Krebs are liable to Plaintiff.

### FOURTH CAUSE OF ACTION
(Negligence/Legal Malpractice against Thelen Reid Brown Raysman & Steiner LLP and Robert E. Krebs, Esq.)

44.     Plaintiff repeats and realleges paragraphs 1 through 25 and incorporates them by reference.

45.     Beginning on July 2, 2002 and continuing to August 14, 2006, an attorney-client relationship existed between Thelen/Krebs and Plaintiff with respect to the prosecution and transaction of all business in the United States Patent and Trademark Office concerning the 160 Patent. In so representing Plaintiff, Krebs was at all relevant times acting within the course and scope of his employment and partnership with Thelen. Pursuant to the attorney-client relationship between Thelen/Krebs and Plaintiff, Thelen/Krebs owed Plaintiff a duty to exercise the reasonable skill, care and knowledge expected of a member of the legal profession, including, but not limited to, a duty to competently, appropriately, and honestly represent Quickie in all aspects of the Reexamination Proceedings before the PTO.

46.     In breach of their duties, Thelen/Krebs failed to exercise the reasonable skill, care and knowledge expected of a member of the legal profession. Specifically, Thelen/Krebs failed to exercise the reasonable skill, care and knowledge expected of a member of the legal profession by prosecuting the Reexamination Proceedings concerning the 160 Patent, and filing the Amendments seeking to substantively amend the 160 Patent, without first making a reasonable inquiry as to the status of the 160 Patent as required by 37 C.F.R. § 10.18(b)(2)(iii) (2007). Thelen/Krebs further failed to exercise the reasonable skill, care and knowledge expected of a member of the legal profession when they represented to the PTO and Plaintiff that the 160 Patent claims were pending and capable of substantive amendment when, in fact, they had already expired and PTO regulations specifically forbid entry of the amendments Thelen/Krebs sought. *See* 37 C.F.R. § 1.530(j) (2007).

47.     Upon information and belief, Thelen/Krebs' breaches of the duties owed Plaintiff caused Plaintiff to suffer serious economic damage in excess of $10 million that continue to today including, but not limited to: (1) loss of Plaintiff's ability to recover infringement damages from Medtronic upon conclusion of the Medtronic Litigation; (2) attorneys' fees and expenses incurred in pursuit of the Medtronic Litigation; (3) lost royalties Quickie would have earned from licensing the 160 Patent to third parties; and (4) attorneys' fees and expenses incurred to remedy Defendants' malpractice and negligence.

48.     Upon information and belief, but for Thelen/Krebs' malpractice and negligence, Quickie would have discovered and reinstated the 160 Patent's expiration during the Reinstatement Period, the Medtronic Litigation would have resulted in a judgment awarding Plaintiff damages as a result of Medtronic's infringement of the 160 Patent, and

Plaintiff would have licensed the Quickie Device to other interested parties. All conditions precedent to Plaintiff's recovery on this cause of action have occurred or have been satisfied.

49.    By reason of the foregoing, Thelen/Krebs are liable to Plaintiff.

## FIFTH CAUSE OF ACTION
### (Negligent Misrepresentation against Thelen Reid Brown Raysman & Steiner LLP and Robert E. Krebs, Esq.)

50.    Plaintiff repeats and realleges paragraphs 1 through 25 and incorporates them by reference.

51.    Beginning on July 2, 2002 and continuing to August 14, 2006, an attorney-client relationship existed between Thelen/Krebs and Quickie. As part of that relationship, Thelen/Krebs represented to Quickie that they would prosecute and transact all business before the PTO concerning the 160 Patent application. Further, as part of that attorney-client relationship Thelen/Krebs represented to Quickie that they were highly competent in practicing before the PTO, that they were will-versed in PTO regulations and procedures, and that they would competently and aggressively prosecute and protect the 160 Patent. Thelen/Krebs further represented to Quickie and the PTO that the 160 Patent claims were pending and capable of substantive amendment when the Amendments were filed in January and June 2005. At all times relevant to these allegations, Krebs was acting within the course and scope of his employment and partnership with Thelen.

52.    In making the above-references representations, Thelen/Krebs intended that Quickie rely, or should have reasonably foreseen that Quickie would so rely, on said representations. Nevertheless, Thelen/Krebs did not establish a reliable calendaring system to ensure that the maintenance fees on the 160 Patent would be paid, nor did Thelen/Krebs have any reasonable basis for believing that they would monitor the due date for such fees and

provide Quickie reasonable notice before the fees were due. Moreover, Thelen/Krebs made no inquiry reasonable under the circumstances to confirm their representations to Plaintiff that the 160 Patent claims were pending and capable of substantive amendment in January and June 2005.

53.    Quickie reasonably and foreseeably relied on Thelen/Krebs' negligent misrepresentations. Had Quickie known that Thelen/Krebs had not established a reliable calendaring system for monitoring the deadlines for payment of maintenance fees on the 160 Patent, Quickie would not have given Thelen/Krebs a general power of attorney to prosecute and transact all business before the PTO concerning the 160 Patent application, nor would Quickie have looked to Thelen/Krebs to ensure that the maintenance fees were timely paid. Moreover, had Quickie known that Thelen/Krebs made no inquiry reasonable under the circumstances to confirm that the 160 Patent was pending and capable of substantive amendment when the Amendments were filed, Quickie would not have allowed Thelen/Krebs to file the Amendments on Quickie's behalf.

54.    Upon information and belief, as a proximate result of its reliance on Thelen/Krebs' negligent misrepresentations, Plaintiff has suffered serious economic damages in excess of $10 million that continue to today including, but not limited to: (1) loss of Plaintiff's ability to recover infringement damages from Medtronic upon conclusion of the Medtronic Litigation; (2) attorneys' fees and expenses incurred in pursuit of the Medtronic Litigation; (3) lost royalties Quickie would have earned from licensing the 160 Patent to third parties; and (4) attorneys' fees and expenses incurred to remedy Thelen/Krebs' malpractice and negligence.

55.    Upon information and belief, but for Thelen/Krebs' negligent misrepresentations, Quickie would not have relied on Thelen/Krebs to prosecute and transact

all business before the PTO concerning the 160 Patent, the 160 Patent would be viable today, the Medtronic Litigation would have resulted in a judgment awarding Plaintiff damages as a result of Medtronic's infringement of the 160 Patent, and Plaintiff would have licensed the Quickie Device to other interested parties. All conditions precedent to Plaintiff's recovery on this cause of action have occurred or have been satisfied.

56.    By reason of the foregoing, Thelen/Krebs are liable to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Quickie, LLC requests that this Court grant it judgment against Defendants and award it:

1.    Actual, consequential, statutory, and exemplary damages and attorneys' fees, as permitted by law, with interest thereon; and

2.    Such other and further relief to which Plaintiff is entitled.

Dated: New York, New York
       May 15, 2007

Respectfully submitted,

JANVEY, GORDON, HERLANDS, RANDOLPH
& COX, LLP
Attorneys for Plaintiff

By: _____
Richard I. Janvey (RJ1160)
Joan M. Secofsky (JS4053)
A Member of the Firm
355 Lexington Avenue
New York, New York 10017
(212) 986-1200

DIAMOND McCARTHY, LLP
Of Counsel
Two Houston Center
909 Fannin, Suite 1500
Houston, Texas 77010
(713) 333-5100

108754-5

17

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

QUICKIE, LLC,

                           Plaintiff,                       Index No. 10523/07

      - against -

GREENBERG TRAURIG, LLP, THELEN REID
BROWN RAYSMAN & STEINER LLP (FORMERLY
KNOWN AS THELEN, REID & PRIEST LLP); AND
ROBERT E. KREBS, ESQ.

                         Defendants.
------------------------------------------------------------------x

### GREENBERG TRAURIG'S
### ANSWER

Defendant Greenberg Traurig, LLP ["GT"] responds to the Amended Complaint of plaintiff Quickie, LLC ["Quickie"] as follows:

1.    Denies paragraph 1 insofar as it relates to GT, except admits that Quickie retained GT for a period of time; further admits on information and belief that Quickie thereafter replaced GT and retained defendants Thelen Reid Brown Raysman & Steiner LLP (as successor to Thelen Reid & Priest LLP) and Robert E. Krebs, Esq. [collectively "the Thelen Defendants"]; and denies knowledge and information sufficient to respond as to the Thelen Defendants.

2.    Denies paragraphs 2 and 3 insofar as they relate to GT; and denies knowledge and information sufficient to respond as to other persons or entities.

3.    Admits on information and belief paragraph 4.

4.    Denies paragraphs 5, except admits that GT is a limited liability partnership engaged in the practice of law in New York, with an office at 200 Park Avenue, New York, New York.

5.  Denies knowledge and information sufficient to respond to paragraphs 6 and 7, except admit on information and belief that the Thelen Defendants were attorneys for Quickie and practiced law in New York, New York.

6.  Denies knowledge and information sufficient to respond to paragraph 8, except admits that venue is proper in New York County.

7.  Denies knowledge and information sufficient to respond to paragraph 9, except admits on information and belief that Quickie contends it developed the device described therein ["the Quickie Device"], that Quickie (at some point prior to engaging GT) engaged another law firm in which Todd Sharrin was an attorney, that Quickie filed an application with the U.S. Patent & Trademark Office ["the PTO"] on the Quickie Device, and that Quickie had discussions with Medtronic, Inc. ["Medtronic"] about the Quickie Device.

8.  Denies paragraph 10, except admits that Quickie was issued U.S. Patent No. 6,066,160 ["the '160 Patent"] on the Quickie Device in about 2000, and that Sharinn joined GT sometime after the '160 Patent was issued; refers to the alleged correspondence and communications referred to in that paragraph for their contents; and declines to respond to matters of law.

9.  Denies knowledge and information sufficient to respond to paragraph 11; except admits that Quickie sued Medtronic with respect to the '160 Patent in the United States District Court for the Southern District of New York ["the Medtronic Litigation"], and that GT represented Quickie in the Medtronic Litigation for a period of time; and admits on information and belief that Quickie signed an engagement letter with the Thelen Defendants, and that the Thelen Defendants replaced GT as counsel in the Medtronic Litigation no later than the summer of 2002.

10. Denies paragraph 12 insofar as it relates to GT, except admits that Sharinn was employed by GT at its New York City office for a period of time, and that Sharinn filed a Fee Address Indication Form ["the FAI Form"] with the PTO; and refers to that form for its contents.

11. Denies knowledge and information sufficient to respond to paragraph 13, except admits on information and belief that the Thelen Defendants were engaged to transact all business before the PTO concerning the '160 Patent beginning no later than early March 2003.

12. Denies knowledge and information sufficient to respond to paragraph 14, except admits on information and belief that, on or about March 4, 2003, plaintiff executed a form or forms revoking its prior powers of attorney and giving the Thelen Defendants a general power of new attorney to prosecute and transact all business in the PTO concerning the '160 Patent, and that thereafter the Thelen Defendants had contact with the PTO on behalf of Quickie regarding the '160 Patent.

13. Denies paragraph 15, except admits that GT did not act for Quickie concerning the '160 Patent after GT was replaced as Quickie's counsel with respect to that patent; and admits on information and belief that the Thelen Defendants filed a form or forms (including a "Change of Attorney Docket Number and Change of Address Notice ["the Change Form"]) with the PTO in December 2003, directing that all further communications with respect to the '160 Patent be sent to the Thelen Defendants; and denies knowledge and information sufficient to respond to the balance of that paragraph.

14. Denies paragraph 16 insofar as it relates to GT, except admits that GT has a website and that its website states certain things about GT's law practice as to patents, and refers to the

website for its contents; and denies knowledge and information sufficient to respond to the balance of that paragraph.

15. Denies knowledge and information sufficient to respond to paragraph 17, except admits on information and belief that the Thelen law firm has a website, and refers to that website for its contents.

16. Denies paragraph 18, except admits that, during some part of 2003, the Thelen Defendants had not yet filed their Change Form; and declines to respond to matters of law.

17. Denies knowledge and information sufficient to respond to paragraph 19, except admits on information and belief that the Thelen Defendants held Quickie's general power of attorney after at least March 2003; and declines to respond to matters of law.

18. Denies knowledge and information sufficient to respond paragraph 20.

19. Denies knowledge and information sufficient to respond to paragraphs 21 and 22, except declines to respond to matters of law.

20. Denies knowledge and information sufficient to respond to paragraphs 23 and 24, except admits on information and belief that there were continuances of the Medtronic Litigation and that the Medtronic Litigation was transferred to the Court's Suspense Docket.

21. Denies paragraph 25, except admits that Quickie alleges what is in that paragraph.

22. Repeats its responses to paragraphs 1 through 25.

23. Denies paragraphs 27, except admits that an attorney-client relationship with respect to the '160 Patent existed between Quickie and GT for a period of time ending no later than March 2003, that Sharinn was an attorney at GT during that period; and declines to respond to matters of law.

24. Denies paragraphs 28, 29, 30, and 31.

25. Repeats its responses to paragraphs 1 through 25.

26. Denies paragraphs 33, except admits that an attorney-client relationship with respect to the '160 Patent existed between Quickie and GT for a period of time ending no later than March 2003, that Sharinn was an attorney at GT during that period; and declines to respond to matters of law.

27. Denies paragraphs 34, 35, 36, and 37.

28. Repeats its responses to paragraphs 1 through 25.

29. Denies knowledge and information sufficient to respond to paragraph 39, except admits on information and belief that an attorney-client relationship with respect to the '160 Patent existed between Quickie and the Thelen Defendants for a period of time commencing no later than July 2002.

30. Denies knowledge and information sufficient to respond to paragraphs 40, 41, 42, and 43.

31. Repeats its responses to paragraphs 1 through 25.

32. Denies knowledge and information sufficient to respond to paragraph 45, except admits on information and belief that an attorney-client relationship with respect to the '160 Patent existed between Quickie and the Thelen Defendants for a period of time commencing no later than July 2002.

33. Denies knowledge and information sufficient to respond to paragraphs 46, 47, 48, and 49.

34. Repeats its responses to paragraphs 1 through 25.

35. Denies knowledge and information sufficient to respond to paragraph 51, except admits on information and belief that an attorney-client relationship with respect to the '160

Patent existed between Quickie and the Thelen Defendants for a period of time commencing no later than July 2002.

36. Denies knowledge and information sufficient to respond to paragraphs 52, 53, 54, 55 and 56.

## FIRST AFFIRMATIVE DEFENSE

37. The Amended Complaint fails to state a cause of action against GT.

## SECOND AFFIRMATIVE DEFENSE

38. Quickie's claims are barred by the statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

39. Quickie terminated its engagement of GT no later than March 4, 2003; and Quickie revoked all powers of attorney given to GT regarding the '160 Patent. After that, GT owed no duty to Quickie. Thus, GT did not owe a duty to Quickie with respect to the maintenance fees for the '160 Patent which became initially due on May 23, 2003.

## FOURTH AFFIRMATIVE DEFENSE

40. Quickie terminated its engagement of GT and revoked all powers of attorney given to GT regarding the '160 Patent no later than March 4, 2003. After that, GT did not have authority to act for Quickie. Thus, GT had no authority to act for Quickie vis-à-vis the '160 Patent when the maintenance fees for the '160 Patent became initially due on May 23, 2003.

## FIFTH AFFIRMATIVE DEFENSE

41. Any damages suffered by Quickie as a result of the alleged failure to pay maintenance fees and the alleged expiration of the '160 Patent, or otherwise due to the events alleged in the Complaint, were caused by others besides GT and not proximately caused by GT, including (without limitation) the conduct of other professionals or other persons besides GT.

## SIXTH AFFIRMATIVE DEFENSE

42. The Thelen Defendants had already succeeded GT as counsel for Quickie with respect to the '160 Patent before the maintenance fees for the '160 Patent became due on May 23, 2003 and before the deadline for payment of those fees. The Thelen Defendants had ample and full opportunity to pay those fees after GT ceased to represent Quickie and before the '160 Patent allegedly expired. Thus, the conduct (including action and inaction) of the Thelen Defendants concerning the '160 Patent (including, without limitation, as to the maintenance fees due thereon) was the direct, superseding and/or intervening cause of any damages which Quickie claims it suffered and it may have suffered as alleged in this action.

## SEVENTH AFFIRMATIVE DEFENSE

43. The Thelen Defendants had already succeeded GT as counsel for Quickie in the PTO and in the Medtronic Litigation before the maintenance fees for the '160 Patent became due on May 23, 2003 and before the deadline for payment of those fees. In that capacity, the Thelen Defendants had further opportunities to know of and to assure payment (and cure non-payment) of the maintenance fees and thus keep the '160 Patent extant. Thus, the conduct (including action and inaction) of the Thelen Defendants concerning the '160 Patent (including, without limitation, as to the maintenance fees due thereon) was the direct, superseding and/or intervening cause of any damages which Quickie claims to have suffered (as alleged in the Amended Complaint).

## EIGHTH AFFIRMATIVE DEFENSE

44. Quickie has submitted statements, some under oath, to the PTO that, during the relevant period, the Thelen Defendants were responsible for '160 Patent, including the timely payment of any maintenance fees due for that patent. Quickie is therefore estopped and

otherwise barred from contending that GT had that responsibility and that GT caused or is liable for the damages Quickie claims to have suffered (as alleged in the Amended Complaint).

### NINTH AFFIRMATIVE DEFENSE

45. Quickie was negligent or contributorily negligent in failing to assure that the maintenance fees were paid and the '160 Patent remained extant. Quickie had ample and full opportunity to pay the maintenance fees due on the '160 Patent after GT ceased to represent Quickie and before the '160 Patent allegedly expired. Thus, Quickie's conduct (including action and inaction) concerning the '160 Patent (including, without limitation, the maintenance fees due thereon) was the direct, superseding and/or intervening cause, or a contributing cause, of any damages which Quickie claims it suffered or may have suffered as alleged in this action.

### TENTH AFFIRMATIVE DEFENSE

46. Quickie's own conduct, whether negligent or not, was the proximate cause of any damages it suffered or may have suffered as alleged in this action.

### ELEVENTH AFFIRMATIVE DEFENSE

47. GT did not adopt any statements by Sharinn allegedly made while he was previously employed at another law firm; and, in particular, GT did not adopt Sharinn's alleged statement that he would provide notice to Quickie several months before maintenance fees were due on the '160 Patent. Any such statements, if made, were not made by or on behalf of GT, and (if made) were made at a time when there was no contractual, fiduciary or other special relationship between GT and Quickie. Thus, there is no basis for the negligent misrepresentation cause of action (Second Cause of Action) against GT.

## TWEELFTH AFFIRMATIVE DEFENSE

48.  The negligent misrepresentation claim (Second Cause of Action) is duplicative of the malpractice claim, and is therefore barred.

## THIRTEENTH AFFIRMATIVE DEFENSE

49.  GT acted vis-à-vis Quickie at all times in good faith, with due diligence and reasonably as to the '160 Patent, consistent with the conduct of reasonable skill, care and knowledge of a patent counsel, sufficiently fulfilling any duties it may have had to Quickie.

## FOURTEENTH AFFIRMATIVE DEFENSE

50.  The damages sought by Quickie are speculative, and not ascertainable or provable with reasonable certainty and competent proof, and thus, are not recoverable.

WHEREFORE, defendant GT respectfully requests judgment in its favor as follows:

1.  dismissing the Amended Complaint;

2.  awarding GT costs and disbursements of this action; and

3.  granting GT such other and further relief as the Court may deem just and proper.

Dated:  June 19, 2007
    New York, New York

POLLACK & KAMINSKY

By: _Martin I. Kaminsky_
    Martin I. Kaminsky
    Justin Y. K. Chu
114 West 47th Street
New York, New York 10036
(212) 575-4700

Attorneys for Defendant
    Greenberg Traurig, LLP

9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
QUICKIE, LLC,

                Plaintiff,

       -against-

GREENBERG TRAURIG, LLP, THELEN REID
BROWN RAYSMAN & STEINER LLP (f/k/a
THELEN, REID & PRIEST LLP) and ROBERT
E. KREBS,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
THELEN REID BROWN RAYSMAN &
STEINER LLP and ROBERT E. KREBS,

          Third-Party Plaintiffs,

       -against-

TODD SHARINN, PEPE & HAZARD LLP,
ALAN FELL and RICK, STEINER, FELL &
BENOWITZ, LLP,

         Third-Party Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No.    105235/07

ANSWER, COUNTERCLAIM,
CROSS-CLAIM AND THIRD-PARTY
COMPLAINT

*Third-Party Index No. 590587/07*

Defendants Thelen Reid Brown Raysman & Steiner LLP ("Thelen") and Robert E. Krebs

("Krebs") (collectively the "Thelen Defendants"), by and through their attorneys, Proskauer

Rose LLP, for their answer to the amended complaint:

     1.    Deny the allegations of paragraph 1 as they relate to the Thelen Defendants,

except admit that at one time Thelen provided certain legal services to plaintiff, Quickie, LLC

("Quickie"). The Thelen Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 1 as they relate to defendant Greenberg

Traurig, LLC ("Greenberg").

2.      Deny the allegations of paragraph 2 as they relate to the Thelen Defendants. The Thelen Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 as they relate to defendant Greenberg.

3.      Deny the allegations of paragraph 3.

4.      Upon information and belief, admit the allegations of paragraph 4.

5.      Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5.

6.      Deny the allegations of paragraph 6, except admit that Thelen Reid Brown Raysman & Steiner LLP is a California limited liability partnership and is the successor to the firm of Thelen Reid & Priest LLP and all of its asserts and liabilities, and that Thelen is qualified to do business in, and to operate as a law firm in, the State of New York.

7.      Deny the allegations of paragraph 7, except admit that at all relevant times Krebs was an equity partner in Thelen or its predecessor, Thelen Reid & Priest LLP, and that Krebs may have, from time to time, engaged in incidental activity while physically present on a temporary basis in the State of New York in connection with his practice of law in the State of California.

8.      Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, except admits that venue is proper in this court.

9.      Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, except admit, upon information and belief, that Quickie retained Todd S. Sharinn ("Sharinn") of Pepe & Hazard L.L.P. ("Pepe") to file an application with the United States Patent and Trademark Office (the "PTO") seeking a patent to cover the "Quickie Device," as defined in the Amended Complaint.

10.    Upon information and belief, admit the allegations of paragraph 10.

11.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, except admit that Thelen became lead litigation counsel in the Medtronic Litigation and that Greenberg, not Thelen, continued to counsel Quickie in connection with proceedings before the PTO.

12.    Upon information and belief, admit the allegations of paragraph 12.

13.    Deny the allegations of paragraph 13, except admit that Medtronic commenced reexamination proceedings before the PTO with respect to U.S. Patent No. 6,066,160 (the "160 Patent").

14.    Deny the allegations of paragraph 14, except admit that Quickie signed a power of attorney authorizing Thelen to take certain actions on its behalf, and respectfully refer the Court to the relevant documents for their contents.

15.    Deny the allegations of paragraph 15, except admit that Thelen filed certain forms with the PTO in connection with its representation of Quickie, and respectfully refer the Court to the relevant documents for their contents, and deny having knowledge or information sufficient to form a belief as to the truth of the allegations regarding communications between Greenberg or Sharinn and the PTO.

16.    Deny the allegations of paragraph 16, except deny having knowledge or information sufficient to form a belief as to the truth of the allegations regarding the contents of Greenberg's marketing materials or website.

17.    Deny the allegations of paragraph 17, except admit that Thelen has marketing materials and maintains a website, and respectfully refer the Court to the relevant documents for their contents.

3

18. Upon information and belief, admit the allegations of paragraph 18, except deny the allegations regarding a "window for payment of maintenance fees," and respectfully refer the Court to the language of 37 C.F.R. § 1.362(e)(1) for its contents.

19. Deny the allegations of paragraph 19, except admit that the Thelen Defendants did not pay maintenance fees with respect to the 160 Patent on behalf of Quickie.

20. Admit the allegations of paragraph 20.

21. Deny the allegations of paragraph 21, except admit that Thelen filed certain amendments relating to the 160 Patent and respectfully refer the Court to the relevant documents for their contents.

22. Deny the allegations of paragraph 22.

23. Deny the allegations of paragraph 23, except admit that, on April 6, 2004, the parties to the Medtronic Litigation jointly requested that the court stay the case in light of action taken by the PTO in a reexamination proceeding regarding the 160 Patent.

24. Deny the allegations of paragraph 24.

25. Does not respond to paragraph 25 because it does not contain any factual allegations.

26. In response to paragraph 26, reiterate and reassert their responses to paragraphs 1 through 25.

27. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27, except admit that at all relevant times an attorney-client relationship existed between Greenberg and Quickie.

28. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28.

4

29.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29.

30.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30.

31.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31.

32.    In response to paragraph 32, reiterate and reassert their responses to paragraphs 1 through 25.

33.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33, except admit that at all relevant times an attorney-client relationship existed between Greenberg and Quickie.

34.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34.

35.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35.

36.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36.

37.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37.

38.    In response to paragraph 38, reiterate and reassert their responses to paragraphs 1 through 25.

39.    Deny the allegations of paragraph 39, except admit that Thelen provided certain legal services to Quickie between 2002 and 2006 with respect to the 160 Patent, and that during that period Krebs was a partner in the Thelen firm.

40.    Deny the allegations of paragraph 40, except admit that the Thelen Defendants did not pay maintenance fees with respect to the 160 Patent on behalf of Quickie.

41.    Deny the allegations of paragraph 41.

42.    Deny the allegations of paragraph 42.

43.    Deny the allegations of paragraph 43.

44.    In response to paragraph 44, reiterate and assert their responses to paragraphs 1 through 25.

45.    Deny the allegations of paragraph 45, except admit that Thelen provided certain legal services to Quickie between 2002 and 2006 with respect to the 160 Patent, and that during that period Krebs was a partner in the Thelen firm.

46.    Deny the allegations of paragraph 46.

47.    Deny the allegations of paragraph 47.

48.    Deny the allegations of paragraph 48.

49.    Deny the allegations of paragraph 49.

50.    In response to paragraph 50, reiterate and reassert their responses to paragraphs 1 through 25.

51.    Deny the allegations of paragraph 51, except admit that Thelen provided certain legal services to Quickie between 2002 and 2006 with respect to the 160 Patent, and that during that period Krebs was a partner in the Thelen firm.

52.    Deny the allegations of paragraph 52.

6

53.    Deny the allegations of paragraph 53.

54.    Deny the allegations of paragraph 54.

55.    Deny the allegations of paragraph 55.

56.    Deny the allegations of paragraph 56.

## FIRST AFFIRMATIVE DEFENSE

57.    The Thelen Defendants faithfully performed all obligations and duties under their agreement with Quickie. The Thelen Defendants did not owe a duty to Quickie either to pay maintenance fees with respect to the 160 Patent or to remind Quickie of its own obligation to do so.

## SECOND AFFIRMATIVE DEFENSE

58.    At all relevant times, Quickie was aware of its obligation to pay its maintenance fees. Quickie was informed in a May 30, 2000 letter from Sharinn, then of Pepe, that:

> Please note that the United States Patent and Trademark Office requires the payment of fees for maintaining patents issuing from patent applications filed in the United States on or after December 12, 1980.... The fees are due on or before 3 1/2, 7 1/2, and 11 1/2 years from the date the patent issues. Failure to pay the fees will result in loss of the patent. We will notify you regarding payment of the maintenance fees several months before they are due.

Quickie's failure to pay its maintenance fees, despite being fully aware of its obligation to do so, was the proximate cause of any harm suffered by Quickie.

## THIRD AFFIRMATIVE DEFENSE

59.    Quickie's Amended Complaint, and each and every cause of action contained therein, is barred, in whole or in part, by Quickie's own contributory negligence.

7

## FOURTH AFFIRMATIVE DEFENSE

60.    The acts or omissions of the Thelen Defendants alleged in the Amended Complaint neither directly nor indirectly caused Quickie to suffer the damages it seeks to recover.

## FIFTH AFFIRMATIVE DEFENSE

61.    Any damages suffered by Quickie as a result of the alleged failure to pay patent maintenance fees with respect to the 160 Patent, or as a result of the alleged expiration of the 160 Patent, were caused by the acts or omissions of others, including without limitation the acts or omissions of other professionals, and not by any act or omission of the Thelen Defendants.

## SIXTH AFFIRMATIVE DEFENSE

62.    Quickie's fourth and fifth causes of action are duplicative of its third cause of action and each other and are therefore barred.

## SEVENTH AFFIRMATIVE DEFENSE

63.    The damages sought by Quickie are speculative and are not ascertainable or provable with reasonable certainty and competent proof. Therefore, they are not recoverable.

## EIGHTH AFFIRMATIVE DEFENSE

64.    Quickie may not recover damages against the Thelen Defendants based on alleged infringement of the 160 Patent in any period prior to the issuance of a reexamination certificate by the PTO with respect thereto.

## NINTH AFFIRMATIVE DEFENSE

65.    Quickie may not recover damages against the Thelen Defendants based on alleged infringement of the 160 Patent in any period prior to the expiration thereof.

## COUNTERCLAIM

66.    Quickie retained Thelen on July 3, 2002 to handle a patent infringement action relating to Medtronic, Inc. and the 160 Patent. Later, the Thelen Defendants were, in addition, asked to represent Quickie in connection with reexamination proceedings before the PTO. The Thelen Defendants represented Quickie until August 14, 2006.

67.    At all times, the Thelen Defendants faithfully performed all obligations and duties under their agreement with Quickie.

68.    Thelen accurately, correctly and fairly billed Quickie the sum of $470,186.85 for a portion of the legal services rendered to it and for the related disbursements and charges incurred by Thelen in connection therewith.

69.    Thelen has timely demanded payment of the sum of $470,186.85 and Quickie has failed to pay such sums.

70.    Quickie owes Thelen the sum of $470,186.85 for unpaid legal fees, disbursements and charges.

71.    Thelen is entitled to recover from Quickie the sum of not less than $470,186.85, together with pre-judgment interest at the rate of 9% per annum.

## CROSS-CLAIM

72.    In 1998, Quickie retained Sharinn, then with the Pepe law firm, to file an application with the PTO.

73.    The PTO issued the 160 Patent in May 2000.

74.    On May 30, 2000, Sharinn wrote to Quickie promising to "notify [Quickie] regarding payment of the maintenance fees several months before they are due."

75.    Upon information and belief, shortly after sending Quickie the above notice, Sharinn joined Greenberg.  Greenberg assumed all responsibilities and obligations relating to the 160 Patent, including the promise Sharinn and Pepe had made to notify Quickie of maintenance fees.

76.    Upon information and belief, Greenberg served as primary counsel to Quickie for the prosecution and maintenance of several Quickie patents and prospective patents.

77.    Quickie's engagement of Thelen in 2002 was for the limited purpose of representing Quickie in specific litigation relating to the 160 Patent and, later, in reexamination proceedings relating to the 160 Patent.

78.    At all relevant times, Greenberg maintained responsibility for all matters relating to the 160 Patent that were not specifically undertaken by Thelen, including any duties to notify or remind Quickie of maintenance fee payments.

79.    Quickie never asked the Thelen Defendants to assume any responsibilities relating to the payment of maintenance fees, or to remind Quickie of its own obligations to make such payments, and the Thelen Defendants never agreed or undertook to do so.

80.    The Thelen Defendants owed no duty to inform or remind Quickie of its own obligation to make maintenance payments on the 160 Patent.

81.    Although the Thelen Defendants deny any liability to Quickie for the harms alleged in the complaint, and further deny that Quickie suffered any damage or loss whatsoever as a result of the facts described in the complaint, if and to the extent that Quickie suffered any compensable injury, the proximate cause of such injury, in whole or in part, was Greenberg's failure to timely notify or remind Quickie of its obligations or otherwise to fulfill its professional responsibilities to Quickie.

82.    If and to the extent that the Thelen Defendants are found in any way liable for the harms alleged by Quickie in the Amended Complaint, the Thelen Defendants are entitled to indemnification or contribution from Greenberg.

## THIRD-PARTY COMPLAINT

Defendant Thelen Reid Brown Raysman & Steiner LLP ("Thelen") and Robert E. Krebs ("Krebs"), as third-party plaintiffs, allege the following as their complaint against Todd S. Sharinn ("Sharinn"), Pepe & Hazard LLP ("Pepe"), Alan Fell ("Fell") and Rick, Steiner, Fell & Benowitz, LLP ("Rick Steiner"), as third-party defendants:

## JURISDICTION AND VENUE

1.    This Court has personal jurisdiction over the third-party defendants because they are either domiciled in the State of New York or engaged in conduct giving rise to personal jurisdiction over non-domiciliaries under CPLR § 302(a).

2.    Venue is proper under CPLR § 503 because Thelen resides in New York County.

## THE PARTIES

3.    Sharinn was formerly employed as an attorney with the law firm of Greenberg Traurig, LLP ("Greenberg"), and before that with the Pepe law firm. He is now "of counsel" to the law firm of Baker & McKenzie LLP, 1114 Avenue of the Americas, New York, New York 10036.

4.    Pepe is a law firm with its principal office located at 225 Asylum Street, Hartford, Connecticut 06103.

5.    Fell is an attorney practicing with the law firm of Rick Steiner with his principal office located at Three New York Plaza, New York, New York 10004. At all relevant times, Fell has served as the "general counsel" of plaintiff, Quickie, LLC ("Quickie").

6. · Rick Steiner is a New York law firm with its principal office at Three New York Plaza, New York, New York 10004. At all relevant times, Rick Steiner has served as counsel to Quickie, and Quickie claims to use Rick Steiner's offices as its principal place of business.

## FACTS COMMON TO ALL CAUSES OF ACTION

7. In the late 1990s, Quickie developed a device known as the "Passive Knotless Suture Terminator for Use in Minimally Invasive Surgery and to Facilitate Standard Tissue Securing" for use in open-heart surgeries (the "Quickie Device").

8. In 1998, Sharinn, while a lawyer at Pepe, filed a patent application for Quickie with the United States Patent and Trademark Office (the "PTO") seeking a patent for the Quickie Device.

9. On May 23, 2000, the PTO issued U.S. Patent No. 6,066,160 covering the Quickie Device (the "160 Patent").

10. On May 30, 2000, Sharinn, while still employed by Pepe, wrote a letter to Quickie, copies of which were sent to Fell and Rick Steiner, stating (emphasis supplied):

> Please note that the United States Patent and Trademark Office requires the payment of fees for maintaining patents issuing from patent applications filed in the United States on or after December 12, 1980. . . . The fees are due on or before 3 1/2, 7 1/2, and 11 1/2 years from the date the patent issues. Failure to pay the fees will result in loss of the patent. We will notify you regarding payment of the maintenance fees several months before they are due.

11. Shortly thereafter, Sharinn joined Greenberg's New York office.

12. On February 5, 2002, Quickie retained Greenberg to advise and represent it as lead counsel in an action against Medtronic, Inc. for alleged infringement of the 160 Patent.

13. On July 3, 2002, Quickie retained Thelen to provide "litigation services related to the Quickie, LLC legal action against Medtronic, Inc." (the "Medtronic Action").

12

14.    Greenberg initially continued to represent Quickie as co-counsel in the Medtronic Action. In or around October 2002, however, Quickie replaced Greenberg and Thelen became sole counsel for the Medtronic Action. Greenberg subsequently transferred the litigation file, that is, the file relating to the Medtronic Action, to Thelen.

15.    Quickie did not ask Thelen to take, and Thelen did not accept, any responsibility for the prosecution and maintenance of the 160 Patent. At all relevant times, Greenberg remained responsible for the prosecution and maintenance of the 160 Patent.

16.    As a matter of regular course, a law firm representing a client in conjunction with the prosecution and maintenance of a patent will keep and maintain a "patent file."

17.    At all relevant times since Sharinn joined Greenberg, Greenberg has maintained the patent file relating to the 160 Patent (the "Patent File").

18.    Thelen at no time asked for the Patent File, nor did Greenberg send it or any copies of its contents to Thelen.

19.    In a lawsuit filed in the Supreme Court of the State of New York, County of New York, Index No. 105235/07, on May 15, 2007 (the "Action"), Quickie alleged that (a) it owed a maintenance fee on the 160 Patent beginning as of May 23, 2003, (b) the deadline for payment of this fee expired on May 23, 2004 and (c) the period to reinstate the 160 Patent expired on May 24, 2006.

20.    Quickie further alleged in the Action that it was not reminded by Thelen, Krebs or Greenberg of its obligation to pay these fees and that, if it had been, Quickie would have timely paid the fees or reinstated the patent.

21.    Quickie further alleged in the Action that Thelen, Krebs and Greenberg are liable for malpractice and negligent representation for failing to remind Quickie about the maintenance fees.

22.    Quickie further alleged in the Action that it was damaged by an amount in excess of $10 million.

23.    Thelen and Krebs have denied that they had any duty to remind Quickie of its maintenance payments and that they committed malpractice or negligent representation.

### FIRST CAUSE OF ACTION
(Indemnification and Contribution for
Contributory Negligence/Legal Malpractice against Sharinn)

24.    At all relevant times Sharinn, while employed by Pepe or Greenberg, was the lawyer in charge of the prosecution and maintenance of the 160 Patent.

25.    In a letter dated May 30, 2000, Sharinn represented to Quickie that he would "notify [Quickie] regarding payment of the maintenance fees several months before they are due."

26.    Upon information and belief, Sharinn failed to notify Quickie that its maintenance fees were due or past due.

27.    Upon information and belief, Sharinn never told Quickie that he would not fulfill his commitment to notify Quickie regarding payment of the maintenance fees before they were due, or that the responsibility for reminding Quickie regarding payment of the maintenance fees was being or had been assumed by any other law firm.

28.    If there was any duty to remind Quickie of its obligations to pay its maintenance fees, such a duty was borne by Sharinn and the law firms with which he was associated, not by Thelen and Krebs.

29.    To the extent Thelen and Krebs are held liable in the Action, Thelen and Krebs are entitled to indemnification and contribution, in whole or in part, from Sharinn because his actions or failures to act were the proximate cause of Quickie's harm.

## SECOND CAUSE OF ACTION
### (Indemnification and Contribution for
### Contributory Negligence/Legal Malpractice against Pepe)

30.    Pepe prosecuted and obtained the 160 Patent for Quickie.

31.    In a letter dated May 30, 2000, Pepe, via a letter written by Sharinn on Pepe letterhead while employed at Pepe, represented to Quickie that it would "notify [Quickie] regarding payment of the maintenance fees several months before they are due."

32.    Upon information and belief, Pepe received notices from the PTO indicating that maintenance fees were due on the 160 Patent and failed to forward that information to Quickie or to advise Quickie in any way that maintenance fees were due.

33.    To the extent that Thelen and Krebs are held liable in any way in the Action, Thelen and Krebs are entitled to indemnification and contribution, in whole or in part, because Pepe's actions or failures to act were the proximate cause of Quickie's harm.

## THIRD CAUSE OF ACTION
### (Indemnification and Contribution for
### Contributory Negligence/Legal Malpractice against Fell)

34.    At all relevant times, Fell served as the "general counsel" for Quickie.

35.    By letter dated May 30, 2000, Fell received the following notice from Sharinn and Pepe (emphasis supplied):

> Please note that the United States Patent and Trademark Office requires the payment of fees for maintaining patents issuing from patent applications filed in the United States on or after December 12, 1980. . . . The fees are due on or before 3 1/2, 7 1/2, and 11 1/2 years from the date the patent issues. Failure to pay the fees will result in loss of the patent.

15

36.    Accordingly, at all relevant times, Fell knew of Quickie's obligation to pay its maintenance fees.

37.    Upon information and belief, Fell failed to advise Quickie in any way that maintenance fees were due.

38.    To the extent Thelen and Krebs are held liable in any way in the Action, Thelen and Krebs are entitled to indemnification and contribution, in whole or in part, from Fell because his actions or failures to act were the proximate cause of Quickie's harm.

## FOURTH CAUSE OF ACTION
(Indemnification and Contribution for Contributory Negligence/Legal Malpractice against Rick Steiner)

39.    At all relevant times Rick Steiner served as counsel to Quickie.

40.    Upon information and belief, Quickie uses Rick Steiner's offices as its principal place of business.

41.    By letter dated May 30, 2000, Rick Steiner received the following notice from Sharinn (emphasis supplied):

> Please note that the United States Patent and Trademark Office requires the payment of fees for maintaining patents issuing from patent applications filed in the United States on or after December 12, 1980.... The fees are due on or before 3 1/2, 7 1/2, and 11 1/2 years from the date the patent issues. Failure to pay the fees will result in loss of the patent.

42.    As such, Rick Steiner was on notice as to Quickie's obligation to pay its maintenance fees.

43.    To the extent the Thelen Plaintiffs are held liable in any way in the Action, Thelen is entitled to contribution, in whole or in part, from Rick Steiner for being the proximate cause of Quickie's harm due to its legal malpractice and negligent representation of Quickie.

16

WHEREFORE, Thelen and Krebs respectfully request that judgment be entered:

(a)    dismissing the complaint with prejudice;

(b)    on their Counterclaim, granting judgment against Quickie in the amount of not less than $470,186.85, together with pre-judgment interest at the rate of 9% per annum;

(c)    on their Cross-Claim, for indemnification and contribution against Greenberg if and to the extent that Thelen and Krebs are held liable in any way in the Action;

(d)    on their Third-Party Complaint against Pepe, Fell and Rick Steiner, for indemnification and contribution if and to the extent that Thelen and Krebs are held liable in any way in the Action;

(e)    granting such other and further relief as may be just and proper; and

(f)    granting Thelen and Krebs the costs of this action.

Dated:    New York, New York
          June 29, 2007

                            _Steven C. Krane /DML_
                            Steven C. Krane
                            PROSKAUER ROSE LLP
                            1585 Broadway
                            New York, NY  10036-8299
                            Phone: (212) 969-3435

TO:    JANVEY, GORDON, HERLANDS, RANDOLPH & COX, LLP
       355 Lexington Avenue
       New York, New York 10017

       DIAMOND McCARTHY, LLP
       Two Houston Center
       909 Fannin, Suite 1500
       Houston, Texas 77010

       Attorneys for Plaintiff

                            POLLACK & KAMINSKY
                            114 West 47th Street
                            New York, New York 10036

                            Attorneys for Greenberg Traurig, LLP

1

<u>Third-Party Defendants:</u>

Pepe and Hazard, LLP
225 Asylum Street
Hartford, Connecticut 06103-4302

Alan L. Fell
Rick, Steiner, Fell & Benowitz LLP
Three New York Plaza
New York, New York 10004

Rick, Steiner, Fell & Benowitz LLP
Three New York Plaza
New York, New York 10004

Todd S. Sharrin
Baker & McKenzie LLP
1114 Avenue of the Americas
New York, New York 10036

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------x

QUICKIE, LLC,

                                    Plaintiff,                    Index No. 10523/07

              - against -

GREENBERG TRAURIG, LLP, THELEN REID
BROWN RAYSMAN & STEINER LLP (FORMERLY
KNOWN AS THELEN, REID & PRIEST LLP); AND
ROBERT E. KREBS, ESQ.,

                                    Defendants.
-------------------------------------------------------------x
THELEN REID BROWN RAYSMAN & STEINER
LLP and ROBERT E. KREBS,

                          Third-Party Plaintiffs,

              -against-

TODD SHARINN, PEPE & HAZARD LLP,
ALAN FELL and RICK, STEINER, FELL &
BENOWITZ, LLP,

                          Third-Party Defendants.
-------------------------------------------------------------x

## AMENDED ANSWER AND CROSS-CLAIMS
## OF GREENBERG TRAURIG LLP

    Defendant Greenberg Traurig, LLP ["GT"] responds to the Amended Complaint of

plaintiff Quickie, LLC ["Quickie"]  and cross-claims against Thelen Reid Brown Raysman &

Steiner LLP and Robert E. Kreb [collectively "the Thelen Defendants"], and against Rick,

Steiner, Fell & Benowitz, LLP and Alan Fell [collectively "the Rick Steiner Defendants"] as

follows:

    1.  Denies paragraph 1 insofar as it relates to GT, except admits that Quickie retained

GT for a period of time; further admits on information and belief that Quickie thereafter replaced

GT and retained defendants Thelen Reid Brown Raysman & Steiner LLP (as successor to Thelen Reid & Priest LLP) and Robert E. Krebs, Esq. [collectively "the Thelen Defendants"]; and denies knowledge and information sufficient to respond as to the Thelen Defendants.

2.    Denies paragraphs 2 and 3 insofar as they relate to GT; and denies knowledge and information sufficient to respond as to other persons or entities.

3.    Admits on information and belief paragraph 4.

4.    Denies paragraphs 5, except admits that GT is a limited liability partnership engaged in the practice of law in New York, with an office at 200 Park Avenue, New York, New York.

5.    Denies knowledge and information sufficient to respond to paragraphs 6 and 7, except admit on information and belief that the Thelen Defendants were attorneys for Quickie and practiced law in New York, New York.

6.    Denies knowledge and information sufficient to respond to paragraph 8, except admits that venue is proper in New York County.

7.    Denies knowledge and information sufficient to respond to paragraph 9, except admits on information and belief that Quickie contends it developed the device described therein ["the Quickie Device"], that Quickie (at some point prior to engaging GT) engaged another law firm in which Todd Sharrin was an attorney, that Quickie filed an application with the U.S. Patent & Trademark Office ["the PTO"] on the Quickie Device, and that Quickie had discussions with Medtronic, Inc. ["Medtronic"] about the Quickie Device.

8.    Denies paragraph 10, except admits that Quickie was issued U.S. Patent No. 6,066,160 ["the '160 Patent"] on the Quickie Device in about 2000, and that Sharrin joined GT sometime after the '160 Patent was issued; refers to the alleged correspondence and

communications referred to in that paragraph for their contents; and declines to respond to matters of law.

9.  Denies knowledge and information sufficient to respond to paragraph 11; except admits that Quickie sued Medtronic with respect to '160 Patent in the United States District Court for the Southern District of New York ["the Medtronic Litigation"], and that GT represented Quickie in the Medtronic Litigation for a period of time; and admits on information and belief that Quickie signed an engagement letter with the Thelen Defendants, and that the Thelen Defendants replaced GT as counsel in the Medtronic Litigation no later than the summer of 2002.

10. Denies paragraph 12 insofar as it relates to GT, except admits that Sharinn was employed by GT at its New York City office for a period of time, and that Sharinn filed a Fee Address Indication Form ["the FAI Form"] with the PTO; and refers to that form for its contents.

11. Denies knowledge and information sufficient to respond to paragraph 13, except admits on information and belief that the Thelen Defendants were engaged to transact all business before the PTO concerning the '160 Patent beginning no later than early March 2003.

12. Denies knowledge and information sufficient to respond to paragraph 14, except admits on information and belief that, on or about March 4, 2003, plaintiff executed a form or forms revoking its prior powers of attorney and giving the Thelen Defendants a general power of new attorney to prosecute and transact all business in the PTO concerning the '160 Patent, and that thereafter the Thelen Defendants had contact with the PTO on behalf of Quickie regarding the '160 Patent.

13. Denies paragraph 15, except admits that GT did not act for Quickie concerning the '160 Patent after GT was replaced as Quickie's counsel with respect to that patent; and admits on information and belief that the Thelen Defendants filed a form or forms (including a "Change of Attorney Docket Number and Change of Address Notice ["the Change Form"]) with the PTO in December 2003, directing that all further communications with respect to the '160 Patent be sent to the Thelen Defendants; and denies knowledge and information sufficient to respond to the balance of that paragraph.

14. Denies paragraph 16 insofar as it relates to GT, except admits that GT has a website and that its website states certain things about GT's law practice as to patents, and refers to the website for its contents; and denies knowledge and information sufficient to respond to the balance of that paragraph.

15. Denies knowledge and information sufficient to respond to paragraph 17, except admits on information and belief that the Thelen law firm has a website, and refers to that website for its contents.

16. Denies paragraph 18, except admits that, during some part of 2003, the Thelen Defendants had not yet filed their Change Form; and declines to respond to matters of law.

17. Denies knowledge and information sufficient to respond to paragraph 19, except admits on information and belief that the Thelen Defendants held Quickie's general power of attorney after at least March 2003; and declines to respond to matters of law.

18. Denies knowledge and information sufficient to respond paragraph 20.

19. Denies knowledge and information sufficient to respond to paragraphs 21 and 22, except declines to respond to matters of law.

20. Denies knowledge and information sufficient to respond to paragraphs 23 and 24, except admits on information and belief that there were continuances of the Medtronic Litigation and that the Medtronic Litigation was transferred to the Court's Suspense Docket.

21. Denies paragraph 25, except admits that Quickie alleges what is in that paragraph.

22. Repeats its responses to paragraphs 1 through 25.

23. Denies paragraphs 27, except admits that an attorney-client relationship with respect to the '160 Patent existed between Quickie and GT for a period of time ending no later than March 2003, that Sharinn was an attorney at GT during that period; and declines to respond to matters of law.

24. Denies paragraphs 28, 29, 30, and 31.

25. Repeats its responses to paragraphs 1 through 25.

26. Denies paragraphs 33, except admits that an attorney-client relationship with respect to the '160 Patent existed between Quickie and GT for a period of time ending no later than March 2003, that Sharinn was an attorney at GT during that period; and declines to respond to matters of law.

27. Denies paragraphs 34, 35, 36, and 37.

28. Repeats its responses to paragraphs 1 through 25.

29. Denies knowledge and information sufficient to respond to paragraph 39, except admits on information and belief that an attorney-client relationship with respect to the '160 Patent existed between Quickie and the Thelen Defendants for a period of time commencing no later than July 2002.

30. Denies knowledge and information sufficient to respond to paragraphs 40, 41, 42, and 43.

31. Repeats its responses to paragraphs 1 through 25.

32. Denies knowledge and information sufficient to respond to paragraph 45, except admits on information and belief that an attorney-client relationship with respect to the '160 Patent existed between Quickie and the Thelen Defendants for a period of time commencing no later than July 2002.

33. Denies knowledge and information sufficient to respond to paragraphs 46, 47, 48, and 49.

34. Repeats its responses to paragraphs 1 through 25.

35. Denies knowledge and information sufficient to respond to paragraph 51, except admits on information and belief that an attorney-client relationship with respect to the '160 Patent existed between Quickie and the Thelen Defendants for a period of time commencing no later than July 2002.

36. Denies knowledge and information sufficient to respond to paragraphs 52, 53, 54, 55 and 56.

## FIRST AFFIRMATIVE DEFENSE

37. The Amended Complaint fails to state a cause of action against GT.

## SECOND AFFIRMATIVE DEFENSE

38. Quickie's claims are barred by the statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

39. Quickie terminated its engagement of GT no later than March 4, 2003; and Quickie revoked all powers of attorney given to GT regarding the '160 Patent. After that, GT owed no duty to Quickie. Thus, GT did not owe a duty to Quickie with respect to the maintenance fees for the '160 Patent which became initially due on May 23, 2003.

## FOURTH AFFIRMATIVE DEFENSE

40. Quickie terminated its engagement of GT and revoked all powers of attorney given to GT regarding the '160 Patent no later than March 4, 2003. After that, GT did not have authority to act for Quickie. Thus, GT had no authority to act for Quickie vis-à-vis the '160 Patent when the maintenance fees for the '160 Patent became initially due on May 23, 2003.

## FIFTH AFFIRMATIVE DEFENSE

41. Any damages suffered by Quickie as a result of the alleged failure to pay maintenance fees and the alleged expiration of the '160 Patent, or otherwise due to the events alleged in the Complaint, were caused by others besides GT and not proximately caused by GT, including (without limitation) the conduct of other professionals or other persons besides GT.

## SIXTH AFFIRMATIVE DEFENSE

42. The Thelen Defendants had already succeeded GT as counsel for Quickie with respect to the '160 Patent before the maintenance fees for the '160 Patent became due on May 23, 2003 and before the deadline for payment of those fees. Quickie had ample and full opportunity to pay those fees after GT ceased to represent Quickie and before the '160 Patent allegedly expired; but the Thelen Defendants failed to advise and properly represent Quickie with respect to that matter. Thus, the conduct (including action and inaction) of the Thelen Defendants concerning the '160 Patent (including, without limitation, as to the maintenance fees due thereon) was the direct, superseding an/or intervening cause, or a contributing cause, of any damages which Quickie claims it suffered and it may have suffered as alleged in this action.

## SEVENTH AFFIRMATIVE DEFENSE

43. The Thelen Defendants had already succeeded GT as counsel for Quickie in the PTO and in the Medtronic Litigation before the maintenance fees for the '160

Patent became due on May 23, 2003 and before the deadline for payment of those fees. In that capacity, the Thelen Defendants had further opportunities to know of and to assure payment (and cure non-payment) of the maintenance fees and thus keep the '160 Patent extant. Thus, the conduct (including action and inaction) of the Thelen Defendants concerning the '160 Patent (including, without limitation, as to the maintenance fees due thereon) was the direct, superseding and/or intervening cause, or a contributing cause, of any damages which Quickie claims to have suffered (as alleged in the Amended Complaint).

## EIGHTH AFFIRMATIVE DEFENSE

44. Quickie has submitted statements, some under oath, to the PTO that, during the relevant period, the Thelen Defendants were responsible for the '160 Patent, including the timely payment of any maintenance fees due for that patent. Quickie is therefore estopped and otherwise barred from contending that GT had that responsibility and that GT caused or is liable for the damages Quickie claims to have suffered (as alleged in the Amended Complaint).

## NINTH AFFIRMATIVE DEFENSE

45. The Rick Steiner Defendants were outside general counsel for Quickie throughout the period that GT acted as counsel for Quickie, and, as such, they advised Quickie with respect to the '160 Patent before the maintenance fees for the '160 Patent became due on May 23, 2003 and before the deadline for payment of those fees. Quickie had ample and full opportunity to pay those fees after GT ceased to represent Quickie and before the '160 Patent allegedly expired; but the Rick Steiner Defendants failed to advise and properly represent Quickie with respect to that matter. Thus, the conduct (including action and inaction) of the Rick Steiner Defendants concerning the '160 Patent (including, without limitation, as to the maintenance fees due

thereon) was the direct, superseding and/or intervening cause, or a contributing cause, of any damages which Quickie claims it suffered and it may have suffered as alleged in this action.

## TENTH AFFIRMATIVE DEFENSE

46. Quickie was negligent or contributorily negligent in failing to assure that the maintenance fees were paid and the '160 Patent remained extant. Quickie knew of the obligation to pay maintenance fees; and Quickie had ample and full opportunity to pay the maintenance fees due on the '160 Patent before and after GT ceased to represent Quickie and before the '160 Patent allegedly expired. Thus, Quickie's conduct (including action and inaction) concerning the '160 Patent (including, without limitation, the maintenance fees due thereon) was the direct, superseding and/or intervening cause, or a contributing cause, of any damages which Quickie claims it suffered or may have suffered as alleged in this action.

## ELEVENTH AFFIRMATIVE DEFENSE

47. Quickie's own conduct, whether negligent or not, was the proximate cause of any damages it suffered or may have suffered as alleged in this action.

## TWELFTH AFFIRMATIVE DEFENSE

48. GT did not adopt any statements by Sharinn allegedly made while he was previously employed at another law firm; and, in particular, GT did not adopt Sharinn's alleged statement that he would provide notice to Quickie several months before maintenance fees were due on the '160 Patent. Any such statements, if made, were not made by or on behalf of GT, and (if made) were made at a time when there was no contractual, fiduciary or other special relationship between GT and Quickie. Thus, there is no basis for the negligent misrepresentation cause of action (Second Cause of Action) against GT.

9

## THIRTEENTH AFFIRMATIVE DEFENSE

49.  The negligent misrepresentation claim (Second Cause of Action) is duplicative of the malpractice claim, and is therefore barred.

## FOURTEENTH AFFIRMATIVE DEFENSE

50.  GT acted vis-à-vis Quickie at all times in good faith, with due diligence and reasonably as to the '160 Patent, consistent with the conduct of reasonable skill, care and knowledge of a patent counsel, sufficiently fulfilling any duties it may have had to Quickie.

## FIFTH AFFIRMATIVE DEFENSE

51.  The damages sought by Quickie are speculative, and not ascertainable or provable with reasonable certainty and competent proof, and thus, are not recoverable.

## SIXTEENTH AFFIRMATIVE DEFENSE
### and
## FIRST CROSS-CLAIM
(against The Thelen Defendants)

Greenberg Traurig LLP ["GT"] hereby cross-claims against the Thelen Defendants (i.e. Thelen Reid Brown Raysman & Steiner LLP as successor to Thelen  Reid & Priest LLP and Robert E. Krebs, Esq.), and, in doing so, alleges as follows (on information and belief as to paragraphs 54 through 57, 63, 64, 67 through 70, and 72):

### Nature Of The Cross-Claim

52.  GT denies any wrongdoing in its representation of Quickie. But, if and to the extent GT is found liable to plaintiff, the Thelen Defendants are liable to GT as successor counsel to the full extent GT is found liable. The action or inaction of the Thelen Defendants, who had already replaced and succeeded GT as counsel to Quickie with respect to the '160 Patent (including without limitation in the PTO and in the Medtronic Litigation [defined elsewhere herein]) when the maintenance fees for the '160 Patent became due on May 23, 2003, was the direct,

superseding and/or intervening cause, or a contributing cause, of any injuries resulting from the nonpayment of maintenance fee. If Quickie's claims against GT are not dismissed, then the Thelen Defendants are responsible and liable to GT to the extent GT may be found liable to Quickie or for contribution as to that liability.

### The Parties

53. Cross-claimant Greenberg Traurig LLP is a New York limited liability partnership engaged in the practice of law, with offices in the City, County and State of New York.

54. Cross-claim defendant Thelen Reid Brown Raysman & Steiner LLP ["the Thelen Law Firm"] is a limited liability partnership engaged in the practice of law, with offices in the City, County and State of New York. It is a successor by merger of Thelen Reid & Priest LLP, formerly a law firm with offices in the City, County and State of New York prior to its merger with Brown Raysman & Steiner LLP in 2006, and thus is liable for any wrongdoing at issue herein by either of those law firms.

55. Defendant and cross-claim defendant Robert E. Krebs, Esq. is a partner of defendant the Thelen Law Firm, who transacted business in providing legal services in New York.

56. Quickie is the owner by assignment of U.S. Patent No. 6,066,160 ["the '160 Patent"], issued on May 23, 2000.

57. Stephen Colvin is an inventor of the patented device covered under the '160 Patent and a principal of Quickie.

### Jurisdiction And Venue

58. This Court has personal jurisdiction over the Thelen Law Firm, since it is located and doing business in the State of New York.

59. This Court has jurisdiction over Robert E. Krebs, since the claims against him arose out of: [a] a transaction of business in New York and the providing of legal services in New York, and/or, [b] a tortious act by him causing injury in New York at a time when Krebs conducted sufficient business in New York or interstate commerce to be subject to personal long-arm jurisdiction in New York under CPLR §302.

60. Venue is properly situated in New York County, since GT and the Thelen Law Firm are residents of, located in, and maintain offices in this County.

<u>Background</u>

### The '160 Patent

61. The '160 Patent covers a medical device designed to assist in heart surgeries ["the Quickie Device"].

62. Under applicable law and regulations, the owner of a patent must pay periodic maintenance fees to keep the patent in effect.

63. The first maintenance fee for the '160 Patent was due during the one year period beginning May 23, 2003 through May 23, 2004. The fee could be paid any time during that one year period.

64. The '160 Patent has now expired due to nonpayment of the maintenance fee which was due during the one year period from May 23, 2003 through May 23, 2004.

### Greenberg Traurig's Engagement

65. In late 2001 and early 2002, GT was engaged by Quickie to provide litigation services in support of a claim by Quickie that Medtronic, Inc. ["Medtronic"] was infringing the '160 Patent. In connection therewith, GT filed an action on behalf of plaintiff against Medtronic

in the U.S. District Court for the Southern District of New York in February 2002 ["the Medtronic litigation"].

66. Quickie also engaged GT to represent it in the PTO concerning the '160 Patent. In connection therewith, GT filed a Change of Correspondence Address form and a Fee Address Indication Form with the PTO in December 2002.

## The Replacement of GT by the Thelen Defendants

67. In no later than July 2002, Quickie replaced GT with Thelen Reid & Priest as its attorneys in the Medtronic Litigation.

68. Quickie also replaced GT with the Thelen Defendants as its counsel with respect to all other aspects of the '160 Patent, including dealings with and in the United States Patent & Trademark Office ["the PTO"] including (without limitation) assuring timely payment of maintenance fees.

69. A formal engagement agreement between Quickie and Thelen Reid & Priest was executed in July 2002. A Stipulation and Order of Substitution of Counsel was entered in the Medtronic Litigation in November 2002, pursuant to which Thelen Reid & Priest replaced GT as counsel of record for plaintiff.

70. Quickie replaced GT as its counsel as to the '160 Patent because Colvin, the inventor of the Quickie Device and a principal of Quickie, had a relative (a new son-in-law) who was an attorney at Thelen Reid & Priest and Colvin wanted to give that legal business to his relative's law firm.

71. When it hired the Thelen Defendants as to the '160 Patent, Quickie terminated GT's role, responsibility and services as to the '160 Patent.

13

72. Quickie executed a Revocation of Prior Powers of Attorney dated March 4, 2003, which was thereafter submitted to the PTO. In that same document, Quickie appointed the Thelen Defendants as the new attorneys for Quickie with respect to the '160 Patent with full and sole authority to "prosecute and transact all business" in the PTO. Thelen Reid & Priest also submitted to the PTO a Change of Attorney Docket and Change of Address Notice in December 2003, directing that all further communications regarding the '160 Patent be sent to the Thelen Defendants.

73. Thus, when maintenance fees on the '160 Patent became due, during the one year period commencing May 23, 2003, GT was no longer Quickie's attorney, having been replaced by the Thelen Defendants. GT's authority to act for Quickie (and any duty it had in that respect) had already ended two months earlier when Quickie had revoked all prior powers of attorney and appointed the Thelen Defendants to act for it instead.

## The Thelen Defendants' Opportunities to Make or Assure Payment

74. The Thelen Defendants had the opportunity to pay the maintenance fees, or advise Quickie to pay the fees, before they were due and the '160 Patent expired for non-payment of those fees.

75. The Thelen Defendants had further opportunities to pay the maintenance fees, or advise Quickie to pay the fees, during the one year period commencing May 23, 2003 through May 23, 2004; and the Thelen Defendants also had opportunities to cure the nonpayment, or to advise Quickie to cure the nonpayment after the one year payment period expired on May 23, 2004, including when the Thelen Defendants filed amendments to the '160 Patent in 2005.

76. Any alleged failures concerning payment of those fees when and as due and any expiration of the '160 Patent due to such failures were caused by the Thelen Defendants.

77. The conduct (including action or inaction) of the Thelen Defendants concerning the maintenance fees due on the '160 Patent were the direct, superseding and/or intervening cause of any alleged damages to Quickie which resulted from the nonpayment of the maintenance fees on the '160 Patent and the alleged expiration of the '160 Patent.

78. Accordingly, if and to the extent GT is found liable to Quickie, the Thelen Defendants are responsible to GT for the full amount for which GT is found liable or for contribution as to any such liability in the proportionate amount of the responsibility of the Thelen Defendants for Quickie's damages as determined at trial.

SEVENTEENTH AFFIRMATIVE DEFENSE
and
SECOND CROSS-CLAIM
(against The Rick Steiner Defendants)

Greenberg Traurig LLP ["GT"] hereby cross-claims against the Rick Steiner Defendants (i.e. Rick, Steiner Fell & Benowitz LLP and Alan Fell, Esq.), and, in doing so, alleges as follows (on information and belief as to paragraphs 81 through 84, those paragraphs realleged in paragraph 87 which were originally alleged on information and belief, 88 and 89):

Nature Of The Cross-Claim

79. GT denies any wrongdoing in its representation of Quickie. But, if and to the extent GT is found liable to plaintiff, the Rick Steiner Defendants are liable to GT as contemporaneous and subsequent continuing counsel to Quickie to the full extent GT is found liable. The action or inaction of the Rick Steiner Defendants, who were and served as outside general counsel to Quickie during the period that GT represented Quickie (including without limitation with respect to the '160 Patent [defined elsewhere herein]) when the maintenance fees for the '160 Patent became due, was the direct, superseding and/or intervening cause, or a contributing cause, of any injuries resulting from the nonpayment of maintenance fee. If Quickie's claims against GT are

not dismissed, then the Rick Steiner Defendants are responsible and liable to GT to the extent GT may be found liable to Quickie or for contribution as to that liability.

### The Parties

80. Cross-claimant Greenberg Traurig LLP is a New York limited liability partnership engaged in the practice of law, with offices in the City, County and State of New York.

81. Cross-claim defendant Rick, Steiner Fell & Benowitz LLP ["the Rick Steiner Law Firm"] is a limited liability partnership engaged in the practice of law, with offices in the City, County and State of New York.

82. Cross-claim defendant Alan Fell, Esq. is a partner of defendant the Rick Steiner Law Firm, who transacted business in providing legal services in New York.

83. Quickie is the owner by assignment of U.S. Patent No. 6,066,160 ["the '160 Patent"], issued on May 23, 2000. Quickie maintains its business address at and through the Rick Steiner Law Firm.

84. Stephen Colvin is an inventor of the patented device covered under the '160 Patent and a principal of Quickie.

### Jurisdiction And Venue

85. This Court has personal jurisdiction over the Rick Steiner Defendants, since they are residents of, located in, and doing business in the State of New York.

86. Venue is properly situated in New York County, since GT and the Rick Steiner Defendants are residents of, located in, and maintain offices in this County.

## Background

### The '160 Patent and GT's Engagement

87. GT repeats and realleges paragraphs 62 through 67 above as if separately and specifically alleged in this cross-claim.

### The Rick Steiner Defendants' Role and Responsibility

88. During the period of GT's engagement and services for Quickie, the Rick Steiner Defendants were outside general counsel for Quickie in all of its business dealings, including (without limitation) with respect to the '160 Patent.

89. In that capacity, the Rick Steiner Defendants knew of and were advised that maintenance fees would have to be paid, and when they were due, with respect to the '160 Patent; and they had oversight responsibility as to Quickie's assets and dealing, including for assuring that the '160 Patent was maintained and kept extant.

90. The Rick Steiner Defendants were kept fully advised of, and maintained direct and continual oversight over, the work and services of GT for Quickie.

### The Rick Steiner's Defendants' Opportunities to Make or Assure Payment

91. The Rick Steiner Defendants had the opportunity to pay the maintenance fees, or advise Quickie to pay the fees, before they were due and the '160 Patent expired for non-payment of those fees.

92. The Rick Steiner Defendants had further opportunities to pay the maintenance fees, or advise Quickie to pay the fees, during the one year period commencing May 23, 2003 through May 23, 2004; and the Rick Steiner Defendants also had opportunities to cure the nonpayment, or to advise Quickie to cure the nonpayment after the one year payment period expired on May 23, 2004, including when amendments were filed to the '160 Patent in 2005.

93. Any alleged failures concerning payment of those fees when and as due and any expiration of the '160 Patent due to such failures were caused by the Rick Steiner Defendants.

94. The conduct (including action or inaction) of the Rick Steiner Defendants concerning the maintenance fees due on the '160 Patent were the direct, superseding and/or intervening cause of any alleged damages to Quickie which resulted from the nonpayment of the maintenance fees on the '160 Patent and the alleged expiration of the '160 Patent.

95. Accordingly, if and to the extent GT is found liable to Quickie, the Rick Steiner Defendants are responsible to GT for the full amount for which GT is found liable or for contribution as to any such liability in the proportionate amount of the responsibility of the Rick Steiner Defendants for Quickie's damages as determined at trial.

WHEREFORE, defendant and cross-claimant GT respectfully requests judgment in its favor as follows:

1. dismissing the Amended Complaint;

2. awarding judgment against, directing payment by, the Thelen Defendants under GT's First Cross-Claim in any amount GT is found liable to Quickie or for contribution as to any such liability in the proportionate amount of the responsibility of the Thelen Defendants for Quickie's damages as determined at trial;

3. awarding judgment against, directing payment by, the Rick Steiner Defendants under GT's Second Cross-Claim in any amount GT is found liable to Quickie or for contribution as to any such liability in the proportionate amount of the responsibility of the Rick Steiner Defendants for Quickie's damages as determined at trial;

4. awarding GT costs and disbursements of this action and GT's cross-claims; and

5.  granting GT such other and further relief as the Court may deem just and proper.

Dated:  July 9, 2007
        New York, New York

POLLACK & KAMINSKY

By:  _____
        Martin I. Kaminsky
        Justin Y. K. Chu
        114 West 47th Street
        New York, New York 10036
        (212) 575-4700

Attorneys for Defendant and Cross-Claimant
Greenberg Traurig, LLP

19

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x
QUICKIE, LLC,

                                    Plaintiff,                          Index No. 105235/07

            - against -

GREENBERG TRAURIG, LLP, THELEN REID
BROWN RAYSMAN & STEINER LLP (FORMERLY
KNOWN AS THELEN, REID & PRIEST LLP); AND
ROBERT E. KREBS, ESQ.

                                    Defendants.
------------------------------------------------------------x
THELEN REID BROWN RAYSMAN & STEINER
LLP and ROBERT E. KREBS,

                        Third-Party Plaintiffs,

            -against-

TODD SHARINN, PEPE & HAZARD LLP,
ALAN FELL and RICK, STEINER, FELL &
BENOWITZ, LLP,

                        Third-Party Defendants.
------------------------------------------------------------x

## ANSWER TO THIRD-PARTY COMPLAINT,
## COUNTERCLAIM AND CROSS-CLAIM
## OF TODD SHARINN

        Third-Party Defendant Todd Sharinn responds to the Third-Party Complaint of Thelen

Reid Brown Raysman & Steiner LLP and Robert E. Kreb [collectively "the Thelen

Defendants"], counterclaims against the Thelen Defendants and cross-claims against Rick,

Steiner, Fell & Benowitz, LLP and Alan Fell [collectively "the Rick Steiner Defendants"] as

follows:

        1.    Admits paragraphs 1 through 3.

2.   Admits paragraphs 4 through 7 on information and belief.

3.   Admits paragraphs 8 and 9.

4.   Denies paragraph 10 except admits that, on or about May 30, 2000, Sharinn, on behalf of Pepe, wrote a letter to Quickie, copies of which were sent to the Rick Steiner Defendants; and respectfully refers to the letter for its contents.

5.   Denies paragraph 11, except admits that, thereafter, Sharinn joined Greenberg Traurig LLP ["GT"] as an associate in its New York office.

6.   Admits paragraph 12 on information and belief.

7.   Denies paragraph 13, except admits on information and belief that, in mid-2002,, Quickie retained and engaged the Thelen Defendants to provide legal services for and as to the '160 Patent.

8.   Denies paragraph 14, except admits that Quickie replaced GT and that Thelen Reid & Priest LLP (now Thelen Reid Brown Raysman & Steiner LLP) ["the Thelen Law Firm"] became sole counsel for Quickie as to the Medtronic litigation, and admits on information and belief that GT transferred to the Thelen Law Firm its file relating to the Metronic Litigation.

9.   Denies paragraph 15, except denies knowledge or information sufficient respond as to what Quickie may or may not have asked the Thelen Defendants.

10.  Denies paragraph 16, except admits that at least some law firms representing clients in connection with the prosecution and maintenance of a patent keep and maintain a file with respect thereto and may refer to that file as a "patent file".

11.  Denies paragraphs 17 and 18, except admits that, during at least part of the period in which GT represented Quickie as to Patent No. 6,066,160 ["the '160 Patent"], it had a file or files as to the '160 Patent.

2

12. Admits paragraphs 19 through 23 on information and belief, but respectfully refers to the Amended Complaint and the response thereto filed by the Thelen Defendants for a full and accurate statement of their contents.

13. Denies paragraph 24, except admits that, while he was employed at Pepe and at GT, Sharinn worked on matters related to the '160 Patent.

14. Denies paragraph 25, except admits that, on or about May 30, 2000, Sharinn, on behalf of Pepe, wrote a letter to Quickie, copies of which were sent to the Rick Steiner Defendants; and respectfully refers to the letter for its contents.

15. Denies paragraph 26, except admits that Sharinn advised Quickie that there were or would be maintenance fees on the '160 Patent.

16. Denies paragraphs 27 through 29.

17. Declines to respond to paragraphs 30 through 43 on the understanding that, as stated in the headings for the clauses of action in which such paragraphs are alleged, they are not alleged as to or against Sharinn.

## FIRST AFFIRMATIVE DEFENSE

18. The Amended Complaint fails to state a cause of action against Sharinn.

## SECOND AFFIRMATIVE DEFENSE

19. Quickie's claims are barred by the statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

20. Quickie terminated its engagement of GT and Sharinn no later than March 4, 2003; and Quickie revoked all powers of attorney given to them regarding the '160 Patent. After that, SHARINN owed no duty to Quickie. Thus, Sharinn did not owe a duty to Quickie with respect to the maintenance fees for the '160 Patent which became initially due on May 23, 2003.

### FOURTH AFFIRMATIVE DEFENSE

21. Quickie terminated its engagement of GT and Sharinn and revoked all powers of attorney given to them regarding the '160 Patent no later than March 4, 2003. After that, GT and Sharinn did not have authority to act for Quickie. Thus, Sharinn had no authority to act for Quickie vis-à-vis the '160 Patent when the maintenance fees for the '160 Patent became initially due on May 23, 2003.

### FIFTH AFFIRMATIVE DEFENSE

22. Any damages suffered by Quickie as a result of the alleged failure to pay maintenance fees and the alleged expiration of the '160 Patent, or otherwise due to the events alleged in the Complaint, were caused by others besides Sharinn and not proximately caused by Sharinn, including (without limitation) the conduct of other professionals or other persons besides Sharinn.

### SIXTH AFFIRMATIVE DEFENSE

23. The Thelen Defendants had already succeeded GT and Sharinn as counsel for Quickie with respect to the '160 Patent before the maintenance fees for the '160 Patent became due on May 23, 2003 and before the deadline for payment of those fees. Quickie had ample and full opportunity to pay those fees after GT and Sharinn ceased to represent Quickie and before the '160 Patent allegedly expired; but the Thelen Defendants failed to advise and properly represent Quickie with respect to that matter. Thus, the conduct (including action and inaction) of the Thelen Defendants concerning the '160 Patent (including, without limitation, as to the maintenance fees due thereon) was the direct, superseding and/or intervening cause, or a contributing cause, of any damages which Quickie claims it suffered and it may have suffered as alleged in this action.

4

## SEVENTH AFFIRMATIVE DEFENSE

24. The Thelen Defendants had already succeeded GT and Sharinn as counsel for Quickie in the PTO and in the Medtronic Litigation before the maintenance fees for the '160 Patent became due on May 23, 2003 and before the deadline for payment of those fees. In that capacity, the Thelen Defendants had further opportunities to know of and to assure payment (and cure non-payment) of the maintenance fees and thus keep the '160 Patent extant. Thus, the conduct (including action and inaction) of the Thelen Defendants concerning the '160 Patent (including, without limitation, as to the maintenance fees due thereon) was the direct, superseding and/or intervening cause, or a contributing cause, of any damages which Quickie claims to have suffered (as alleged in the Amended Complaint).

## EIGHTH AFFIRMATIVE DEFENSE

25. Quickie has submitted statements, some under oath, to the PTO that, during the relevant period, the Thelen Defendants were responsible for 160 Patent, including the timely payment of any maintenance fees due for that patent. Quickie is therefore estopped and otherwise barred from contending that Sharinn had that responsibility and that Sharinn caused or is liable for the damages Quickie claims to have suffered (as alleged in the Amended Complaint).

## NINTH AFFIRMATIVE DEFENSE

26. The Rick Steiner Defendants were outside general counsel for Quickie throughout the period that Sharinn acted as counsel for Quickie, and, as such, they advised Quickie with respect to the '160 Patent before the maintenance fees for the '160 Patent became due on May 23, 2003 and before the deadline for payment of those fees. Quickie had ample and full opportunity to pay those fees after Sharinn ceased to represent Quickie and before the '160 Patent allegedly expired; but the Rick Steiner Defendants failed to advise and properly represent

Quickie with respect to that matter. Thus, the conduct (including action and inaction) of the Rick Steiner Defendants concerning the '160 Patent (including, without limitation, as to the maintenance fees due thereon) was the direct, superseding and/or intervening cause, or a contributing cause, of any damages which Quickie claims it suffered and it may have suffered as alleged in this action.

## TENTH AFFIRMATIVE DEFENSE

27. Quickie was negligent or contributorily negligent in failing to assure that the maintenance fees were paid and the '160 Patent remained extant. Quickie knew of the obligation to pay maintenance fees; and Quickie had ample and full opportunity to pay the maintenance fees due on the '160 Patent before and after Sharinn ceased to represent Quickie and before the '160 Patent allegedly expired. Thus, Quickie's conduct (including action and inaction) concerning the '160 Patent (including, without limitation, the maintenance fees due thereon) was the direct, superseding and/or intervening cause, or a contributing cause, of any damages which Quickie claims it suffered or may have suffered as alleged in this action.

## ELEVENTH AFFIRMATIVE DEFENSE

28. Quickie's own conduct, whether negligent or not, was the proximate cause of any damages it suffered or may have suffered as alleged in this action.

## TWELFTH AFFIRMATIVE DEFENSE

29. Sharinn was never personally engaged to act as Quickie's counsel, but rather always acted merely through and on behalf of the law firms with which he was associated. Sharinn acted at all times appropriately within the limited scope of his authority, and otherwise in good faith vis-à-vis Quickie; and he never took on or had personal responsibility in connection with the matters at issue in this action.

6

## THIRTEENTH AFFIRMATIVE DEFENSE

30. Sharinn was never a partner or shareholder of the law firms with which he was associated during the period at issue; and he can not be held to the responsibilities and potential liabilities of persons who were partners and/or shareholders of the law firms representing Quickie.

## FOURTEENTH AFFIRMATIVE DEFENSE

31. Sharinn acted vis-à-vis Quickie at all times in good faith, with due diligence and reasonably as to the '160 Patent, consistent with the conduct of reasonable skill, care and knowledge of a patent counsel, sufficiently fulfilling any duties it may have had to Quickie.

## FIFTHTEEN AFFIRMATIVE DEFENSE

32. The damages sought by Quickie are speculative, and not ascertainable or provable with reasonable certainty and competent proof, and thus, are not recoverable.

## SIXTEENTH AFFIRMATIVE DEFENSE
### and
### COUNTERCLAIM
(against The Thelen Defendants)

Todd Sharinn hereby counterclaims against the Thelen Defendants (i.e. Thelen Reid Brown Raysman & Steiner LLP as successor to Thelen Reid & Priest LLP and Robert E. Krebs, Esq.), and, in doing so, alleges as follows (on information and belief as to paragraphs 35 through 38, 43, 44 ,48 through 50, and 52):

## Nature Of The Cross-Claim

33. Sharinn denies any wrongdoing in his representation of Quickie. But, if and to the extent Sharinn is found liable to plaintiff, the Thelen Defendants are liable to Sharinn as successor counsel to the full extent Sharinn is found liable. The action or inaction of the Thelen Defendants, who had already replaced and succeeded Sharinn as counsel to Quickie with respect

to the '160 Patent (including without limitation in the PTO and in the Medtronic Litigation [defined elsewhere herein]) when the maintenance fees for the '160 Patent became due on May 23, 2003, was the direct, superseding and/or intervening cause, or a contributing cause, of any injuries resulting from the nonpayment of maintenance fee. The Thelen Defendants are therefore responsible and liable to Sharinn to the extent Sharinn may be found liable in this action or for contribution as to Sharinn's liability.

### The Parties

34. Counterclaimant Todd Sharinn is a resident of Conneticut and an attorney engaged in the practice of law, with offices in the City, County and State of New York.

35. Counterclaim-defendant Thelen Reid Brown Raysman & Steiner LLP ["the Thelen Law Firm"] is a limited liability partnership engaged in the practice of law, with offices in the City, County and State of New York. It is a successor by merger of Thelen Reid & Priest LLP, formerly a law firm with offices in the City, County and State of New York prior to its merger with Brown Raysman & Steiner LLP in 2006, and thus is liable for any wrongdoing at issue herein by either of those law firms.

36. Counterclaim-defendant Robert E. Krebs, Esq. is a partner of defendant the Thelen Law Firm, who transacted business in providing legal services in New York.

37. Quickie is the owner by assignment of Patent No. 6,066,160 ["the '160 Patent"], issued on May 23, 2000.

38. Stephen Colvin is a principal of Quickie, and an inventor of the device covered under the '160 Patent.

## Jurisdiction And Venue

39.  This Court has personal jurisdiction over the Thelen Law Firm, since it is located and doing business in the State of New York.  This Court has jurisdiction over Robert E. Krebs, since the claims against him arose out of: [a] a transaction of business in New York and the providing of legal services in New York, and/or, [b] a tortious act by him causing injury in New York at a time when Krebs conducted sufficient business in New York or interstate commerce to be subject to personal long-arm jurisdiction in New York under CPLR §302.

40.  Venue is properly situated in New York County, since Sharinn and the Thelen Law Firm are residents of, located in, and maintain offices in this County.

## Background

### The '160 Patent

41.  The '160 Patent covers a medical device designed to assist in heart surgeries ["the Quickie Device"].

42.  Under applicable law and regulations, the owner of a patent must pay periodic maintenance fees to keep the patent in effect.

43.  The first maintenance fee for the '160 Patent was due during the one year period beginning May 23, 2003 through May 23, 2004.  The fee could be paid any time during that one year period.

44.  The '160 Patent has now expired due to nonpayment of the maintenance fee which was due during the one year period from May 23, 2003 through May 23, 2004.

9

## The Engagement of the Law Firms With Which Sharinn Was Associated

45. In 2002, the law firm that Sharinn was then associated with, Pepe & Hazzard LLP, ["Pepe"] was engaged by Quickie to provide services in connection with the Quickie Device and the '160 Patent on it.

46. Thereafter, in later 2001 or early 2002, Sharinn moved to and became an associate of Greenberg Traurig LLP ["GT"], and it was engaged to provide litigation services in support of a claim by Quickie that Medtronic, Inc. ["Medtronic"] was infringing the '160 Patent. In connection therewith, GT filed an action on behalf of plaintiff against Medtronic in the U.S. District Court for the Southern District of New York in February 2002 ["the Medtronic litigation"].

47. Quickie also engaged GT to represent it in the PTO concerning the '160 Patent. In connection therewith, GT filed a Change of Correspondence Address form and a Fee Address Indication Form with the PTO in December 2002.

## The Thelen Defendants' Replacement of GT (and thus also Sharinn)

48. In no later than July 2002, Quickie replaced GT (and thus also Sharinn) with Thelen Reid & Priest as its attorneys in the Medtronic Litigation. Quickie also replaced GT (and thus also Sharinn) with the Thelen Defendants as its counsel with respect to all other aspects of the '160 Patent, including dealings with and in the United States Patent & Trademark Office ["the PTO"] including (without limitation) assuring timely payment of maintenance fees.

49. A formal engagement agreement between Quickie and Thelen Reid & Priest was executed in July 2002. A Stipulation and Order of Substitution of Counsel was entered in the Medtronic Litigation in November 2002, pursuant to which Thelen Reid & Priest replaced GT (and thus also Sharinn) as counsel of record for plaintiff.

50. Quickie replaced GT (and thus also Sharinn) as its counsel as to the '160 Patent because Colvin, the inventor of the Quickie Device and a principal of Quickie, had a relative who was an attorney at Thelen Reid & Priest and Colvin wanted to give that legal business to his relative's law firm.

51. When it hired the Thelen Defendants as to the '160 Patent, Quickie terminated GT's (and thus also Sharinn's) role, responsibility and services as to the '160 Patent.

52. Quickie executed a Revocation of Prior Powers of Attorney dated March 4, 2003, which was thereafter submitted to the PTO. In that same document, Quickie appointed the Thelen Defendants as the new attorneys for Quickie with respect to the '160 Patent with full and sole authority to "prosecute and transact all business" in the PTO. Thelen Reid & Priest also submitted to the PTO a Change of Attorney Docket and Change of Address Notice in December 2003, directing that all further communications regarding the '160 Patent to the Thelen Defendants.

53. Thus, when maintenance fees on the '160 Patent became due, during the one year period commencing May 23, 2003, GT (and thus also Sharinn) was no longer Quickie's attorney, having been replaced by the Thelen Defendants. GT's (and thus also Sharinn's) authority to act for Quickie (and any duty they had in that respect) had already ended two months earlier when Quickie had revoked all prior powers of attorney and appointed the Thelen Defendants to act for it instead.

## The Thelen Defendants' Opportunities to Make of Assure Payment

54. The Thelen Defendants had the opportunity to pay the maintenance fees, or advise Quickie to pay the fees, before they were due and the '160 Patent expired for non-payment of those fees.

55. The Thelen Defendants had further opportunities to pay the maintenance fees, or advise Quickie to pay the fees, during the one year period commencing May 23, 2003 through May 23, 2004; and the Thelen Defendants also had opportunities to cure the nonpayment, or to advise Quickie to cure the nonpayment after the one year payment period expired on May 23, 2004, including when the Thelen Defendants filed amendments to the '160 Patent in 2005.

56. Any alleged failures concerning payment of those fees when and as due and any expiration of the '160 Patent due to such failures were caused by the Thelen Defendants.

57. The conduct (including action or inaction) of the Thelen Defendants concerning the maintenance fees due on the '160 Patent were the direct, superseding and/or intervening cause of any alleged damages to Quickie which resulted from the nonpayment of the maintenance fees on the '160 Patent and the alleged expiration of the '160 Patent.

58. Accordingly, if and to the extent Sharinn is found liable to Quickie, the Thelen Defendants are responsible to Sharinn for the full amount for which Sharinn is found liable or for contribution as to any such liability in the proportionate amount of the responsibility of the Thelen Defendants for Quickie's damages as determined at trial.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### and
### CROSS-CLAIM
(against The Rick Steiner Defendants)

Sharinn hereby cross-claims against the Rick Steiner Defendants (i.e. Rick, Steiner Fell & Benowitz LLP and Alan Fell, Esq.), and, in doing so, alleges as follows (on information and belief as to paragraphs 61 through 64, those paragraphs reallleged in paragraph 67 which were originally alleged on information and belief, 68 and 69):

12

## Nature Of The Cross-Claim

59. Sharinn denies any wrongdoing in its representation of Quickie. But, if and to the extent Sharinn is found liable to plaintiff, the Rick Steiner Defendants are liable to Sharinn as contemporaneous counsel to Quickie to the full extent Sharinn is found liable. The action or inaction of the Rick Steiner Defendants. who were and served as outside general counsel to Quickie during the period that the law firms with which Sharinn was associated (and thus Sharinn) represented Quickie (including without limitation with respect to the '160 Patent [defined elsewhere herein]) when the maintenance fees for the '160 Patent became due, was the direct, superseding and/or intervening cause, or a contributing cause, of any injuries resulting from the nonpayment of maintenance fee. The Rick Steiner Defendants are therefore responsible and liable to Sharinn to the extent Sharinn may be found liable in this action or for contribution as to Sharinn's liability.

## The Parties

60. Counterclaimant Todd Sharinn is a resident of Conneticut and an attorney engaged in the practice of law, with offices in the City, County and State of New York.

61. Cross-claim defendant Rick, Steiner Fell & Benowitz LLP ["the Rick Steiner Law Firm"] is a limited liability partnership engaged in the practice of law, with offices in the City, County and State of New York.

62. Cross-claim defendant Alan Fell, Esq. is a partner of defendant the Rick Steiner Law Firm, who transacted business in providing legal services in New York.

63.    Quickie is the owner by assignment of Patent No. 6,066,160 ["the '160 Patent"], issued on May 23, 2000.

13

64.    Stephen Colvin is an inventor of the patented device covered under the '160 Patent and a principal of Quickie.

## Jurisdiction And Venue

65. This Court has personal jurisdiction over the Rick Steiner Defendants, since they are residents of, located in, and doing business in the State of New York.

66. Venue is properly situated in New York County, since the Rick Steiner Defendants are residents of, located in, and maintain offices in this County.

## Background

### The '160 Patent and Quickie's Engagement of Patent Counsel

67. Sharinn repeats and realleges paragraphs 42 through 44, 45 through 47 above as if separately and specifically alleged in this cross-claim.

### The Rick Steiner Defendants' Role and Responsibility

68. During the period of Quickie's engagement of Pepe and GT, and their (and thus Sharinn's) services for Quickie, the Rick Steiner Defendants were outside general counsel for Quickie in all of its business dealings, including (without limitation) with respect to the '160 Patent.

69. In that capacity, the Rick Steiner Defendants knew of and were advised that maintenance fees would have to be paid, and when that was so, with respect to the '160 Patent; and they had oversight responsibility as to Quickie's assets and dealing, including for assuring that the '160 Patent was maintained and kept extant.

70. The Rick Steiner Defendants were kept fully advised of, and maintained direct and continual oversight over, the work and services for Quickie by the law firms with which Sharinn was associated (and thus Sharinn).

14

## The Rick Steiner's Defendants' Opportunities to Make or Assure Payment

71. The Rick Steiner Defendants had the opportunity to pay the maintenance fees, or advise Quickie to pay the fees, before they were due and the '160 Patent expired for non-payment of those fees.

72. The Rick Steiner Defendants had further opportunities to pay the maintenance fees, or advise Quickie to pay the fees, during the one year period commencing May 23, 2003 through May 23, 2004; and the Rick Steiner Defendants also had opportunities to cure the nonpayment, or to advise Quickie to cure the nonpayment after the one year payment period expired on May 23, 2004, including when amendments were filed to the '160 Patent in 2005.

73. Any alleged failures concerning payment of those fees when and as due and any expiration of the '160 Patent due to such failures were caused by the Rick Steiner Defendants.

74. The conduct (including action or inaction) of the Rick Steiner Defendants concerning the maintenance fees due on the '160 Patent were the direct, superseding and/or intervening cause of any alleged damages to Quickie which resulted from the nonpayment of the maintenance fees on the '160 Patent and the alleged expiration of the '160 Patent.

75. Accordingly, if and to the extent Sharinn is found liable in this action, the Rick Steiner Defendants are responsible and liable to Sharinn for the full amount for which Sharinn is found liable or for contribution as to any such liability in the proportionate amount of the responsibility of the Rick Steiner Defendants for Quickie's damages as determined at trial.

WHEREFORE, defendant and cross-claimant Sharinn respectfully requests judgment in its favor as follows:

    1.  dismissing the Third-Party Complaint of the Thelen Defendants;

    2.  awarding judgment against, directing payment by, the Thelen Defendants

under Sharinn's Counterclaim in any amount Sharinn is found liable or for contribution as to any such liability in the proportionate amount of the responsibility of the Thelen Defendants for Quickie's damages as determined at trial;

      3. awarding judgment against, directing payment by, the Rick Steiner Defendants under Sharinn's Cross-Claim in any amount Sharinn is found liable or for contribution as to any such liability in the proportionate amount of the responsibility of the Rick Steiner Defendants for Quickie's damages as determined at trial;

      4. awarding Sharinn costs and disbursements of this action and Sharinn's counterclaim and cross-claim; and

      5. granting Sharinn such other and further relief as the Court may deem just and proper.

Dated:  July 19, 2007
      New York, New York

             POLLACK & KAMINSKY

             By: _____
                 Martin I. Kaminsky
                 Justin Y. K. Chu
             114 West 47th Street
             New York, New York 10036
               (212) 575-4700

            Attorneys for Defendant, Counterclaimant
             and Cross-Claimant Todd Sharinn

Index No. 10523/07
Supreme Court of the State of New York
County of New York

Quickie, LLC,

                    Plaintiff,

          -against-

Greenberg Traurig, LLP, Thelen Reid
Brown Raysman & Steiner LLP (formerly
known as Thelen, Reid & Priest LLP); and
Robert E. Krebs, Esq.,

                    Defendants.

Thelen Reid Brown Raysman & Steiner
LLP and Robert E. Krebs,

                    3d Party Plaintiffs,

          -against-

Todd Sharinn, Pepe & Hazard LLP,
Alan Fell and Rick, Steiner, Fell &
Benowitz, LLP,

                    3d Party Defendants.

Answer to Third-Party Complaint,
Counterclaim and Cross-Claim
of Todd Sharinn

Pollack & Kaminsky
114 West 47th Street
New York, NY 10036
Tel.: (212) 575-4700
Fax: (212) 575-6560

Attorneys for Greenberg Traurig, LLP
and Todd Sharinn

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

QUICKIE, LLC,

                           Plaintiff,

-against-

GREENBERG TRAURIG, LLC; THELEN, REID,
BROWN, RAYSMAN & STEINER, L.L.P. (FORMERLY
KNOWN AS THELEN, REID & PRIEST, LLP); AND
ROBERT E. KREBS, ESQ.

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Index No. 105235/07

**Plaintiff Quickie, LLC's
Answer to Defendant
Thelen Reid Brown Raysman
& Steiner LLP's Counterclaim**

Plaintiff Quickie, LLC ("Quickie"), by and through its attorneys, files its answer to the counterclaim (the "Counterclaim") of Defendant Thelen Reid Brown Raysman & Steiner LLP ("Thelen") in its Answer, Counterclaim, Cross-Claim, and Third-Party Complaint, and states as follows:

<u>Answer</u>

1.      Quickie denies the allegations of paragraph 66, except that Quickie admits that it hired Thelen to handle a patent infringement action relating to Medtronic, Inc. and the 160 Patent; that it asked Thelen to prosecute and transact all business in the PTO concerning the 160 Patent including, but not limited to, the reexamination proceedings; and that it has terminated the July 3, 2002 engagement agreement with Thelen.

2.      Quickie denies the allegations of paragraph 67.

3.      Quickie denies the allegations of paragraph 68.

4.      Quickie admits that it has not paid Thelen the amount referenced in paragraph 69, but denies the remainder of the allegations contained therein.

5.   Quickie denies the allegations of paragraph 70.

6.   Quickie denies the allegations of paragraph 71.

### Affirmative Defenses

1.   Thelen's claims are barred, in part or in whole, under the doctrine of estoppel.

2.   Thelen's claims are barred, in part or in whole, under the doctrine of waiver.

3.   Thelen's claims are barred, in part or in whole, by the applicable statute of limitations.

4.   Thelen's claims are barred, in part or in whole, because the damages, if any, sustained by Thelen were proximately caused, in whole or in part, by the acts or omissions and/or negligence on the part of Thelen.

5.   Thelen's claims are barred, in part or in whole, by the equitable doctrine of unclean hands.

6.   Thelen's claims are barred, in part or in whole, by the doctrine of accord and satisfaction.

7.   Thelen's claims are barred, in part or in whole, for failure of consideration.

8.   Thelen's claims are barred, in part of in whole, because Quickie has made all required payments to Thelen and thus has satisfied its debt.

WHEREFORE, Quickie respectfully requests that judgment be entered: (a) granting Quickie the relief sought in the amended complaint; and (b) dismissing the Counterclaim in its entirety with prejudice.

Respectfully submitted,

JANVEY, GORDON, HERLANDS, RANDOLPH
& COX, LLP

ATTORNEYS FOR PLAINTIFF

By: _____
         Richard I. Janvey
         A Member of the Firm
355 Lexington Avenue
New York, New York  10017
(212) 986-1200

DIAMOND McCARTHY LLP
Of Counsel
Two Houston Center
909 Fannin, Suite 1500
Houston, Texas 77010
(713) 333-5100

OFFICE COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

QUICKIE, LLC,                                       :

                  Plaintiff,         :

      -against-                                 :

GREENBERG TRAURIG, LLP, THELEN REID     :
BROWN RAYSMAN & STEINER LLP (f/k/a       :
THELEN, REID & PRIEST LLP) and ROBERT    :
E. KREBS,                                           :
                              :

                 Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THELEN REID BROWN RAYSMAN &            :
STEINER LLP and ROBERT E. KREBS,          :
                              :

       Third-Party Plaintiffs,    :

      -against-                                 :

TODD SHARINN, PEPE & HAZARD LLP,        :
ALAN FELL and RICK, STEINER, FELL &       :
BENOWITZ, LLP,                                    :
                              :

       Third-Party Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No.      105235/07

**ANSWER TO CROSS-CLAIM OF
GREENBERG TRAURIG, LLP**

Third Party Index No. 590587/07

Defendants Thelen Reid Brown Raysman & Steiner LLP ("Thelen") and Robert E. Krebs

("Krebs") (collectively the "Thelen Defendants"), by and through their attorneys, Proskauer

Rose LLP, for their answer to the Cross-Claim of Greenberg Traurig, LLP ("Greenberg"):

1.     Deny the allegations of paragraph 52.

2.     Admit the allegations of paragraph 53.

3.     Deny the allegations of paragraph 54, except admit that Thelen Reid Brown

Raysman & Steiner LLP is a California limited liability partnership and is the successor to the

NEW YORK
COUNTY CLERK'S OFFICE

AUG 14

NOT COMPARED
WITH COPY FILE

firm of Thelen Reid & Priest LLP and all of its asserts and liabilities, and that Thelen is qualified to do business in, and to operate as a law firm in, the State of New York.

4.      Deny the allegations of paragraph 55, except admit that at all relevant times Krebs was an equity partner in Thelen or its predecessor, Thelen Reid & Priest LLP, and that Krebs may have, from time to time, engaged in incidental activity while physically present on a temporary basis in the State of New York in connection with his practice of law in the State of California.

5.      Upon information and belief, admit the allegations of paragraph 56.

6.      Upon information and belief, admit the allegations in paragraph 57.

7.      Deny the allegations of paragraph 58, except admit that Thelen is qualified to do business in, and to operate as a law firm in, the State of New York, and that venue is proper in this County.

8.      Deny the allegations of paragraph 59, except admit that Krebs may have, from time to time, engaged in incidental activity while physically present on a temporary basis in the State of New York in connection with his practice of law in the State of California.

9.      Deny the allegations of paragraph 60, except admit that Greenberg and Thelen maintain offices in this County and that venue is proper in this County.

10.     Deny the allegations of paragraph 61, and respectfully refer the Court to the text of U.S. Patent No. 6,066,160 (the "160 Patent") for its contents.

11.     Admit the allegations of paragraph 62.

12.     Deny the allegations of paragraph 63, except admit that a maintenance fee with respect to the 160 Patent was payable during the one-year period from May 23, 2003 through May 23, 2004.

13.    Deny the allegations of paragraph 64, except admit that maintenance fee payments with respect to the 160 Patent were not made during the one-year period from May 23, 2003 through May 23, 2004.

14.    Deny the allegations of paragraph 65, except admit upon information and belief that plaintiff, Quickie, LLC ("Quickie"), retained Greenberg to provide legal services, and that Greenberg filed a lawsuit against Medtronic, Inc. ("Medtronic").

15.    Deny the allegations of paragraph 66, except admit upon information and belief that Quickie retained Greenberg to provide legal services, and respectfully refer the Court to Greenberg's filings with the U.S. Patent and Trademark Office ("PTO") for their contents.

16.    Deny the allegations of paragraph 67, except admit that Thelen was retained by Quickie on July 3, 2002 to represent it in connection with reexamination proceedings initiated by Medtronic before the PTO with respect to the '160 Patent.

17.    Deny the allegations of paragraph 68.

18.    Deny the allegations of paragraph 69, except admit that Thelen was initially retained by Quickie on July 3, 2002, that Greenberg and Thelen served as co-counsel in the Medtronic litigation for a few months, after which, in or about November 2002, Greenberg withdrew as counsel of record in the Medtronic litigation.

19.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 70, except admit, upon information and belief, that a principal of Quickie is in some way related to a former Thelen partner.

20.    Deny the allegations of paragraph 71.

21.    Deny the allegations of paragraph 72, and respectfully refer the Court to the texts of the documents described therein for their contents.

3

22.    Deny the allegations of paragraph 73.

23.    Deny the allegations of paragraph 74.

24.    Deny the allegations of paragraph 75.

25.    Deny the allegations of paragraph 76.

26.    Deny the allegations of paragraph 77.

27.    Deny the allegations of paragraph 78.

## AFFIRMATIVE DEFENSES

28.    The Thelen Defendants incorporate by reference their First through Ninth Affirmative Defenses, as set forth in paragraphs 57 through 65 of their Answer, Counterclaim, Cross-Claim and Third-Party Complaint, dated June 29, 2007, as if fully set forth herein.

WHEREFORE, the Thelen Defendants respectfully request that judgment be entered:

(a)    dismissing Greenberg's Cross-Claim with prejudice;

(b)    granting such other and further relief as may be just and proper; and

(c)    granting the Thelen Defendants the costs of this action.

Dated:    New York, New York
          August 13, 2007

                                        Steven C. Krane
                                        PROSKAUER ROSE LLP
                                        1585 Broadway
                                        New York, NY 10036-8299
                                        Phone: (212) 969-3435

TO:

JANVEY, GORDON, HERLANDS, RANDOLPH & COX, LLP
355 Lexington Avenue
New York, New York 10017

4

DIAMOND McCARTHY, LLP
Two Houston Center
909 Fannin, Suite 1500
Houston, Texas 77010

*Attorneys for Plaintiff*

Martin I. Kaminsky
Justin Y. K. Chu
Pollack & Kaminsky
114 West 47th Street
New York, New York 10036

*Attorneys for Greenberg Traurig & Todd Sharinn*

Pamela A. Bresnahan
Vorys, Sater, Seymour and Pease LLP
1828 I. Street NW
Eleventh Floor
Washington, D.C. 20036-5109

*Attorneys for Rick, Steiner, Fell & Benowitz and Alan Fell*

James C. Graham
225 Asylum Street
Hartford, Connecticut 06103-4302

*Attorneys for Pepe & Hazard*

OFFICE COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

QUICKIE, LLC,

              Plaintiff,

     -against-

GREENBERG TRAURIG, LLP, THELEN REID
BROWN RAYSMAN & STEINER LLP (f/k/a
THELEN, REID & PRIEST LLP) and ROBERT
E. KREBS,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

THELEN REID BROWN RAYSMAN &
STEINER LLP and ROBERT E. KREBS,

              Third-Party Plaintiffs,

     -against-

TODD SHARINN, PEPE & HAZARD LLP,
ALAN FELL and RICK, STEINER, FELL &
BENOWITZ, LLP,

              Third-Party Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No.     105235/07

**REPLY TO COUNTER-CLAIM OF
TODD SHARINN**

Third Party Index No. 590587/07

SERVED  MAIL  DOCK'D
       PERS
FILED       DOCK'D
DIARIED

       Defendants Thelen Reid Brown Raysman & Steiner LLP ("Thelen") and Robert E. Krebs

("Krebs") (collectively the "Thelen Defendants"), by and through their attorneys, Proskauer

Rose LLP, for their reply to the Counter-Claim of Todd Sharinn ("Sharinn"):

     1.     Deny the allegations of paragraph 33.

     2.     Upon information and belief, admit the allegations of paragraph 34.

     3.     Deny the allegations of paragraph 35, except admit that Thelen Reid Brown

Raysman & Steiner LLP is a California limited liability partnership and is the successor to the

NEW YORK
COUNTY CLERK'S OFFICE

AUG 1 4 2007

NOT COMPARED
WITH COPY FILE

firm of Thelen Reid & Priest LLP and all of its asserts and liabilities, and that Thelen is qualified to do business in, and to operate as a law firm in, the State of New York.

4.    Deny the allegations of paragraph 36, except admit that at all relevant times Krebs was an equity partner in Thelen or its predecessor, Thelen Reid & Priest LLP, and that Krebs may have, from time to time, engaged in incidental activity while physically present on a temporary basis in the State of New York in connection with his practice of law in the State of California.

5.    Upon information and belief, admit the allegations of paragraph 37.

6.    Upon information and belief, admit the allegations in paragraph 38.

7.    Deny the allegations of paragraph 39, except admit that Thelen is qualified to do business in, and to operate as a law firm in, the State of New York, that Krebs may have, from time to time, engaged in incidental activity while physically present on a temporary basis in the State of New York in connection with his practice of law in the State of California, and that venue is proper in this County.

8.    Deny the allegations of paragraph 40, except admit that Greenberg Traurig, LLP ("Greenberg") and Thelen maintain offices in this County and that venue is proper in this County.

9.    Deny the allegations of paragraph 41, and respectfully refer the Court to the text of U.S. Patent No. 6,066,160 (the "160 Patent") for its contents.

10.    Admit the allegations of paragraph 42.

11.    Deny the allegations of paragraph 43, except admit that a maintenance fee with respect to the 160 Patent was payable during the one-year period from May 23, 2003 through May 23, 2004.

2

12.    Deny the allegations of paragraph 44, except admit that maintenance fee payments with respect to the 160 Patent were not made during the one-year period from May 23, 2003 through May 23, 2004.

13.    Upon information and belief, admit the allegations of paragraph 45.

14.    Deny the allegations of paragraph 46, except admit upon information and belief that Sharinn became an associate with Greenberg, that plaintiff, Quickie, LLC ("Quickie"), retained Greenberg to provide legal services, and that Greenberg filed a lawsuit against Medtronic, Inc. ("Medtronic").

15.    Deny the allegations of paragraph 47, except admit upon information and belief that Quickie retained Greenberg to provide legal services, and respectfully refer the Court to Greenberg's filings with the U.S. Patent and Trademark Office ("PTO") for their contents.

16.    Deny the allegations of paragraph 48, except admit that Thelen was retained by Quickie on July 3, 2002 to represent it in connection with reexamination proceedings initiated by Medtronic before the PTO with respect to the '160 Patent.

17.    Deny the allegations of paragraph 49, except admit that Thelen was initially retained by Quickie on July 3, 2002, that Greenberg and Thelen served as co-counsel in the Medtronic litigation for a few months, after which, in or about November 2002, Greenberg withdrew as counsel of record in the Medtronic litigation.

18.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50, except admit, upon information and belief, that a principal of Quickie is in some way related to a former Thelen partner.

19.    Deny the allegations of paragraph 51.

3

20.    Deny the allegations of paragraph 52, and respectfully refer the Court to the texts of the documents described therein for their contents.

21.    Deny the allegations of paragraph 53.

22.    Deny the allegations of paragraph 54.

23.    Deny the allegations of paragraph 55.

24.    Deny the allegations of paragraph 56.

25.    Deny the allegations of paragraph 57.

26.    Deny the allegations of paragraph 58.

## AFFIRMATIVE DEFENSES

27.    The Thelen Defendants incorporate by reference their First through Ninth Affirmative Defenses, as set forth in paragraphs 57 through 65 of their Answer, Counterclaim, Cross-Claim and Third-Party Complaint, dated June 29, 2007, as if fully set forth herein.

WHEREFORE, the Thelen Defendants respectfully request that judgment be entered:

(a)    dismissing Sharinn's Counter-Claim with prejudice;

(b)    granting such other and further relief as may be just and proper; and

(c)    granting the Thelen Defendants the costs of this action.


Dated:    New York, New York
          August 13, 2007

*Steven C. Krane/DAL*

Steven C. Krane
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036-8299
Phone: (212) 969-3435

4

TO:

JANVEY, GORDON, HERLANDS, RANDOLPH & COX, LLP
355 Lexington Avenue
New York, New York 10017

DIAMOND McCARTHY, LLP
Two Houston Center
909 Fannin, Suite 1500
Houston, Texas 77010

*Attorneys for Plaintiff*

Martin I. Kaminsky
Justin Y. K. Chu
Pollack & Kaminsky
114 West 47th Street
New York, New York 10036

*Attorneys for Greenberg Traurig & Todd Sharinn*

Pamela A. Bresnahan
Vorys, Sater, Seymour and Pease LLP
1828 I. Street NW
Eleventh Floor
Washington, D.C. 20036-5109

*Attorneys for Rick, Steiner, Fell & Benowitz and Alan Fell*

James C. Graham
225 Asylum Street
Hartford, Connecticut 06103-4302

*Attorneys for Pepe & Hazard*

## AFFIRMATION OF SERVICE

I, David A. Lewis, affirm under penalty of perjury that on August 13, 2007, I caused copies of the foregoing Answer to Greenberg Traurig's Cross-Claims; Reply to Counter-Claim of Todd Sharinn; Responses and Answers to Quickie, LLC's, First set of Requests for Production; Responses and Answers to Greenberg Traurig, LLP's First Set of Requests For Production; Responses and Answers to Quickie, LLC's First Set of Interrogatories; Responses and Answers to Greenberg Traurig, LLP's Interrogatories to be served by Overnight Delivery upon:

JANVEY, GORDON, HERLANDS, RANDOLPH & COX, LLP
355 Lexington Avenue
New York, New York 10017

DIAMOND McCARTHY, LLP
Two Houston Center
909 Fannin, Suite 1500
Houston, Texas 77010

*Attorneys for Plaintiff*

Martin I. Kaminsky
Justin Y. K. Chu
Pollack & Kaminsky
114 West 47th Street
New York, New York 10036
Tel.: (212) 575-4700

*Attorneys for Greenberg Traurig & Todd Sharinn*

Pamela A. Bresnahan
Vorys, Sater, Seymour and Pease LLP
1828 I. Street NW
Eleventh Floor
Washington, D.C. 20036-5109
Tel: (202) 467-8861

*Attorneys for Rick, Steiner, Fell & Benowitz and Alan Fell*

James C. Graham
225 Asylum Street
Hartford, Connecticut 06103-4302
Tel: (860) 241 2677\

*Attorneys for Pepe & Hazard*

David A. Lewis

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

QUICKIE, LLC,

                Plaintiff,

        -against-

GREENBERG TRAURIG, LLP, THELEN REID
BROWN RAYSMAN & STEINER LLP (f/k/a
THELEN, REID & PRIEST LLP) and ROBERT
E. KREBS,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

THELEN REID BROWN RAYSMAN &
STEINER LLP and ROBERT E. KREBS,

           Third-Party Plaintiffs,

        -against-

TODD SHARINN, PEPE & HAZARD LLP,
ALAN FELL and RICK, STEINER, FELL &
BENOWITZ, LLP,

           Third-Party Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No.    105235/07

**ANSWER, COUNTERCLAIM,
CROSS-CLAIM AND AMENDED
THIRD-PARTY COMPLAINT**

NEW YORK
COUNTY CLERK'S OFFICE

SEP 18 2007

NOT COMPARED
WITH COPY FILE

       Defendants Thelen Reid Brown Raysman & Steiner LLP ("Thelen") and Robert E. Krebs

("Krebs") (collectively the "Thelen Defendants"), by and through their attorneys, Proskauer

Rose LLP, for their answer to the amended complaint:

       1.     Deny the allegations of paragraph 1 as they relate to the Thelen Defendants,

except admit that at one time Thelen provided certain legal services to plaintiff, Quickie, LLC

("Quickie"). The Thelen Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 1 as they relate to defendant Greenberg

Traurig, LLC ("Greenberg").

2.      Deny the allegations of paragraph 2 as they relate to the Thelen Defendants.  The Thelen Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 as they relate to defendant Greenberg.

3.      Deny the allegations of paragraph 3.

4.      Upon information and belief, admit the allegations of paragraph 4.

5.      Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5.

6.      Deny the allegations of paragraph 6, except admit that Thelen Reid Brown Raysman & Steiner LLP is a California limited liability partnership and is the successor to the firm of Thelen Reid & Priest LLP and all of its asserts and liabilities, and that Thelen is qualified to do business in, and to operate as a law firm in, the State of New York.

7.      Deny the allegations of paragraph 7, except admit that at all relevant times Krebs was an equity partner in Thelen or its predecessor, Thelen Reid & Priest LLP, and that Krebs may have, from time to time, engaged in incidental activity while physically present on a temporary basis in the State of New York in connection with his practice of law in the State of California.

8.      Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, except admits that venue is proper in this court.

9.      Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, except admit, upon information and belief, that Quickie retained Todd S. Sharinn ("Sharinn") of Pepe & Hazard L.L.P. ("Pepe") to file an application with the United States Patent and Trademark Office (the "PTO") seeking a patent to cover the "Quickie Device," as defined in the Amended Complaint.

10.    Upon information and belief, admit the allegations of paragraph 10.

11.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, except admit that Thelen became lead litigation counsel in the Medtronic Litigation and that Greenberg, not Thelen, continued to counsel Quickie in connection with proceedings before the PTO.

12.    Upon information and belief, admit the allegations of paragraph 12.

13.    Deny the allegations of paragraph 13, except admit that Medtronic commenced reexamination proceedings before the PTO with respect to U.S. Patent No. 6,066,160 (the "160 Patent").

14.    Deny the allegations of paragraph 14, except admit that Quickie signed a power of attorney authorizing Thelen to take certain actions on its behalf, and respectfully refer the Court to the relevant documents for their contents.

15.    Deny the allegations of paragraph 15, except admit that Thelen filed certain forms with the PTO in connection with its representation of Quickie, and respectfully refer the Court to the relevant documents for their contents, and deny having knowledge or information sufficient to form a belief as to the truth of the allegations regarding communications between Greenberg or Sharinn and the PTO.

16.    Deny the allegations of paragraph 16, except deny having knowledge or information sufficient to form a belief as to the truth of the allegations regarding the contents of Greenberg's marketing materials or website.

17.    Deny the allegations of paragraph 17, except admit that Thelen has marketing materials and maintains a website, and respectfully refer the Court to the relevant documents for their contents.

3

18.     Upon information and belief, admit the allegations of paragraph 18, except deny the allegations regarding a "window for payment of maintenance fees," and respectfully refer the Court to the language of 37 C.F.R. § 1.362(e)(1) for its contents.

19.     Deny the allegations of paragraph 19, except admit that the Thelen Defendants did not pay maintenance fees with respect to the 160 Patent on behalf of Quickie.

20.     Admit the allegations of paragraph 20.

21.     Deny the allegations of paragraph 21, except admit that Thelen filed certain amendments relating to the 160 Patent and respectfully refer the Court to the relevant documents for their contents.

22.     Deny the allegations of paragraph 22.

23.     Deny the allegations of paragraph 23, except admit that, on April 6, 2004, the parties to the Medtronic Litigation jointly requested that the court stay the case in light of action taken by the PTO in a reexamination proceeding regarding the 160 Patent.

24.     Deny the allegations of paragraph 24.

25.     Does not respond to paragraph 25 because it does not contain any factual allegations.

26.     In response to paragraph 26, reiterate and reassert their responses to paragraphs 1 through 25.

27.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27, except admit that at all relevant times an attorney-client relationship existed between Greenberg and Quickie.

28.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28.

4

29.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29.

30.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30.

31.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31.

32.    In response to paragraph 32, reiterate and reassert their responses to paragraphs 1 through 25.

33.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33, except admit that at all relevant times an attorney-client relationship existed between Greenberg and Quickie.

34.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34.

35.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35.

36.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36.

37.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37.

38.    In response to paragraph 38, reiterate and reassert their responses to paragraphs 1 through 25.

39.    Deny the allegations of paragraph 39, except admit that Thelen provided certain legal services to Quickie between 2002 and 2006 with respect to the 160 Patent, and that during that period Krebs was a partner in the Thelen firm.

40.    Deny the allegations of paragraph 40, except admit that the Thelen Defendants did not pay maintenance fees with respect to the 160 Patent on behalf of Quickie.

41.    Deny the allegations of paragraph 41.

42.    Deny the allegations of paragraph 42.

43.    Deny the allegations of paragraph 43.

44.    In response to paragraph 44, reiterate and assert their responses to paragraphs 1 through 25.

45.    Deny the allegations of paragraph 45, except admit that Thelen provided certain legal services to Quickie between 2002 and 2006 with respect to the 160 Patent, and that during that period Krebs was a partner in the Thelen firm.

46.    Deny the allegations of paragraph 46.

47.    Deny the allegations of paragraph 47.

48.    Deny the allegations of paragraph 48.

49.    Deny the allegations of paragraph 49.

50.    In response to paragraph 50, reiterate and reassert their responses to paragraphs 1 through 25.

51.    Deny the allegations of paragraph 51, except admit that Thelen provided certain legal services to Quickie between 2002 and 2006 with respect to the 160 Patent, and that during that period Krebs was a partner in the Thelen firm.

52.    Deny the allegations of paragraph 52.

6

53.     Deny the allegations of paragraph 53.

54.     Deny the allegations of paragraph 54.

55.     Deny the allegations of paragraph 55.

56.     Deny the allegations of paragraph 56.

## FIRST AFFIRMATIVE DEFENSE

57.     The Thelen Defendants faithfully performed all obligations and duties under their agreement with Quickie. The Thelen Defendants did not owe a duty to Quickie either to pay maintenance fees with respect to the 160 Patent or to remind Quickie of its own obligation to do so.

## SECOND AFFIRMATIVE DEFENSE

58.     At all relevant times, Quickie was aware of its obligation to pay its maintenance fees. Quickie was informed in a May 30, 2000 letter from Sharinn, then of Pepe, that:

> Please note that the United States Patent and Trademark Office requires the payment of fees for maintaining patents issuing from patent applications filed in the United States on or after December 12, 1980.... The fees are due on or before 3 1/2, 7 1/2, and 11 1/2 years from the date the patent issues. Failure to pay the fees will result in loss of the patent. We will notify you regarding payment of the maintenance fees several months before they are due.

Quickie's failure to pay its maintenance fees, despite being fully aware of its obligation to do so, was the proximate cause of any harm suffered by Quickie.

## THIRD AFFIRMATIVE DEFENSE

59.     Quickie's Amended Complaint, and each and every cause of action contained therein, is barred, in whole or in part, by Quickie's own contributory negligence.

### FOURTH AFFIRMATIVE DEFENSE

60.    The acts or omissions of the Thelen Defendants alleged in the Amended Complaint neither directly nor indirectly caused Quickie to suffer the damages it seeks to recover.

### FIFTH AFFIRMATIVE DEFENSE

61.    Any damages suffered by Quickie as a result of the alleged failure to pay patent maintenance fees with respect to the 160 Patent, or as a result of the alleged expiration of the 160 Patent, were caused by the acts or omissions of others, including without limitation the acts or omissions of other professionals, and not by any act or omission of the Thelen Defendants.

### SIXTH AFFIRMATIVE DEFENSE

62.    Quickie's fourth and fifth causes of action are duplicative of its third cause of action and each other and are therefore barred.

### SEVENTH AFFIRMATIVE DEFENSE

63.    The damages sought by Quickie are speculative and are not ascertainable or provable with reasonable certainty and competent proof. Therefore, they are not recoverable.

### EIGHTH AFFIRMATIVE DEFENSE

64.    Quickie may not recover damages against the Thelen Defendants based on alleged infringement of the 160 Patent in any period prior to the issuance of a reexamination certificate by the PTO with respect thereto.

### NINTH AFFIRMATIVE DEFENSE

65.    Quickie may not recover damages against the Thelen Defendants based on alleged infringement of the 160 Patent in any period prior to the expiration thereof.

## COUNTERCLAIM

66.      Quickie retained Thelen on July 3, 2002 to handle a patent infringement action relating to Medtronic, Inc. and the 160 Patent.  Later, the Thelen Defendants were, in addition, asked to represent Quickie in connection with reexamination proceedings before the PTO.  The Thelen Defendants represented Quickie until August 14, 2006.

67.      At all times, the Thelen Defendants faithfully performed all obligations and duties under their agreement with Quickie.

68.      Thelen accurately, correctly and fairly billed Quickie the sum of $470,186.85 for a portion of the legal services rendered to it and for the related disbursements and charges incurred by Thelen in connection therewith.

69.      Thelen has timely demanded payment of the sum of $470,186.85 and Quickie has failed to pay such sums.

70.      Quickie owes Thelen the sum of $470,186.85 for unpaid legal fees, disbursements and charges.

71.      Thelen is entitled to recover from Quickie the sum of not less than $470,186.85, together with pre-judgment interest at the rate of 9% per annum.

## CROSS-CLAIM

72.      In 1998, Quickie retained Sharinn, then with the Pepe law firm, to file an application with the PTO.

73.      The PTO issued the 160 Patent in May 2000.

74.      On May 30, 2000, Sharinn wrote to Quickie promising to "notify [Quickie] regarding payment of the maintenance fees several months before they are due."

75.    Upon information and belief, shortly after sending Quickie the above notice, Sharinn joined Greenberg.  Greenberg assumed all responsibilities and obligations relating to the 160 Patent, including the promise Sharinn and Pepe had made to notify Quickie of maintenance fees.

76.    Upon information and belief, Greenberg served as primary counsel to Quickie for the prosecution and maintenance of several Quickie patents and prospective patents.

77.    Quickie's engagement of Thelen in 2002 was for the limited purpose of representing Quickie in specific litigation relating to the 160 Patent and, later, in reexamination proceedings relating to the 160 Patent.

78.    At all relevant times, Greenberg maintained responsibility for all matters relating to the 160 Patent that were not specifically undertaken by Thelen, including any duties to notify or remind Quickie of maintenance fee payments.

79.    Quickie never asked the Thelen Defendants to assume any responsibilities relating to the payment of maintenance fees, or to remind Quickie of its own obligations to make such payments, and the Thelen Defendants never agreed or undertook to do so.

80.    The Thelen Defendants owed no duty to inform or remind Quickie of its own obligation to make maintenance payments on the 160 Patent.

81.    Although the Thelen Defendants deny any liability to Quickie for the harms alleged in the complaint, and further deny that Quickie suffered any damage or loss whatsoever as a result of the facts described in the complaint, if and to the extent that Quickie suffered any compensable injury, the proximate cause of such injury, in whole or in part, was Greenberg's failure to timely notify or remind Quickie of its obligations or otherwise to fulfill its professional responsibilities to Quickie.

10

82.    If and to the extent that the Thelen Defendants are found in any way liable for the harms alleged by Quickie in the Amended Complaint, the Thelen Defendants are entitled to indemnification or contribution from Greenberg.

## THIRD-PARTY COMPLAINT

Defendant Thelen Reid Brown Raysman & Steiner LLP ("Thelen") and Robert E. Krebs ("Krebs"), as third-party plaintiffs, allege the following as their amended complaint against Todd S. Sharinn ("Sharinn"), Pepe & Hazard LLP ("Pepe"), Alan Fell ("Fell") and Rick, Steiner, Fell & Benowitz, LLP ("Rick Steiner"), as third-party defendants:

## JURISDICTION AND VENUE

1.    This Court has personal jurisdiction over the third-party defendants because they are either domiciled in the State of New York or engaged in conduct giving rise to personal jurisdiction over non-domiciliaries under CPLR § 302(a).

2.    Venue is proper under CPLR § 503 because Thelen resides in New York County.

## THE PARTIES

3.    Sharinn was formerly employed as an attorney with the law firm of Greenberg Traurig, LLP ("Greenberg"), and before that with the Pepe law firm. He is now "of counsel" to the law firm of Baker & McKenzie LLP, 1114 Avenue of the Americas, New York, New York 10036.

4.    Pepe is a law firm with its principal office located at 225 Asylum Street, Hartford, Connecticut 06103.

5.    Fell is an attorney practicing with the law firm of Rick Steiner with his principal office located at Three New York Plaza, New York, New York 10004.

11

6.      Rick Steiner is a New York law firm with its principal office at Three New York Plaza, New York, New York 10004.

## FACTS COMMON TO ALL CAUSES OF ACTION

7.      In the late 1990s, plaintiff Quickie, LLC ("Quickie") developed a device known as the "Passive Knotless Suture Terminator for Use in Minimally Invasive Surgery and to Facilitate Standard Tissue Securing" for use in open-heart surgeries (the "Quickie Device").

8.      In 1998, Sharinn, while a lawyer at Pepe, filed a patent application for Quickie with the United States Patent and Trademark Office (the "PTO") seeking a patent for the Quickie Device.

9.      On May 23, 2000, the PTO issued U.S. Patent No. 6,066,160 covering the Quickie Device (the "160 Patent").

10.     On May 30, 2000, Sharinn, while still employed by Pepe, wrote a letter to Quickie, copies of which were sent to Fell and Rick Steiner, stating (emphasis supplied):

> Please note that the United States Patent and Trademark Office requires the payment of fees for maintaining patents issuing from patent applications filed in the United States on or after December 12, 1980. . . . The fees are due on or before 3 1/2, 7 1/2, and 11 1/2 years from the date the patent issues. Failure to pay the fees will result in loss of the patent. We will notify you regarding payment of the maintenance fees several months before they are due.

11.     Shortly thereafter, Sharinn joined Greenberg's New York office.

12.     On February 5, 2002, Quickie retained Greenberg to advise and represent it as lead counsel in an action against Medtronic, Inc. for alleged infringement of the 160 Patent.

13.     On July 3, 2002, Quickie retained Thelen to provide "litigation services related to the Quickie, LLC legal action against Medtronic, Inc." (the "Medtronic Action").

14.     Greenberg initially continued to represent Quickie as co-counsel in the Medtronic Action. In or around October 2002, however, Quickie replaced Greenberg and Thelen became

12

sole counsel for the Medtronic Action. Greenberg subsequently transferred the litigation file, that is, the file relating to the Medtronic Action, to Thelen.

15.    Quickie did not ask Thelen to take, and Thelen did not accept, any responsibility for the prosecution and maintenance of the 160 Patent. At all relevant times, Greenberg remained responsible for the prosecution and maintenance of the 160 Patent.

16.    As a matter of regular course, a law firm representing a client in conjunction with the prosecution and maintenance of a patent will keep and maintain a "patent file."

17.    At all relevant times since Sharinn joined Greenberg, Greenberg has maintained the patent file relating to the 160 Patent (the "Patent File").

18.    Thelen at no time asked for the Patent File, nor did Greenberg send it or any copies of its contents to Thelen.

19.    In a lawsuit filed in the Supreme Court of the State of New York, County of New York, Index No. 105235/07, on May 15, 2007 (the "Action"), Quickie alleged that (a) it owed a maintenance fee on the 160 Patent beginning as of May 23, 2003, (b) the deadline for payment of this fee expired on May 23, 2004 and (c) the period to reinstate the 160 Patent expired on May 24, 2006.

20.    Quickie further alleged in the Action that it was not reminded by Thelen, Krebs or Greenberg of its obligation to pay these fees and that, if it had been, Quickie would have timely paid the fees or reinstated the patent.

21.    Quickie further alleged in the Action that Thelen, Krebs and Greenberg are liable for malpractice and negligent representation for failing to remind Quickie about the maintenance fees.

13

22.    Quickie further alleged in the Action that it was damaged by an amount in excess of $10 million.

23.    Thelen and Krebs have denied that they had any duty to remind Quickie of its maintenance payments and that they committed malpractice or negligent representation.

## FIRST CAUSE OF ACTION
(Indemnification and Contribution for
Contributory Negligence/Legal Malpractice against Sharinn)

24.    At all relevant times Sharinn, while employed by Pepe or Greenberg, was the lawyer in charge of the prosecution and maintenance of the 160 Patent.

25.    In a letter dated May 30, 2000, Sharinn represented to Quickie that he would "notify [Quickie] regarding payment of the maintenance fees several months before they are due."

26.    Upon information and belief, Sharinn failed to notify Quickie that its maintenance fees were due or past due.

27.    Upon information and belief, Sharinn never told Quickie that he would not fulfill his commitment to notify Quickie regarding payment of the maintenance fees before they were due, or that the responsibility for reminding Quickie regarding payment of the maintenance fees was being or had been assumed by any other law firm.

28.    If there was any duty to remind Quickie of its obligations to pay its maintenance fees, such a duty was borne by Sharinn and the law firms with which he was associated, not by Thelen and Krebs.

29.    To the extent Thelen and Krebs are held liable in the Action, Thelen and Krebs are entitled to indemnification and contribution, in whole or in part, from Sharinn because his actions or failures to act were the proximate cause of Quickie's harm.

14

## SECOND CAUSE OF ACTION
(Indemnification and Contribution for
Contributory Negligence/Legal Malpractice against Pepe)

30.    Pepe prosecuted and obtained the 160 Patent for Quickie.

31.    In a letter dated May 30, 2000, Pepe, via a letter written by Sharinn on Pepe letterhead while employed at Pepe, represented to Quickie that it would "notify [Quickie] regarding payment of the maintenance fees several months before they are due."

32.    Upon information and belief, Pepe received notices from the PTO indicating that maintenance fees were due on the 160 Patent and failed to forward that information to Quickie or to advise Quickie in any way that maintenance fees were due.

33.    To the extent that Thelen and Krebs are held liable in any way in the Action, Thelen and Krebs are entitled to indemnification and contribution, in whole or in part, because Pepe's actions or failures to act were the proximate cause of Quickie's harm.

## THIRD CAUSE OF ACTION
(Indemnification and Contribution for
Contributory Negligence/Legal Malpractice against Fell)

34.    At all relevant times, Fell served as the "general counsel" and chief legal officer for Quickie.  Upon information and belief, Fell was charged by Quickie with responsibility for its day-to-day legal affairs, including all legal matters relating to the 160 Patent.

35.    Among other things, upon information and belief, Fell was involved in, and provided legal advice to Quickie with respect to, all material communications relating to the application for and issuance of the 160 Patent, Quickie's negotiations and business dealings with Medtronic, Quickie's efforts to license the 160 Patent and the underlying product to third-parties, the Medtronic litigation, the reexamination proceedings, and all other matters relating to the 160 Patent.

15

36.    By letter dated May 30, 2000, Fell received the following notice from Sharinn and Pepe (emphasis supplied):

> Please note that the United States Patent and Trademark Office requires the payment of fees for maintaining patents issuing from patent applications filed in the United States on or after December 12, 1980. . . . The fees are due on or before 3 1/2, 7 1/2, and 11 1/2 years from the date the patent issues. Failure to pay the fees will result in loss of the patent.

37.    Accordingly, at all relevant times, Fell knew of his client's obligation to pay its maintenance fees.

38.    Upon information and belief, Fell failed to advise his client in any way that maintenance fees were due.

39.    To the extent Thelen and Krebs are held liable in any way in the Action, Thelen and Krebs are entitled to indemnification and contribution, in whole or in part, from Fell because his actions or failures to act were the proximate cause of Quickie's harm.

### FOURTH CAUSE OF ACTION
(Indemnification and Contribution for Contributory
Negligence/Legal Malpractice against Rick Steiner)

40.    At all relevant times Rick Steiner served as counsel to Quickie. Upon information and belief, Rick Steiner was charged by Quickie with responsibility for its day-to-day legal affairs, including all legal matters relating to the 160 Patent.

41.    Among other things, upon information and belief, Rick Steiner was involved in, and provided legal advice to Quickie with respect to, all material communications relating to the application for and issuance of the 160 Patent, Quickie's negotiations and business dealings with Medtronic, Quickie's efforts to license the 160 Patent and the underlying product to third-parties, the Medtronic litigation, the reexamination proceedings, and all other legal matters relating to the 160 Patent.

16

42.     Upon information and belief, Quickie uses Rick Steiner's offices as its principal place of business.

43.     By letter dated May 30, 2000, Rick Steiner received the following notice from Sharinn (emphasis supplied):

> Please note that the United States Patent and Trademark Office requires the payment of fees for maintaining patents issuing from patent applications filed in the United States on or after December 12, 1980.... The fees are due on or before 3 1/2, 7 1/2, and 11 1/2 years from the date the patent issues.  Failure to pay the fees will result in loss of the patent.

44.     As such, Rick Steiner was on notice as to its client's obligation to pay its maintenance fees.

45.     Upon information and belief, Rick Steiner failed to advise its client in any way that maintenance fees were due.

46.     To the extent the Thelen Plaintiffs are held liable in any way in the Action, Thelen is entitled to contribution, in whole or in part, from Rick Steiner for being the proximate cause of Quickie's harm due to its legal malpractice and negligent representation of Quickie.

WHEREFORE, Thelen and Krebs respectfully request that judgment be entered:

(a)     dismissing the complaint with prejudice;

(b)     on their Counterclaim, granting judgment against Quickie in the amount of not less than $470,186.85, together with pre-judgment interest at the rate of 9% per annum;

(c)     on their Cross-Claim against Greenberg and Third-Party Complaint against Sharinn, for indemnification and contribution if and to the extent that Thelen and Krebs are held liable in any way in the Action;

17

(d)    on their Third-Party Complaint against Pepe, Fell and Rick Steiner, for

indemnification and contribution if and to the extent that Thelen and Krebs are held liable in any

way in the Action;

(e)    granting such other and further relief as may be just and proper; and

(f)    granting Thelen and Krebs the costs of this action.


Dated:    New York, New York
          September 18, 2007

                                    _____
                                    Steven C. Krane
                                    PROSKAUER ROSE LLP
                                    1585 Broadway
                                    New York, NY  10036-8299
                                    Phone: (212) 969-3435


TO:

Richard I. Janvey
Joan M. Secofsky
Janvey, Gordon, Herlands, Randolph & Cox, LLP
355 Lexington Avenue
New York, New York 10017

Stephen T. Loden
Diamond McCarthy, LLP
Two Houston Center
909 Fannin, Suite 1500
Houston, Texas 77010

*Attorneys for Plaintiff*

18

Martin I. Kaminsky
Justin Y. K. Chu
Pollack & Kaminsky
114 West 47th Street
New York, New York 10036

*Attorneys for Greenberg Traurig & Todd Sharinn*


Pamela A. Bresnahan
Vorys, Sater, Seymour and Pease LLP
1828 L Street NW
Eleventh Floor
Washington, D.C. 20036-5109

*Attorneys for Rick, Steiner, Fell & Benowitz and Alan Fell*


James C. Graham
Pepe & Hazard, LLP
225 Asylum Street
Hartford, Connecticut 06103-4302

*Attorneys for Pepe & Hazard, LLP*