UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**QUICKIE, LLC,**

                          Plaintiff,           07 Civ. 10331 (RMB) (DFE)
                                                     ECF CASE
      -against-

**GREENBERG TRAURIG, LLP,**

                          Defendant.

---

### GREENBERG TRAURIG'S
### RULE 56.1 STATEMENT
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Greenberg Traurig LLP ["GT"] respectfully submits this statement of the facts, pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1.

**This Action**

1. This is a legal malpractice action based on the alleged failure of attorneys for Plaintiff Quickie LLC ["Quickie"] to pay, or to advise Quickie to pay, the Maintenance Fee ["the Maintenance Fee"] which was due during the period May 23, 2003 through May 23, 2004 on Quickie's Patent No. 6,066,160 ["the '160 Patent"], resulting in the loss of the '160 Patent [see Moving Exhibits AO and AP for Quickie's Complaint and GT's Answer].

2. This action was commenced in mid- April 2007.

**The '160 Patent and the Maintenance Fee Due for It**

3. Quickie is the owner by assignment of Patent No. 6,066,160 ["the '160 Patent"], issued on May 23, 2000 [Mov. Ex. H ¶1; Mov. Ex. L at 1; Mov. Ex. R at 30-31].

4. Under applicable law and regulations, the owner of a patent must pay periodic Maintenance Fee to keep the patent in effect.

5. The Maintenance Fee for the '160 Patent first became due on November 23, 2003 [Mov. Ex. L at 1]. But, Quickie could actually have prepaid beginning on May 23, 2003; and it had a year thereafter (i.e. until May 23, 2004) in which to pay the fee [*Id.*].[1]

6. By May 2003, i.e. the first date in which the Maintenance Fee could be paid, Thelen Reid & Priest LLP ["Thelen"] had replaced GT as Quickie's lawyer [see details and cites *infra*].

7. Quickie had been advised that maintenance fees would have to be paid to keep the '160 Patent alive, failing which Quickie would lose the '160 Patent [Mov. Ex. H ¶21; see also Mov. Ex. Q at 26-27; Mov. Ex. R at 97-99].

8. But, neither Quickie nor its General Counsel took any steps to calendar the due dates or otherwise make any note in Quickie's files that the Maintenance Fee would be due and would have to be paid [Mov. Ex. Q at 26-27; Mov. Ex. R at 60-61].

9. The Maintenance Fee was not paid when due or payable [Mov. Ex. A0 ¶ 19].

10. The '160 Patent expired due to nonpayment of the Maintenance Fee during that one year period [Mov. Ex. L at 1].

**The Law Firms Vis-à-vis the '160 Patent**

11. Between 1998 and 2001, Pepe & Hazard LLP ["Pepe"], with whom Todd Sharinn was then associated, represented Quickie in its application for what became the '160 Patent [Mov. Ex. R at 33-34]. Sharinn left Pepe to become an associate of Greenberg Traurig LLP ["GT"] in 2001 [*Id.*]. Thereafter, GT provided services to Quickie as to the '160 Patent until it

---

[1] For simplicity, since the Maintenance Fee could have been paid on May 23, 2003, we will refer herein to that date as the "due date", even though it was not actually due until six months thereafter, i.e. on November 23, 2003.

1

was replaced by Thelen in the fall of 2002 and spring of 2003 as to the '160 Patent [*Id.*; se also detailing *infra*].

12. Alan Fell, a member of Quickie [Mov. Ex. R. at 10], is a lawyer who served as Quickie's General Counsel overseeing its patent counsel [Mov. Ex. R at 25, 86-87; Mov. Ex. T at 230].

**The Replacement of GT as to the '160 Patent**

13. On March 4, 2003 --- two and a half months *before* the Maintenance Fee became due --- Quickie expressly revoked, in a writing submitted to the U.S. Patent & Trademark Office ["PTO"], any authority that GT had previously had as to the '160 Patent [Mov. Ex. A, "Quickie's Revocation/Appointment"; see also Mov. Exs. B, C, E, F, G and testimony detailed, cited and quoted *infra*].

14. By and in the Revocation/Appointment, in March 2003, Quickie appointed Thelen (specifying Robert Krebs and several other Thelen attorneys) as its successor counsel for the '160 Patent [see Mov. Ex. A; see also Mov. Exs. B, C, E, F, G , AE and AO ¶¶ 14, 15, 19; Mov. Ex. Q at 63-64] .

15. The Revocation/Appointment constituted and evidences Quickie's replacement of GT with Thelen as to all aspects of the '160 Patent, including the payment of the Maintenance Fee [Mov. Ex. E at 1-4;  Mov. Ex. F ¶2; Mov. Ex. Q at 95-102; Mov. Ex. S at  20, 28-29, 39; 60-61, 66-68, 71-72 79-81, 93, 96, 100, 167-69; 172-73, 216-17, 249-50, 289-90; see also 52-53, 62-64, 144-46; Mov. Ex. T at 149; see also Mov. Exs. A, C, O, P, AO ¶¶ 14, 15, 19].

16. GT was formally notified of that change of attorneys and Quickie's Revocation/Appointment by a Notice from the PTO on April 2, 2003, a month and a half *before* the Maintenance Fee first became due [see Mov. Ex. B].

2

17. GT was also advised by Quickie's General Counsel Fell and one of its principals Dr. Stephen Colvin that it would no longer represent Quickie as to the '160 Patent [Mov. Ex. T at 96, 101, 105, 153, 1865-86, 194; Mov. Ex. R at 48; see also Mov. Ex S at 291-94].

18. Accordingly, GT sent Quickie a letter, with a copy of the Notice, explaining that, in view of it, GT would "take no further action on this matter" [Mov. Ex. AF; see also Mov. Ex. T at 188, 242, 244, 251, 267; see also Mov. Ex. R at 51-54].

19. No one from Quickie, including Fell (its General Counsel and Member) told Sharinn that, notwithstanding the Revocation/Appointment and Sharinn's letter, Quickie would still be looking to GT or Sharinn for further services as to the '160 Patent [Mov. Ex. R at 54, 56; Mov. Ex. T at 244-45; Mov. Ex. I ¶¶22, 23].

20. In March 2003, having received the Revocation/Appointment, GT ceased all activity as to the '160 Patent, and removed it from GT's patent watch data file [[Mov. Exs. O, P; Mov. Ex. S at 20, 28-29, 39, 60-61, 66-68, 71-72 79-81, 93, 96, 100, 167-69; 172-73, 216-17, 249-50, 289-90; see also 52-53, 62-64, 144-46; see also Mov. Ex. O, P, AK, AR, AM].

21. In 2006 and 2007, before commencing this action, Quickie (through another new patent counsel) petitioned unsuccessfully to revive the '160 Patent [Mov. Exs. D through G; see also Mov Exs. H, L and M].

22. In its *sworn* statements and other official filings to the PTO, Quickie confirmed that GT had had no responsibility as to the Maintenance Fee and that Thelen (rather than GT) was solely responsible for the failure to pay the Maintenance Fee [see Mov. Exs. E, F, G; Mov. Ex. Q at 44-48, 77-102; see also Mov. Ex. R at 63-82; Mov. Ex. T at 253-64, 266-67].

**Thelen's Failures as to the Maintenance Fee and the Loss of the '160 Patent**

23. Thelen replaced GT as Quickie's counsel as to the '160 Patent in the fall of 2002 and the spring of 2003, before the Maintenance Fee became due and first could be paid [Mov. Ex. R at 96-97; Mov. Ex. AO ¶¶ 14, 15, 19; Mov. Ex. I ¶¶42, 43].

24. The materials and documents which GT send to Thelen (both when Thelen first became involved and after Thelen replaced GT) showed when the Maintenance Fee on the '160 Patent would become due [Mov. Ex. S at 123-24, 128-29, 136-37, see also 212, 217-18, 309; Mov. Ex. T at 198-202; see also Mov. Exs. W, X; Mov. Ex. R at 63-64; Mov. Ex. I ¶¶22. 23].

25. Thelen represented Quickie (as successor to GT) both when the Maintenance Fee first became payable and due and the entire one-year period during which it could be paid [Mov. Exs. E, F, G, L; Mov. Ex. A0 ¶19].

26. Thelen was well aware of its responsibility as to the '160 Patent [Mov. Ex. K].[2] As Quickie has said [Mov F]: Quickie "retained Robert E. Krebs et al of . . . Thelen . . .[for] . . .timely payment of the maintenance fee" [see also Mov. Ex. E at 4]. Sharinn has also said the same thing [Mov. Ex. G; Mov. Ex. T at 188, 242, 245, 250-52, 266-67, 289-90]. Former Thelen partner Mark Evens, who was the principal client contact has also so said [Mov. Ex. K]

27. Although Thelen had full responsibly for the '160 Patent and the Maintenance Fee during the entire period when it was due and payable [Mov. Ex. K; see also Mov. Exs. E, F, G],

---

[2] Thelen prepared and filed the Revocation/Appointment [Mov. Ex. Q at 66; Mov. Ex. AO ¶14; see also Mov. Ex. AE]. Evens acknowledged in October 2006 [Mov. Ex. K], writing about Robert Krebs, the lead patent attorney at Thelen for Quickie at the time of the events at issue:
> "[M]y understanding at the time was that we (TRP) was [sic] taking responsibility for the patent, and that is how I read Bob's filing. Second, I remember a conversation early on with Bob about not missing fee deadlines. Finally, maintenance fees are part of representing the patent, so I am surprised that Bob, as a practiced patent prosecutor, wouldn't advisee [sic] Quickie and Steve that deadlines were approaching so he would not lose his patent." (emphasis added)

4

Thelen failed to advise Quickie that the Maintenance Fee was due, or to pay the Fee for Quickie; so did Fell (its General Counsel) [Mov. Ex. E, AO ¶19; Mov. Exs. E, F, G, L, M].

**Quickie's Unsuccessful Petition to Revive the '160 Patent**

28. After learning of the loss of its '160 Patent in 2006, Quickie filed a Petition to revive the patent, [Mov. Exs. E, F,G; Mov. Ex. Q at 44-48, 77-102].

29. In its submissions in support of its Petition, Quickie stated, under oath, that GT's responsibility as to the '160 Patent had completely ended in March 2003 and that Thelen, not GT, had had sole responsibility for payment of the Maintenance Fee [Mov. Exs. E, F,G; Mov. Ex. Q at 44-48, 77-102; see also Mov. Ex. R at 65-71, 74-75, 78-81].

30. For example, in its Supplement to Petition, *Quickie* stated [Mov. Ex. E at 1, 2, 3, 4]:

> "[GT's] responsibility for the '160 Patent ended prior to the time period when the payment of a first Maintenance Fee was due (see Mov. Ex. A]).
> \*   \*   \*
> Thelen Reid & Priest was granted and held sole and full power in the '160 patent from March 4, 2003 through August 14, 2006 (see [Mov. Exs. A and B]). This period of time covered the time period up until May 23, 2004 for timely paying the first maintenance fee, and the entire two-year time period, starting from the date of the '160 patent's expiration to file a remedial Petition under the intention provision (37 CFR 1.378(c)); this two-year expiration period ending on May 24, 2006.
> The actions and inactions of Thelen Reid & Priest . . . led the Patent Owner to believe that their [sic] '160 Patent was viable.
> \*   \*   \*
> The Patent Owner [Quickie] fully believed that their [sic] valuable legal rights in the '160 patent would be justly protected by the attorneys and law firm of Thelen Reid & Priest when the Patent Owner chose them for representation and executed the Power of Attorney dated March 4, 2003 (see [Mov. Ex. A])".
> (emphasis added)

31. In a *sworn* statement to the PTO filed with the Petition to reinstate the '160 Patent, Quickie's Managing Member, Dr. Aubrey Galloway, had also stated [Mov. Ex. F, ¶¶1, 2]:

5

> ". . . I am the Managing Partner of Quickie, LLC, the owner of US Patent No. 6,066,160.
>   As the Managing Partner for <u>Quickie, LLC,</u> I retained Robert E. Krebs et al. of the <u>Thelen, Reid & Priest, LLP</u> law firm <u>to transact all</u> post-issuance <u>proceedings and responsibilities</u> in the Patent and Trademark Office <u>including, but not limited to</u> . . . <u>timely payment of the Maintenance Fee</u>".

32. Quickie expressly *reaffirmed* those statements and their accuracy in response to GT's Request to Admit [Mov. Ex. H ¶¶ 11-17; Mov. Ex. I ¶¶18-20, 22-25, 40, 42-43].

33. Quickie's Managing Member (Dr. Galloway) and its General Counsel (Alan Fell) also reaffirmed those statements and their accuracy in their depositions [Mov. Ex. Q, at 59-64, 83-84, 86-102; Mov. Ex. R at 70-74, 78-81; see also Mov. Ex. L at 4].

34. Several affirmative statements in Quickie's Complaint also say the same thing as Quickie told the PTO [Mov. Ex. AO ¶¶ 14, 15, 19].

35. Quickie requested and obtained a sworn statement from Sharinn corroborating its own representation to the PTO that he and GT had been replaced by Thelen and had had no responsibility as to the '160 Patent after March 4, 2003 [Mov. Ex. G; Mov. Ex. T at 254, see also 253-64]. Quickie has never requested a contrary statement from Sharinn Mov. Ex. Q at 89,90, 96, 97, 99, 100, 102; Mov. Ex. R at 74-75, 80-81; Mov. Ex. T at 256].

36. Quickie has never retracted its aforesaid prior statements to the PTO --- including that Thelen had had sole responsibility for payment of the Maintenance Fee --- or that Quickie's statements to the PTO were false or inaccurate [Mov. Ex. Q at 89,90, 96, 97, 99, 100, 102; Mov. Ex. R at 74-75, 80-81; Mov. Ex. T at 256].

37. The PTO denied Quickie's Petition on March 6, 2007 [Mov. Ex. L; Mov. Ex. R at 81; Mov. Ex. Q at 103-05, 121]. In so doing, the PTO expressly noted and relied on Quickie's statements to the PTO that Thelen "was responsible for payment of the maintenance fee" and

that Sharinn and GT had not been "responsible for the patent" after March 2003 [Mov. Ex. L at 4].

38. Quickie filed a petition for reconsideration of the PTO's March 6, 2007 decision. The PTO denied Quickie's petition for reconsideration in a further decision on October 5, 2007 [Mov. Ex. M; Mov. Ex. Q at 102-04; Mov. Ex. R at 81].

39. In so ruling, the PTO again referenced and relied on Quickie's prior statements, holding that Quickie remained bound by what Quickie has said and submitted [Mov. Ex. M at 3-4; Mov. Ex. Q at 107-09].

40. Quickie has not sought a further review or reconsideration of that decision [Mov. Ex. T at 123-24].

Dated: July 22, 2008
      New York, New York

                            POLLACK & KAMINSKY

                          By: /s/ Martin I. Kaminsky
                          Martin I. Kaminsky (MK 3033)
                          Justin Y. K. Chu  (JC 7810)
                  114 West 47th Street
                  New York, New York 10036
                      Tel No. (212) 575-4700
                      Fax No. (212) 575-6560

                  *Attorneys for Defendant*
                  *Greenberg Traurig, LLP*