**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

QUICKIE, LLC,                                          :

                        Plaintiff,           :

        -against-                            :

                                          :

GREENBERG TRAURIG, LLP, THELAN            :
REID BROWN RAYSMAN & STEINER LLP          :
(f/k/a THELAN, REID & PRIEST LLP) and     :
ROBERT E. KREBS,                          :

                  Defendants.           :          07 Civ. 10331 (RMB)
-----------------------------------------------------------------X
THELAN REID BROWN RAYSMAN &               :          **ORDER**
STEINER LLP (f/k/a THELAN, REID &         :
PRIEST LLP) and ROBERT E. KREBS,          :

        Third-Party Plaintiffs,           :

        -against-                            :

TODD SHARINN, ALAN FELL and               :
RICK, STEINER, FELL & BENOWITZ, LLP,      :

        Third-Party Defendants.           :
-----------------------------------------------------------------X

## I.      Introduction

On May 15, 2007, Quickie, LLC ("Quickie" or "Plaintiff") filed an Amended Complaint

("Am. Compl.") against Greenberg Traurig, LLP ("Greenberg" or "Defendant"), Thelan Reid

Brown Raysman & Steiner LLP f/k/a Thelan, Reid & Priest LLP ("Thelan"), and Robert E.

Krebs, Esq. ("Krebs"), a partner at Thelan, in New York State Supreme Court, New York

County alleging, among other things, that Plaintiff "retained Defendant[] to provide legal

expertise and advice concerning [Patent No. 6,066,160 (the ''160 Patent')] held by [Plaintiff],"

and Defendant committed legal malpractice and negligent misrepresentation when Defendant

"failed to notify [Plaintiff] that [] maintenance fees ['Maintenance Fees'] could have been paid [but were not paid] at anytime between May 23, 2003 and May 23, 2004" to the United States Patent and Trademark Office ("PTO") before the '160 Patent expired on May 24, 2004. (Am. Compl. ¶¶ 1–2, 28.)[1]  On November 14, 2007, Defendant removed the action to this Court on the ground, among others, that, pursuant to 28 U.S.C. § 1338(a), "federal courts may exercise jurisdiction over legal malpractice actions – even when diversity of citizenship is lacking [as here] – if proof of patent infringement or validity is a necessary element of the legal malpractice cause of action." (Not. of Removal, dated Nov. 14, 2007, at 3.)[2]

On July 22, 2008, Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") arguing, among other things, that: (1) Plaintiff's claim for legal malpractice "is barred by the statute of limitations"; (2) Defendant "cannot be claimed to have committed [legal] malpractice by virtue of the non-payment of [the Maintenance] [F]ee" because Defendant "had been replaced by Thelen as to the '160 Patent before the Maintenance Fee became due"; and (3) Plaintiff's "claims for negligence and negligent misrepresentation are duplicative of its [legal] malpractice claim and therefore legally insufficient." (Def. Mem. at 17, 20, 22.)

On August 26, 2008, Plaintiff filed an opposition arguing, among other things, that:

---

[1]    The only parties remaining in this action are Quickie and Greenberg. (See Am. J. and Contribution Bar Order, dated May 27, 2008, ¶¶ 1–9; Defs.' Mem. in Supp. of Mot. for Summ. J., dated July 22, 2008 ("Def. Mem."), at 5 ("Quickie has settled with Thelan, Krebs, [Rick, Steiner, Fell & Benowitz, LLP] and [Alan] Fell, resulting in the dismissal of all claims against them and [Todd] Sharinn (who was only a third-party defendant), and leaving [Greenberg] as the sole remaining defendant in the action.").)

[2]    "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases." 28 U.S.C. § 1338(a); see also Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, LLP, 504 F.3d 1262, 1273 (Fed. Cir. 2007).

(1) Plaintiff's legal malpractice claim against Defendant "clearly fall[s] within New York's three-year statute of limitations"; (2) "there is a significant amount of evidence from which a jury could conclude that [Defendant] continued to represent [Plaintiff] with respect to the '160 Patent beyond the time when [the] [M]aintenance [F]ee [was] due"; and (3) "summary judgment is inappropriate because resolution of [Plaintiff's] negligent misrepresentation claim hinges on how the jury resolves the fact issues concerning the scope and duration of the Quickie/[Greenberg] attorney-client relationship." (Pl.'s Opp'n to Def.'s Mot. for Summ. J., dated Aug. 26, 2008 ("Pl. Mem."), at 13, 20–21, 22, 24.)

On August 26, 2008, Plaintiff also filed a (separate) motion to strike ("Motion to Strike") the Declaration of Paul Sutton, dated July 22, 2008, and certain admissions made by Plaintiff's own General Counsel, Alan Fell, Esq. ("Fell"), submitted in support of Defendant's motion for summary judgment. (See Pl.'s Mot. to Strike Inadmissible Summ. J. Evid., dated Aug. 26, 2008 ("Mot. to Strike"), at 1.) On September 9, 2008, Defendant filed an opposition to Plaintiff's Motion to Strike. (See Def.'s Opp'n to Mot. to Strike, dated Sept. 9, 2008 ("Strike Opp'n"), at 1.)

On September 16, 2008, Defendant filed a reply in further support of its motion for summary judgment. (See Def.'s Reply Mem. in Supp. of Mot. for Summ. J., dated Sept., 16, 2008 ("Reply").) Oral argument was held on January 14, 2009. (See Tr. of Proceedings, dated Jan. 14, 2009.)

**For the reasons set forth below, Plaintiff's motion to strike is denied and Defendant's motion for summary judgment is granted in part and denied in part.**

II.   **Background**

Plaintiff "is a limited liability corporation established to hold valuable intellectual

property developed by several cardiac surgeons" and "is owner by assignment of . . . [the '160 Patent]." (Decl. of Aubrey C. Galloway, M.D., dated Aug. 25, 2008 ("Galloway Decl."), ¶ 2; Def.'s Rule 56.1 Statement, dated July 22, 2008 ("Def. 56.1"), ¶ 3; see Pl.'s Rule 56.1 Statement, dated August 26, 2008 ("Pl. 56.1"), ¶ 3.)

"In November 1998, [Plaintiff] retained Todd Sharinn ("Sharinn") [of] Pepe & Hazard LLP ("Pepe") . . . to pursue a patent application" before the PTO for a certain medical device. (Galloway Decl. ¶ 3 & Ex. K ("We hereby appoint Todd S. Sharinn . . . our attorney to prosecute this application and to transact all business in the [PTO] connected therewith.").) "On May 30, 2000, [Plaintiff] received correspondence from Sharinn stating that the [PTO] had approved the '160 Patent" and that Sharinn would "notify [Plaintiff] regarding payment of the [M]aintenance [F]ees several months before they [would be] due." (Galloway Decl. ¶ 4; see Decl. of Paul J. Sutton, Esq., dated July 22, 2008 ("Sutton Decl."), Ex. U.) "The [first] Maintenance Fee could have been paid during the period May 23, 2003 through November 23, 2003 without surcharge" and "from November 24, 2003 through May 23, 2004 with a surcharge applied." (Pl. 56.1 ¶ 5.) In 2001, "Sharrin left Pepe to become an associate of Greenberg" and "Sharinn's representation of Quickie as to the '160 Patent . . . transferred to [Greenberg]." (Def 56.1 ¶ 11; Pl. 56.1 ¶ 11.) On December 16, 2002, "Sharrin notified the PTO, pursuant to 37 C.F.R. 1.363(a)(3), that he was to receive all correspondence concerning [M]aintenance [F]ees on the '160 Patent ['Fee Address Notice']" at Greenberg's New York, New York address, and "a copy of [the Fee Address Notice] was provided to Quickie." (Galloway Decl. ¶ 6; Decl. of Robert E. Krebs, Esq., dated Aug. 4, 2008 ("Krebs Decl."), ¶ 4 & Ex. F; see Decl. of Alan Fell, Esq., dated Aug. 25, 2008 ("Fell Decl."), ¶ 7.)

On November 25, 2002, Medtronic, LLC ("Medtronic"), a "medical device

4

manufacturing company," "commenced reexamination proceedings ['Reexamination Proceeding'] before the PTO in an effort to limit the scope of the '160 Patent[.]"  (Galloway Decl. ¶¶ 7, 11; see Sutton Decl. Ex. C.)  "Quickie asked Thelan to represent it in the resulting '160 [R]eexamination [P]roceeding before the PTO."  (Krebs Decl. ¶ 5; see also id. ¶ 8 & Ex. I.) On March 4, 2003, Dr. Aubrey C. Galloway ("Galloway"), managing partner of Quickie, signed, on behalf of Plaintiff, two documents ("Powers of Attorney") that state, "[a]s assignee of record of the entire interest of the ['160 Patent], all powers of attorney previously given are hereby revoked and the following attorney(s) and/or agent(s) are hereby appointed to prosecute and transact all business in the [PTO] connected therewith."  (Reply Decl. of Paul Sutton, dated Sept. 16, 2008 ("Sutton Reply Decl."), Ex. AT; see also Galloway Decl. ¶ 11.)  The attorneys appointed pursuant to the Powers of Attorney were all employed by Thelan, including former Defendant Krebs, a partner at Thelan.  (See Sutton Reply Decl. Ex. AT; Galloway ¶ 11.)  One Power of Attorney appears to apply to the Reexamination Proceeding only, while the other Power of Attorney appears to be general.  (See Sutton Reply Decl. Ex. AT.)

On April 2, 2003, the PTO sent Sharinn a "Notice Regarding Change of Power of Attorney ['Power of Attorney Notice']" stating, among other things, that "[t]he Power of Attorney to you in this application has been revoked by the assignee[.]"  (Sutton Decl. Ex. B.) On May 19, 2003, Sharinn sent a fax ("May 2003 Fax") to Fell with a subject line reading "Quickie, LLC Reexamination of U.S. Patent No. 6,066,160 by Medtronic."  (Decl. of Mark F. Evens, Esq., dated Aug. 26, 2008 ("Evens Decl."), Ex. X.)  The May 2003 Fax states, among other things, that "[w]e enclose for your information and records, a copy of the [Power of Attorney Notice naming, among others, Krebs as Quickie's counsel] filed in connection with the above-referenced [R]eexamination [Proceeding] application [and w]e . . . will take no further

action on this matter." (Evens Ex. X; see also Galloway Decl. ¶ 12; Fell Decl. ¶ 14 ("I

understood Mr. Sharinn's [May 2003 Fax] to confirm . . . that neither he nor [Greenberg] would

take any further actions with respect to the Reexamination Proceeding.").) Thereafter,

"[Greenberg] and Sharinn continued to represent [Plaintiff] in connection with . . . other

intellectual property matters." (Pl. 56.1 ¶ 14; see also Dep. of Todd Sharinn, Esq., dated June 11,

2008 ("Sharinn Dep."), at 105–10, 221–28.) On May 24, 2004, "[t]he '160 Patent expired due to

nonpayment of the Maintenance Fee." (Def. 56.1 ¶¶ 9, 10; see Pl. 56.1 ¶¶ 9, 10.)

      On October 27, 2006, Plaintiff petitioned the PTO to reinstate the '160 Patent

("Reinstatement Petition"). (See Galloway Decl. ¶ 14; Sutton Decl., Ex. D.) In a sworn

declaration, dated October 27, 2006 ("PTO Declaration"), submitted in support of the

Reinstatement Petition, Galloway stated that, "[a]s Managing Partner for Quickie, LLC, I

retained Robert E. Krebs et al. of the Thelan . . . law firm to transact all post-issuance

proceedings and responsibilities in the [PTO] including, but not limited to [R]eexamination

[P]roceedings and timely payment of the [M]aintenance [F]ee." (Sutton Decl., Ex. F.) Galloway

alleges that "due to . . . the urgent need to get [Plaintiff's] reinstatement application on file with

the PTO, however, I was not able to review the [PTO Declaration] prior to the deadline to file the

reinstatement application" and "I authorized my assistant . . . to sign the [PTO Declaration] on

my behalf, in the expectation that it was accurate and complete." (Galloway Decl. ¶ 15; Dep. of

Aubrey C. Galloway, M.D., dated June 12, 2008 ("Galloway Dep."), at 82.) Galloway further

alleges that the PTO Declaration was "incomplete in that it did not fully describe my

expectations of [Plaintiff's] outside counsel as concerns the '160 Patent" and Plaintiff "continued

to expect Mr. Sharinn and [Greenberg] to honor their commitments to monitor the '160 Patent

and provide notice of the [M]aintenance [F]ee deadlines . . . based upon documents and

communications received from Mr. Sharinn and [Greenberg]." (Galloway Decl. ¶ 15.)  On

March 6, 2007, the PTO denied Plaintiff's Reinstatement Petition.  (See Sutton Decl. Ex. L.)

## III.    Legal Standard

Summary judgment may not be granted unless "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c);

see also Rubens v. Mason, 527 F.3d 252, 254 (2d Cir. 2008); Ciocca v. Neff, No. 02 Civ. 5067,

2005 WL 1473819, at *2 (S.D.N.Y. June 22, 2005).  The moving party bears the burden of

informing the district court of the basis for its motion.  See Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986).  The nonmoving party must set forth specific facts showing that there is a

genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[All]

reasonable inferences are viewed in a light most favorable to the nonmoving party," and

summary judgment may not be granted "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991);

see also Rubens, 527 F.3d at 254; Ciocca, 2005 WL 1473819, at *2.

## IV.    Analysis

### Motion to Strike

Plaintiff argues, among other things, that "the Sutton Declaration is replete with

inadmissible evidence including . . . matters beyond Mr. Sutton's personal knowledge, hearsay,

legal conclusions, expert/opinion testimony, matters lacking foundation, and/or argumentative

statements," and that Defendant "seeks to inappropriately use admissions of [Fell, Quickie's

General Counsel,] against [Plaintiff] in support of its [motion for summary judgment]."  (Mot. to

Strike at 1.)  Defendant counters, among other things, that "no part of the motion [for summary

7

judgment] is premised on any statement by Sutton that is not either a quote and cite to underlying evidence or merely repetition of [Sutton's] own sworn deposition testimony in this action," and "Fell's statements are binding on Quickie under [Federal Rule of Evidence ("Fed. R. Evid.")] 801(d)(2)(D)" because "Fell admittedly is Quickie's General Counsel and a member of Quickie." (Strike Opp'n at 4, 5.)

"In deciding a motion for summary judgment, the Court may consider supporting and opposing affidavits . . . made on personal knowledge that set forth evidence that would be admissible at trial." Rus, Inc. v. Bay Indus., Inc., 322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003) (internal quotations omitted); see also Fed. R. Civ. P. 56(e). "To the extent that an affidavit or declaration contains material that does not comply with [Fed. R. Civ. P.] 56(e), the Court may strike those portions, or may simply disregard them." Rus, 322 F. Supp. 2d at 307. Thus, rather than parsing the declaration to determine which portions of it may be appropriate to strike, the Court has disregarded any statements in the Sutton Declaration that do not comport with Fed. R. Civ. P. 56(e). See id.; see also Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 131 n.12 (2d Cir. 2004). At the same time, "Fell's agency role for Quickie makes his response to [Greenberg's] requests to admit admissible," (Strike Opp'n at 4), because "[s]tatements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney," United States v. Margiotta, 662 F.2d 131, 142–43 (2d Cir. 1981) (citing Fed. R. Evid. 801(d)(2)). (See also Pl. 56.1 ¶ 12; Fell Dep. at 70–74, 78–81); Wechsler v. Hunt Health Systems, Ltd., No. 94 Civ. 8294, 2003 WL 22764545, at *2 (S.D.N.Y. Nov. 21, 2003).

**Motion for Summary Judgment**

**(1)    Statute of Limitations**

Defendant argues, among other things, that Plaintiff's legal malpractice claim is

time-barred because Plaintiff "discharged [Defendant] and replaced it with Thelan as to the '160 Patent in March 2003," and "[t]his action was not commenced until mid-April 2007, more than four years later." (Def. Mem. at 23.) Plaintiff counters, among other things, that "when an attorney is accused of missing a deadline to take some action, the malpractice occurs when the deadline expires," and "[t]he last day to pay [M]aintenance Fee[s] on the '160 Patent was May 23, 2004." (Pl. Mem. at 22.)

Under New York law, "[a]n action to recover damages arising from legal malpractice must be commenced within three years after accrual." Zorn v. Gilbert, 8 N.Y.3d 933, 933–34 (2007); see also N.Y. C.P.L.R. § 214(6); Pandozy v. Robert J. Gumenick, P.C., No. 07 Civ. 1242, 2008 WL 2190151, at *2 (S.D.N.Y. May 23, 2008).[3] "A legal malpractice claim accrues when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court." McCoy v. Feinman, 99 N.Y.2d 295, 301 (2002). "It is clear that under the law of both New York and the Second Circuit, factual issues relating to statute of limitations matters can preclude summary judgment on that ground." Bausch & Lomb Inc. v. Alcon Labs., Inc., 64 F. Supp. 2d 233, 246 (W.D.N.Y. 1999); see also Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994); Weiss v. Manfredi, 83 N.Y.2d 974, 977 (1994).

Defendant has not established as a matter of law that Plaintiff's legal malpractice claim is untimely. See Weiss, 83 N.Y.2d at 977; Tropp v. Lumer 23 A.D.3d 550, 551 (2d Dep't 2005). Because genuine issues of material fact remain, including, among other things, the scope and duration of the attorney-client relationship between Plaintiff and Defendant, (see infra at 10–12), the Court cannot determine "whether the [C]omplaint as against [Defendant] is time-barred

---

[3]    "The parties' briefs rely upon New York law and such implied consent . . . is sufficient to establish choice of law." Krumme v. Westpoint Stevens Inc., 238 F.3d 133, 139 (2d Cir. 2000) (internal quotations omitted).

under [N.Y. C.P.L.R.] § 214(6)." Serradilla v. Lords Corp., 50 A.D.3d 345, 346 (1st Dep't

2008); see also Weiss, 83 N.Y.2d at 977 ("We reject defendants' alternative claim that

[plaintiff's legal malpractice claim] is untimely" because "there is at least a question of fact as to

whether defendants continued to represent plaintiff in connection with this matter."); Tropp, 23

A.D.3d at 551.

### (2)    Legal Malpractice Claim

Defendant argues, among other things, that Plaintiff's legal malpractice claim fails

because Defendant's "role as to the '160 Patent was over as of March 2003 after [Defendant]

received notice of [Plaintiff's] March 2003" Power of Attorney and, "after [Defendant] was

replaced by Thelan as to the '160 Patent, Thelan (as successor counsel) had ample opportunity

(more than a year) to see that the Maintenance Fee was duly paid before the expiration of the

['160 Patent] in May 2004." (Def. Mem. at 20; Reply at 4.)  Plaintiff counters, among other

things, that "there is ample evidence from which a jury could conclude that [Plaintiff] reasonably

expected [Defendant] to continue acting as its attorneys with respect to . . . the '160

Patent . . . through the time when the [M]aintenance [F]ees were due," and Defendant's "failure

to demonstrate the absence of fact issues as to the scope and extent of its engagement as

[Plaintiff's] attorney is fatal to its proximate cause arguments."  (Pl. Mem. at 14, 20–21.)

"'For a defendant in a legal malpractice case to succeed on a motion for summary

judgment, evidence must be presented in admissible form establishing that the plaintiff is unable

to prove at least one of the essential elements.'"  Rubens v. Mason, 387 F.3d 183, 189 (2d Cir.

2004) (quoting Crawford v. McBride, 303 A.D.2d 442, 442 (2d Dep't 2003)).  "The elements of

a legal malpractice claim in New York are [i] the existence of an attorney-client relationship,

[ii] negligence on the part of the attorney or some other conduct in breach of that relationship,

[iii] proof that the attorney's conduct was the proximate cause of injury to the plaintiff, and [iv] proof that but for the alleged malpractice the plaintiff would have been successful in the underlying action." Hanlin v. Mitchelson, 794 F.2d 834, 838 (2d Cir. 1986); see also Amodeo v. Gellert & Quartararo, P.C., 26 A.D.3d 705, 707 (3d Dep't 2006). "[W]hether malpractice has been committed is normally a factual determination to be made by the jury." Diamond v. Sokol, 468 F. Supp. 2d 626, 634 (S.D.N.Y. 2006) (internal quotations omitted).

### Existence of Attorney-Client Relationship

"[A] client has an absolute right, at any time, with or without cause, to terminate the attorney-client relationship by discharging the attorney." Campagnola v. Mulholland, Minion & Roe, 76 N.Y.2d 38, 43 (1990). But, an attorney may "not unilaterally terminate an attorney-client relationship simply by failing to perform services expressly or impliedly authorized by his clients." Leffler v. Mills, 285 A.D.2d 774, 777 (3d Dep't 2001) (internal quotations omitted); see also Hanlin, 794 F.2d at 842 (citing Costello v. Bruskin, 58 A.D.2d 573, 574 (2d Dep't 1977)); Rudow v. Cohen, No. 85 Civ. 9323, 1988 WL 13746, at *2 (S.D.N.Y. Feb. 18, 1988).

Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that there are genuine issues of material fact concerning whether Plaintiff had or evidenced "an unmistakable purpose to severe relations" with Defendant on or about March 4, 2003 and/or whether Plaintiff intended that Defendant would continue monitoring and payment of the Maintenance Fee on the '160 Patent. Hanlin, 794 F.2d at 842; Rudow, 1988 WL 13746, at *2; (see also Galloway Decl. ¶¶ 6, 12; Krebs Decl. ¶¶ 4, 13–14 & Ex. F; Sutton Decl. Ex. AF; Sharinn Dep. at 153). That is, "the status and scope of the attorney-client relationship [between Quickie and Greenberg] are unresolved questions of fact" for a jury. Hanlin, 794 F.2d at 842. Based upon the evidence submitted by Plaintiff, e.g., the Fee Address Notice and the May 2003 Fax, it is not clear whether

11

Quickie intended to replace Greenberg with Thelan as to the monitoring and payment of the '160 Patent's Maintenance Fee when Quickie signed the Powers of Attorney, and/or whether Quickie intended to authorize Thelan only to act on Quickie's behalf in the Reexamination Proceeding. (Krebs Decl. ¶ 4 & Ex. F; Evens Decl. Ex. X); see also Hanlin, 794 F.2d at 842 ("We have refused to find a termination [of the attorney-client relationship] even when the plaintiff and her newly retained attorney directly asked the first attorney to withdraw from the case.").

And, the weight to accord Galloway's statements in the PTO Declaration – filed approximately three years after he signed the Powers of Attorney – and Galloway's credibility are properly left to a jury. See Curry v. City of Syracuse, 316 F.3d 324, 333 (2d Cir. 2003) ("[C]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.") (internal quotations omitted); Diamond, 468 F. Supp. 2d at 632.

**Proximate Cause**

"In order to establish proximate cause, plaintiff must demonstrate that 'but for' the attorney's negligence, plaintiff would either have prevailed in the matter at issue, or would not have sustained any 'ascertainable damages.'" Leder v. Spiegel, 31 A.D.3d 266, 267–68 (1st Dep't 2006); see also Diamond, 468 F. Supp. 2d at 633. Summary judgment on a legal malpractice claim is inappropriate where "issues of fact exist as to whether plaintiff's damages were proximately caused by . . . defendant['s] conduct." Pfeffer v. Pernick, 268 A.D.2d 262, 263 (1st Dep't 2000); see also Marshel v. Hochberg, 37 A.D.3d 559, 560 (2d Dep't 2007); Budget Installment Corp. v. Levy, Ehrlich & Kronenberg, 259 A.D.2d 649, 650 (2d Dep't 1999).

Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has raised genuine issues of material fact as to proximate cause. See Marshel, 37 A.D.3d at 560.

12

That is, it is not clear "whether the scope of [Thelan's] duties broadly encompassed the services for which [Plaintiff] had retained [Greenberg] or whether [Thelan] represented [Plaintiff] only on a discrete issue" that did not include monitoring and paying the Maintenance Fee on the '160 Patent. Id.; (see also Fell Decl. ¶¶ 7, 10, 11, 13, 14 & Exs. M, N, W; Galloway Decl. ¶¶ 11–13; Sutton Decl. Ex. AF.)  It is unclear whether Thelan or Greenberg was intended to be responsible for the monitoring and paying of the Maintenance Fee on the '160 Patent; the factual issues concerning the "status and scope of the attorney-client relationship," Hanlin, 794 F.2d at 842, between Quickie and Greenberg preclude the Court from ruling that Plaintiff cannot prove proximate cause as a matter of law, see Marshel, 37 A.D.3d at 560.[4]

(3)    **Negligence and Negligent Misrepresentation Claims**

Defendant argues, among other things, that Plaintiff's negligence and negligent misrepresentation claims should be dismissed as "duplicative of its [legal] malpractice claim" because "they arise from and involve the same operative facts as [Plaintiff's] legal malpractice claim." (Def. Mem. at 22.)  Plaintiff appears to concede, among other things, that Plaintiff's "negligent misrepresentation claim may be duplicative of its legal malpractice claim," i.e., that Defendant "was [Plaintiff's] attorney with respect to [M]aintenance [F]ees on the '160 Patent up to and through the May 23, 2004 deadlines to pay those fees." (Pl. Mem. at 23.)

Plaintiff's "negligent misrepresentation [claim] [is] dismissed as duplicative of the legal malpractice claim" because it is based upon the "same factual allegations as the legal malpractice claim and do[es] not allege distinct damages." Serova v. Teplen, No. 05 Civ. 6748, 2006 WL

---

[4]    Because Defendant argues that no genuine issue of material fact exists only with respect to two elements of Plaintiff's legal malpractice claim, i.e., the existence of an attorney-client relationship and proximate cause (Def. Mem. at 17–22), the Court need not reach the remaining elements of Plaintiff's claim.  See Ayala v. Fischman, No. 97 Civ. 6698, 1998 WL 726005, at *3–4 (S.D.N.Y. Oct. 15, 1998); Phillips v. Moran & Kufta, P.C., 53 A.D.3d 1044, 1044–45 (4th Dep't 2008).

349624, at *4 (S.D.N.Y. Feb. 16, 2006); (see Am. Compl. ¶¶ 26–37); see also Seippel v. Jenkens & Gilchrist, P.C., 341 F. Supp. 2d 363, 376 (S.D.N.Y. 2004); Mecca v. Shang, 258 A.D.2d 569, 570 (2d Dep't 1999).

And, to the extent that Plaintiff asserts a (separate) negligence claim against Defendant, (see Am. Compl. ¶¶ 26–31), such claim is dismissed because under New York law "legal malpractice, as opposed to ordinary negligence, is the appropriate cause of action to bring against an attorney who allegedly performed his/her professional duties negligently." Amadasu v. Ngati, No. 05 Civ. 2585, 2006 WL 842456, at *9 (E.D.N.Y. Mar. 27, 2006) (citing Mark Polarized Corp. v. Solinger & Gordon, 124 Misc. 2d 266, 267 (N.Y. Sup. Ct., Queens Co. May 22, 1984)); see also Nordwind v. Rowland, No. 04 Civ. 9725, 2007 WL 2962350, at *4–5 (S.D.N.Y. Oct. 10, 2007).

## V.    Conclusion and Order

For the reasons set forth above, Plaintiff's motion to strike [#42] is denied and Defendant's motion for summary judgment [#34] is granted as to Plaintiff's negligence and negligent misrepresentation claims and denied as to Plaintiff's legal malpractice claim.

The parties are directed to appear at a settlement/pre-trial conference with the Court on February 5, 2009 at 9:00 a.m. in Courtroom 21D of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York, 10007. **The Court directs the parties to engage in good faith settlement negotiations prior to the conference with the Court.**

Dated: New York, New York
       January 16, 2009

R MB
_____
**RICHARD M. BERMAN, U.S.D.J.**